UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-22882-CIV-SCOLA

DANIEL VALDERRABANO TORRES,
    Plaintiff,
v.
ROCK & RIVER FOOD, INC. et al.,
    Defendants.
_____/

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS FOR (MSJ)**

Defendants file this Statement of Undisputed Material Facts. A MSJ with incorporated memo of law is filed separately and these facts are cited to therein as [D.E. ___ ].

### The Corporate Defendant's General Business Operations

1. The Defendant is a one-location Japanese-themed restaurant in Plantation, Florida. (*Declaration of Tetsu Hayakawa* ¶ 2, attached hereto as Exhibit 1). It is owned by two people, and has gross revenues only slightly above $500,000/yr. *Id.* ¶¶ 2-3.

2. The Plaintiff was an employee for the corporate Defendant in 2012-14. *Id.* ¶¶ 4-5.

3. During all material times, Plaintiff worked as a sushi preparer and had no interaction with any of the customers in terms of credit card transactions and Plaintiff did not order or purchase supplies for the Defendants. *Id.* ¶¶ 3-6.

4. Plaintiff did not participate in the actual movement of any goods, things, materials, or people across state lines. *Id.* ¶ 5; (*Dep. of Plaintiff* at 51-52, attached hereto as Exhibit 2).

5. The Defendants pay their sushi assistants (like Plaintiff) and other workers (like their cooks) overtime ($10.00/hr for straight time hours and $15.00/hr for overtime hours). (*Dep. of Karla Yasmin Santiago* at 4, 10-12, attached hereto as Exhibit 3) (stating she has been paid her overtime for 8 years, and had the same job as Plaintiff); (*Dep. of Juan Luis Casado* at 4, 26-27, 30-32, attached hereto as Exhibit 4). Mr. Torres was paid his overtime. (*Dep. of Tetsu Hayakawa* at 13, attached hereto as Exhibit 5).

6. Defendant only pays employees in cash if the employee insists upon it. (*Dep. of Tetsu Hayakawa* at 9-10). Plaintiff was desperate for cash payments because he does not have a bank account, and check cashing stores charge him 5-10%. (*Dep. of Plaintiff* at 23-24).

1

7.     The Defendant's time cards are accurate, but the Plaintiff did not punch out for any breaks, and thus he was over paid by at least 2.5 hours per week. (*Dep. of Hayakawa* at 25). Plaintiff took breaks of at least 30 minutes per day. *Id.* at 26; (*Dep. of Santiago* at 14).

8.     A friend of Plaintiff told him about the job with the Defendant, but Plaintiff never complained to the friend that Defendant does not pay overtime, and does not know whether or not his friend was paid overtime when he worked there. (*Dep. of Plaintiff* at 29-33).

## The Plaintiff Is a Serial Plaintiff

9.     The Plaintiff has previously sued a Japanese restaurant at which he worked as a sushi preparer for allegedly not paying him overtime. (*Dep. of Plaintiff* at 4-7). He settled for an amount of money ($10,000 total settlement with approximately $4,500 going to the plaintiff) using J.H. Zidell, P.A. as his lawyer. *Id.* This made Plaintiff aware that if he worked more than 40 hours per week of overtime, he was owed time and one-half pay for those hours. *Id.* at 9.

10.    Despite knowledge of overtime, Plaintiff's suit suggests he worked approximately 3 years for Defendants with no overtime, but he admitted he never spoke to anyone about his pay, the Defendant's time and pay records are accurate, he has no idea what he is owed and he could not deny that that is because he is not owed anything, he has never attempted t calculate what he is owed, and he has not provided information to anyone to assist him in calculating his damages. (*Dep. of Plaintiff* at 69, 34, 54-57, 52-53, 80, 63-64).

## No Presuit Demand Was Provided to the Defendants Before Suit Was Filed

11.    The Plaintiff failed to provide a presuit demand in this case. (*Declaration of Tetsu Hayakawa* ¶ 4); (*Dep. of Plaintiff* at 73).

## The Complaint Was Filed Under a False Name and So Were Interrogatory Answers

12.    Here, the lawsuit is filed under the name of Daniel Valderrabano Torres [D.E. 1], and in "Plaintiff's"[1] interrogatory answers, when asked to list all names that he has ever gone by or used, identified only "Daniel Valderrabano Torres", and claimed that he had a drivers' license issued in that same name. (*Defendants' First Set of Interrogatories*, Int. No. 1 and *Plaintiff's Answers to Defendants' First Set of Interrogatories*, Int. No. 1, attached hereto as Composite Exhibit 6). However, at his deposition, Plaintiff identified himself as Daniel Valderabano Torres (*Dep. of Plaintiff* at 4-5), and claimed that he did not have a drivers' license, *id.* at 16, but that he

---

[1] Plaintiff is in quotes because he testified that he did not provide any interrogatory answers, though answers purporting to be the Plaintiff's were served in this case to the Defendants. This is discussed fully below.

2

has been in the United States for 10 years, *id.* at 13, and drives anyway from time to time when it suits his convenience and that he intends to continue to drive even though he realizes he poses a risk to innocent people.  *Id.* at 17-18.  What is worse is that the interrogatory answers appear to be a complete sham and not signed by him because he testified that he did not sign any documents or participate in the discovery process at all with his attorneys.  *Id.* at 36-37, 57.

13. In his deposition, he was asked to carefully and slowly spell his name, specifically asked if he used just one "r" in his middle name, and then asked whether he used any other names, but he spelled a different name then the name identified on his lawsuit and his interrogatories and failed to disclose any other name, only stating that his last name was "Torres" (thus leaving both Defendants and the Court not knowing the actual identity of the Plaintiff and making a mockery out of our Court system), as follows:

> Q: Could I have the complete spelling of your name please?
> A: It's Daniel, but I don't -- I can't spell it quickly.
>
> Q: Well, just spell it slowly.  Let's enunciate clearly here today.  There's no sense in confusing anybody.
>
> A: It's D-A-N-I-E-L.
> Q: A middle name or next name, whatever the case may be?
> A: It's V-A-L-D-E-R-A-B-A-N-O.
> Q: So one R?
> A: Yes.
> Q: And do you have any other names or a last name?
> A: Last name.
> Q: And how do you – what is that last name?
> A: It's T-O-R-R-E-S.

*Id.* at 4-5.  Plaintiff did not disclose the name that he filed suit under.

14. The deposition testimony should be compared with the interrogatory response, in which Plaintiff (ostensibly Plaintiff, because Plaintiff does deny that he responded to any interrogatories) stated that his name was spelled differently, and the notary public, K. David Kelly, one of Mr. Zidell's associates, spelled the name differently as well, noting that he took the name off of the Plaintiff's Mexican Voter Registration Card.  (*Plaintiff's Answers to Defendants' First Set of Interrogatories*).  The answer to Interrogatory No. 1 was also fraudulent in that it

3

implies that Plaintiff has a social security number (he testified in his deposition that he does not), and expressly states that he has a drivers' license, though he stated in his deposition, that he does not (though he did testify in his deposition that he never signed any interrogatory answers, and thus the answers submitted by Plaintiff's counsel are apparently fraudulent). *Id.* at 36-37.

### **The Plaintiff Has Engaged in Gross Discovery Abuse and Fraud**

15.   Plaintiff's fraudulent interrogatory answers are further demonstrated by his testimony (or his attorney's fraudulent testimony) that he has "Drivers' License #003520120" (*Plaintiff's Answers to Defendants' First Set of Interrogatories*, Int. No. 1), coupled with the following testimony in his deposition:

> Q:   Have you ever attempted to get a drivers' license?
>
> A:   No.
>
> Q:   Have you ever driven a vehicle in the United States?
>
> A:   Yes.
>
> ***
>
> Q:   [After stating that he does not have insurance with respect to his driving a car,] Now, are you aware that it's unlawful in this country to drive a car without a drivers' license.
>
> A:   Yes.
>
> Q:   But, apparently, your need for convenience to be able to get to certain places outweighs the risk of potentially getting caught and arrested for driving without a drivers' license?
>
> A:   Yeah.

(*Dep. of Plaintiff* at 17-18).

16.   The next problem with the Plaintiff's discovery abuse is his complete failure to engage in discovery concerning his damages calculations, which is eerily similar to the plaintiff in *Aguilar* and his refusal to engage in damages discovery. First, even though a Statement of Claim was purportedly filed on his behalf, he testified that he did not discuss his damages or what he is allegedly owed with anyone and never provided any information in discovery in this case (*Dep. of Plaintiff* at 57, 55), though he refused to answer whether documents exist that are unfavorable to his claim for alleged overtime. *Id.* at 36-37. Second, other testimony that Plaintiff gave suggests that the Statement of Claim is fabricated. For example, the Statement of

Claim states that Plaintiff (a sushi chef) worked on average 60 hours each week for the Defendant but was not paid overtime, and that Plaintiff's hourly rate was $11.00/hr.  Plaintiff testified that the Defendant's time and pay records are accurate, *id.* at 33-34, but those time and pay records demonstrate that Plaintiff, on the honor system, created his own time sheets every week, but the recorded hours never hit 60 and are typically between the high 40s and mid to high 50s (see *Time Cards*, attached hereto as Exhibit 7); he further testified that he was never paid more than $10.00/hr in the last 10 years.  (*Dep. of Plaintiff* at 15, 21).   Further, his co-worker sushi chefs testified that they were paid overtime, as set forth above in ¶ 6.

17.   The Statement of Claim is also fraudulent, because it is predicated on an hourly wage of $11.00, but Plaintiff never earned that, as follows (after testifying that he has worked in the United States for approximately the last 10 years illegally):

> Q:   Okay.  And so you typically – You've earned, then, in the last ten years, anywhere between what, $8 and $10 an hour?
>
> A:   Yes.

*Id.* at 15, 21.  Again, this all shows that false information was provided in the Statement of Claim which is a violation of the spirit of the Court Order.  [D.E. 6].  Plaintiff's counsel did not speak to his client, because the Plaintiff testified that he has never spoken with anyone about his damages in this case.  *Id.* at 57, 55.  Plaintiff testified as follows:

> Q:   You intend, if this case goes that far, to go into a courtroom and ask a jury to award you money against Rock & River; is that true?
>
> A:   Yes, correct.
>
> Q:   And what is it?  How much money are you going to ask the jury to award you in this case?  Do you know?
>
> A:   No.
>
> Q:   You just have no idea?
>
> A:   No.
>
> ***
>
> Q:   Have you ever before attempt to calculate what it is you're owed or allegedly owed?
>
> A:   No.

5

Q: If you were really owed something, you would be able to tell me, hey, look, Mr. Kleppin, I know exactly what they owe me to the penny, because they didn't pay me something they were supposed to.

A: I can't answer that question.[2]

[After several more answers of "I can't answer that question", the following exchange occurred:]

Q: Okay. In other words, it's – I asked you specifically. It's pretty clear if you're unable to say what it is that you're owed, or even if you're owed anything – and when I ask that, you say, I just can't answer that. So you must be telling me, Mr. Kleppin, I just can't answer that because you really don't know if you're owed anything or not. Otherwise, you'd just simply tell me what it is. Isn't that true?

A: I can't answer that question.

Q: Okay. So basically I think you're telling me that the answer to the question is yes, with that explanation?

A: Yes . . . .

***

Q: Have you ever tried to sit down – I know you said you never tried to really calculate your damages, or you've never calculated your damages, but have you ever tried to sit down with anyone, a friend or even yourself, and attempted in any way – even attempted to calculate what possibly you may be allegedly owed?

A: Not right now.

Q: So, in other words, you never have?

A: No.

---

[2] Plaintiff routinely refused to answer questions by stating "I can't answer that question" all throughout the deposition to thwart the discovery process, and was asked why he was answering that way, and was it because of a privilege or that he did not know the answer, and he responded to both questions with "I can't answer that question." (*Dep. of Plaintiff* at 62). His attorney never did anything to instruct the Plaintiff to answer the questions, and thus clearly participated in the fraud. At another point he said he was saying "I can't answer that question" if he did not know the answer, *id.* at 59, and another point said he was saying it because he thought the question was already asked and answered, *id.* at 63, but it is obvious from the exchanges, that the questions had not been asked before, and that the questions were questions that Plaintiff had to know an answer to. Outrageous, obstructionist behavior. *From the times in the case that undersigned counsel has interacted with Plaintiff, it is clear from the smirking and taunting gestures that Plaintiff thinks that his obstructionist behavior and frivolous lawsuit are hilarious (to him).*

6

*Id.* at 52-53, 55-57.  Plaintiff even testified that he does not even know what he is suing for (and refused to indicate what he would settle for), as follows:

> Q:   . . . [Y]ou can't say remotely what on earth you would settle the case for if you have no idea really what you are suing for.
>
> A:   No.
>
>                         \*\*\*
>
> Q:   So you're bringing suit really without having any idea what it is that you're owed?
>
> A:   I can't answer that question.

*Id.* at 53-55, 80.

      18.    Third, whenever the Plaintiff was asked questions about his damages in his deposition, he would respond with "I can't answer that question."  *Id., passim* (53-57, 59, 61-72, 80).  Such a response is entirely inappropriate.  These responses are further support that the Plaintiff is not owed anything, as set forth below.  After experiencing exasperation with the continued stonewalling and obstructionist answer "I can't answer that", defense counsel let the Plaintiff know that he was blocking any inquiry into damages in the case, but Plaintiff simply kept stating, "I can't answer that question", as follows:

> Q:   Do you understand that with respect to what you're suing for, and in particular damages and money, if that's part of what you're requesting, since you won't tell me what that is today, you're precluding me from being able to examine you and ask you questions about it today.  Are you aware of that?
>
> A:   I can't answer that question.
>
> Q:   You know, maybe it's this.  Is it true, that if I were to ask you whether or not you're owed anything on any given week, would you not even be able to guess?  Is that what's happening here?
>
> A:   I can't answer that question.

*Id.* at 63-64.  Notably, counsel did not at any point instruct his client to stop engaging in obstructionist discovery tactics by refusing to answer questions, and has not changed the name on the Complaint, did not obtain information from his client to draft the Statement of Claim (and has not amended it, and it is still based on an estimate when the time and pay records are

7

admitted by Plaintiff to be accurate) and submitted fraudulent discovery responses, and thus appears to be an active participant in the fraud and abuse.

19. The next discovery issue is that Plaintiff admitted that he did not sign any interrogatories or provide answers and never looked into whether he had documents that pertained to the case (and thus were responsive to discovery requests). A set of interrogatory answers was served by the Defendants and a response was provided by the Plaintiff's attorneys. As stated above, it purports to have been verified by Plaintiff himself, and a response to a request for production was served, and a Response to that was served by the Plaintiff stating that some documents would be produced, and other documents do not exist. Plaintiff testified that the Defendants have failed to ever request him to answer any questions or have requested that he provide any documents to them, as follows:

> Q: I'm asking, are you aware – Have the defendants asked you to answer certain questions in writing or to provide any documents to them? I just want to know if you're aware of that one way or the other?
>
> A: No, no, no.
>
> Q: They haven't?
>
> A: No.

*Id.* at 36-37. Plaintiff also completely refused to inform Defendants as to whether he possesses documents that are unfavorable or negative to his case, as follows:

> Q: Do you have any documents in your custody, possession, or control which are unfavorable or perhaps negative, they're against any allegations or claim in your lawsuit against Rock & River?
>
> A: I can't answer that question.

*Id.* at 65-66. (See Plaintiff's Response to Defendants' First Request for Production, Exhibit 8). The Plaintiff also stopped all inquiry into whether other efforts that Defendants wanted to pursue in discovery, such as whether Plaintiff had spoken to witnesses, whether he had any witnesses (since he did not serve initial disclosures), as follows:

> Q: Have you spoken to anyone about whether they would be a witness for you in the lawsuit?
>
> A: I can't answer that question.

*Id.* at 70.

20. It is clear Plaintiff really was paid his overtime given the above facts which demonstrate that is unrebutted, and other witnesses so testified (¶ 6). However, even if he really was not, Plaintiff was under an obligation to say something given the previous suit he filed, but Plaintiff testified that he never did, as follows:

> Q: When you worked at Rock & River, did you ever talk to anyone there about your pay?
>
> A: No.

*Id.* at 69. The importance of this testimony is underscored by the testimony from Plaintiff that he does not know 1) what he is suing for and 2) what hours the pay he received was intended to compensate and thus cannot say that he is owed overtime (as the Defendants maintain that he was paid overtime), as follows:

> Q: Mr. Torres, with respect to the pay that you would receive each week in cash late on Sunday night, early Monday morning, as you've testified, do you know how much of that money was designed to compensate you for any hours that you would have worked over 40?
>
> A: Meaning that they paid my overtime there, or what do you mean?
>
> Q: I just want to know how many – of the pay that you would get each week, do you know what hours that was intended to compensate you for. Do you know?
>
> A: No, I don't know.
>
> Q: Okay. Can you describe in detail each act or omission on the part of Rock & River that you believe supports your claim?
>
> A: No.
>
> ***
>
> Q: And so if I were to ask you to please state each item of damage that you claim in this case, that's something that you wouldn't be able to?
>
> A: Correct.

*Id.* at 75-76. Notably, he did not state that failure to pay overtime is his claim.

21. The Plaintiff's open and notorious admission to intentionally refusing to pay taxes requires sj or dismissal, as he testified he does intend to ever pay income taxes in this country:

9

> Q: Have you ever filed an income tax return in the United States?
> A: No.
>
> \*\*\*
>
> Q: Well, if you could, meaning if you had the money, so you're not going to pay back taxes ever, are you?
> A: No. . . .

*Id.* at 12, 20-21 (he does not know, has not attempted to calculate, what he owes in taxes). He has been in the country 10 years illegally and is doing nothing to obtain legal status. *Id.* at 58-59.

### Other False Allegations in the Lawsuit

22.  The Complaint contains complete falsehoods, such as that Plaintiff lives in Miami-Dade County and that all the work performed by Plaintiff for the Defendants occurred in Miami-Dade County [D.E. 1 ¶¶ ], but the Plaintiff testified that he has never lived in Miami-Dade County and never performed any work for the Defendants in Miami-Dade County. (*Dep. of Plaintiff* at 37-38). The Complaint also states that the corporate had over $500,000 in gross sales in the years 2011-14 [D.E. 1 ¶ ], but the Plaintiff testified that he had no idea what the gross sales were for the corporate Defendant for any of those years. *Id.* at 38.

23.  Plaintiff also admitted that many allegations in the Complaint are simply not true, or he has no knowledge as to their truthfulness and he also admitted certain things that the Defendants asked him to in their requests for admission, but which he denied. For example, he stated that he cannot say that Rock & River performed any work outside of the State of Florida, does not know what it means for a company to be engaged interstate commerce, for a company to be engaged in commerce, or for a company to substantially affect interstate commerce. Compare [D.E. 1] with Id. at 70-73, 76. Plaintiff testified that he was not involved in trade, commerce, transportation, or communication between Florida and any point outside of Florida, he was not involved in the transportation of goods and services across state lines, and he did not know whether the corporate Defendant is involved in the production of any goods or whether the FLSA applied to the Defendant, and that he was only assigned to work in the State of Florida, did not witness any selling of any products outside of Florida. *Id.* Plaintiff also denied many of these things in his answer to Defendants' admissions, only to admit them in his deposition, which is also sanctionable. (*Compare id. with Defendants' First Request for Admissions and Plaintiff's Response*, attached hereto as Composite Exhibit 9).

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on February 11, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Stephen M. Fox, Jr., Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

      Respectfully Submitted,

      Glasser & Kleppin
      *Attorneys for Defendants*
      8751 W. Broward Blvd
      Suite 105
      Plantation, FL 33324
      Tel.  (954) 424-1933
      Fax  (954) 474-7405
      E-mail:  ckleppin@gkemploymentlaw.com

      By:   s/Chris Kleppin
           Chris Kleppin
           Florida Bar No. 625485