UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-22882-CIV-SCOLA

DANIEL VALDERRABANO TORRES,
      Plaintiff,
v.
ROCK & RIVER FOOD, INC., *et al.*,
      Defendants.
_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION FOR
INVOLUNTARY DISMISSAL, ALTERNATIVELY, MOTION TO STRIKE
ATTORNEYS' FEES, WITH INCORPORATED MEMORANDUM OF LAW**

      Defendants file this Motion.  A Statement of Undisputed Material Facts is filed separately and is cited to as ("[D.E. 26 ¶ ___ or p. ___").  Defendants' state:

<u>BACKGROUND</u>

      The Plaintiff filed a Complaint alleging violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*) setting forth one (1) substantive count pursuant to the Fair Labor Standards Act ("FLSA"), for alleged overtime violations.  [D.E. 1].  Plaintiff seeks back wages, liquidated damages, prejudgment interest, injunctive relief, accrued but unused vacation pay, attorneys' fees, and litigation expenses.  *Id.*  Summary judgment/involuntary dismissal is appropriate primarily because of gross abuse in the filing and maintaining of this lawsuit, such as 1) it was filed under a false name (Plaintiff's counsel was recently admonished for filing another lawsuit under a false name on behalf of another plaintiff very recently); 2) violations of Court Orders—the submission of a fraudulent Statement of Claim; 3) violations of rules of procedure (federal and local)—the failure to submit initial disclosures (Rule 26(a)(1) and Local Rule 16.1(b)), submission of fraudulent discovery responses (Rule 26(g)) and failure to supplement discovery responses (Rule 26(e)) and his Statement of Claim; 4) gross discovery abuse—the submission of fraudulent responses to discovery requests, as Plaintiff stated that he did not assist in answering questions Defendants asked him in discovery, did not look for any documents and believes that Defendant never asked him for any documents; the submission of interrogatory answers under a false name, the failure to admit to numerous admissions he could not deny in his deposition, and the failure of Plaintiff to participate in his deposition, stating to numerous questions, particularly those about damages, witnesses, who he has discussed the case with, what he believes he is

1

owed, etc., with the phrase "I can't answer that question", and he then gave several different reasons for what he meant by that phrase—it means he does not know, does not like the question, that the question was asked before, and even stated "I can't answer that question" in response to the question what does that mean "I can't answer that question"; 5) Plaintiff was actually paid his overtime and cannot prove that he was not; and 6) there is no coverage under the FLSA.  The Court should note that the Plaintiff is a serial plaintiff who has sued before under the FLSA represented by the same lawyer, yet claims he worked for the Defendants for three years without being paid overtime without ever speaking to anyone about his pay, and then suit was brought without any presuit demand.

### <u>MEMORANDUM OF LAW</u>

### I.    THE RELEVANT LEGAL STANDARDS FOR GRANTING A MOTION FOR SUMMARY JUDGMENT.

Summary judgment under Federal Rule Civil Procedure 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  This burden may be met by "showing" or "pointing out" to the Court that there are no genuine issues of material fact.  *Jeffrey v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*) (quoting *Celotex*, 447 U.S. at 325).  Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Celotex*, 477 U.S. at 324.  In so doing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  Instead, there must be a sufficient showing that the jury could reasonably find for that party.  *Anderson,* 477 U.S. at 252; *see also Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the non-moving party. *Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366, 1369 (11th Cir. 1998) (citations

omitted). The Court must then decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

## II.   THE PLAINTIFF'S CASE SHOULD BE DISMISSED WITH PREJUDICE PURSUANT TO RULE 41(b)

### A.   Federal Rule of Civil Procedure 41(b)

Federal Rule of Civil Procedure 41(b) states, in pertinent part, as follows:

> **(b) Involuntary Dismissal:  Effect Thereof.**  For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant.

To grant a defendant's motion for involuntary dismissal brought pursuant to Rule 41(b) rests within the sound discretion of the district court.  *Bishop v. Lewis*, 155 F.3d 1094, 1096 (9th Cir. 1998).  The court may grant a motion for dismissal based on a plaintiff's failure to comply with procedural rules.  *Mann v. Lewis*, 108 F.3d 145, 147 (8th Cir. 1997); *Herard v. ATN Restaurant, Inc.*, 2007 WL 4145879 (S.D. Fla. 2007).  "In addition to its power under Rule 41(b), a court also has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation."  *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006).  Moreover, a district court has "inherent power to manage its docket."  *Betty K Agencies, Ltd. V. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005).

The facts set forth above (the willful violation of various legal rubrics that govern retaliation actions and the stark admission that the suit is barred by claim/issue preclusion) require that this case be dismissed with prejudice under Rule 41(b).

### B.   The Court's Inherent Authority To Sanction.

The Defendants also seek involuntary dismissal pursuant to this Court's inherent power to monitor litigation closely, and to sanction or dismiss cases for abusive practices.  It is axiomatic that district courts have the inherent power to sanction or dismiss when parties conduct themselves in an abusive manner.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980); *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir. 1985); *Dent v. Giaimo*, 665 F. Supp. 2d 1295 (S.D. Fla. 2009); *Tesma v. Maddox-Joines, Inc.*, 254 F.R.D. 699 (S.D. Fla. 2008).

3

The Court's inherent power is broader and more flexible than the authority to sanction found in the Federal Rules of Civil Procedure.  *Dent v. Giaimo*, 665 F. Supp. 2d 1295 (S.D. Fla. 2009).

Clearly the Plaintiff's actions warrant dismissal, as a suit was improvidently brought. *Emerick v. Fenick Indus.*, 539 F.2d 1379, 1381 (5th Cir. 1976) (finding that when a party demonstrated flagrant bad faith and callous disregard for its responsibilities, the district court's choice of extreme sanction of striking pleadings and entering default judgment is not an abuse of discretion).[1]  The Supreme Court has made clear that the most "severe in the spectrum of sanctions" provided by statute or rule must be available to district courts to prevent unfair prejudice to the litigants, including dismissal.  *NHL v. Metropolitan Hockey Club*, 427 U.S. 639 (1976).  *See also Aztec Steel Co. v. Florida Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982).

### C.   In General Regarding the Issues in This Case.

Rule 41(b) provides, in relevant part, that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). "Rule 41(b) makes clear that a trial court has discretion to impose sanctions on a party who fails to adhere to court rules." *Zocaras v. Castro,* 465 F.3d 479, 483 (11th Cir. 2006). The Eleventh Circuit has "articulated a two-part analysis for determining when an action should be dismissed as a sanction:  There must be both [1] a clear record of willful conduct and [2] a finding that lesser sanctions are inadequate." *Id.* (citing *Betty K Agencies, Ltd. v. M/V MONADA,* 432 F.3d 1333, 1339 (11th Cir. 2005) ("dismissal with prejudice is plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct")); *see also Boazman v. Econ. Lab., Inc.,* 537 F.2d 210, 212 (5th Cir. 1976) ("[D]ismissal with prejudice is such a severe sanction that it is to be used only in extreme circumstances, where there is a clear record of delay or contumacious conduct, and where lesser sanctions would not serve the best interests of justice.") (quotations omitted).

"[F]indings satisfying both prongs of [that] standard are essential before dismissal with prejudice is appropriate." *Betty K,* 432 F.3d at 1339 (citing *Mingo v. Sugar Cane Growers Coop.*

---

[1] *Emerick* is binding precedent on this Court, because it was decided prior to the close of business on September 30, 1981 by the former Fifth Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

*of Florida,* 864 F.2d 101, 102–03 (11th Cir. 1989)).[2]   However, the court's consideration of lesser sanctions need not be explicit. *Gratton v. Great Am. Commc'ns,* 178 F.3d 1373, 1374 (11th Cir.1999) ("Dismissal under Rule 41(b) is appropriate where there is . . . an implicit or explicit finding that lesser sanctions would not suffice."); *Zocaras,* 465 F.3d at 484 ("we have made clear that such consideration need not be explicit").

Mere negligence or confusion is not sufficient to justify a finding of willful misconduct substantiating dismissal.  *McKelvey v. AT & T Techs., Inc.,* 789 F.2d 1518, 1520 (11th Cir. 1986). Neither is inadvertent or isolated mistakes.  *Betty K,* 432 F.3d at 1339–40.  Nor, typically, is mere delay. *Boazman v. Econ. Lab., Inc.,* 537 F.2d 210, 211–12 (5th Cir. 1976).  It is clear from these rubrics that a court is to view various acts in litigation *in toto* to determine whether involuntary dismissal is warranted, and to not view acts in isolation.  The Defendants contend that when the Court looks at the misdeeds of Plaintiff and his counsel in this case it will find that as a whole dismissal is warranted.

Sanctions under the federal courts' inherent power can include dismissal of the lawsuit. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991). The Court's inherent power rests upon a finding of bad faith and should be exercised "with restraint and discretion." *See Byrne v. Nezhat,* 261 F.3d 1075, 1106 (11th Cir. 2001) (internal citations omitted).  In cases in which dismissal is appropriate, such a severe sanction is not merely meant to penalize, but also to deter bad conduct during discovery. *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976). *Parties who offer evasive interrogatory answers and deposition testimony which omits relevant information invite sanctions.  Long Mfg. N.C., Inc. v. Nichols Tractor Co., Inc.,* 561 F.2d 613, 617 (5th Cir. 1977); *see also* Fed. R. Civ. P. 37(a)(4).  Plaintiff's counsel is on clear notice of this exact axiom, as the italicized phrase was stated in an opinion dismissing his client's case. *Gonzalez v. Bus. Representation Int'l, Inc.,* 248 F.R.D. 644 (S.D. Fla. 2008) (dismissing Plaintiff's counsel's case for engaging in discovery fraud—withholding clearly discoverable and relevant information concerning the plaintiff's damages).  Here, the entire litigation, when viewed holistically, demonstrates repeated conduct of both the Plaintiff and his counsel that is

---

[2] Separate from this analysis, a district court may dismiss a case without prejudice under Rule 41(b), even *sua sponte,* for failure to prosecute or failure to follow court orders.  *See Hanna v. Florida,* 599 Fed. App'x 362, 363 (11th Cir. 2015) ("Under the Federal Rules of Civil Procedure, a court may dismiss a case when the plaintiff fails to comply with procedural rules or a court order.").

fraud, obstruction, and a complete disregard of the federal rules and local rules, and Court Orders.

### III. INVOLUNTARY DISMISSAL/SUMMARY JUDGMENT IS WARRANTED BECAUSE OF DISCOVERY FRAUD PERPETRATED BY THE PLAINTIFF AND HIS COUNSEL, INCLUDING THE PLAINTIFF'S USE OF A FALSE NAME AND THE FAILURE TO CORRECT IT.

The litigation abuse/discovery fraud in this case is quite widespread, and Plaintiff's counsel has been repeatedly specifically warned about the same abuse/fraud that has occurred in this case. *Aguilar v. United Floor Crew, Inc.*, 2015 WL 2415421 (S.D. Fla. 2015) (dismissing case with prejudice in which Plaintiff's counsel's client used a false name and engaged in discovery abuse by failing to provide information in discovery that impacted his potential damages); *Rodriguez v. Marble Care Int'l, Inc.,* 863 F. Supp. 2d 1168 (S.D. Fla. 2012) (sanctioning Plaintiff's counsel for engaging in abusive litigation tactics and for engaging in frivolous filings and cases); *Gonzalez v. Bus. Representation Int'l, Inc.,* 248 F.R.D. 644 (S.D. Fla. 2008) (dismissing Plaintiff's counsel's case for engaging in discovery fraud—withholding clearly discoverable and relevant information concerning the plaintiff's damages).[3]

As Judge Bloom explained concerning Plaintiff's counsel and his client in a recent case (decided about 6 months ago):

> It also bears noting that counsel for Plaintiff are no strangers to discovery sanctions and Rule 41(b) dismissal. This is not the first time

---

[3] It is well-established that a good faith investigation should be conducted prior to suing someone. *Ortiz v. D&W Foods, Inc.,* 657 F.Supp.2d 1328 (S.D. Fla. 2009) (holding so in a case brought under the FLSA in which fees were granted because it was clear no presuit investigation was performed to determine whether the corporate-defendant's gross revenue exceeded $500,000 annually). No such investigation took place in this case (as Plaintiff testified that he did not speak to anyone about his damages and cannot say that he is owed anything now). [D.E. ]. Thus, it has become strikingly clear that Plaintiffs' counsel's law firm is a law firm that simply does not care about who it files a suit against, does not conduct its due diligence with a good faith investigation beforehand, and is only concerned with filing cases in order to attempt to force settlements. *Guzman v. Irmadan, Inc.*, 551 F. Supp. 2d 1368 (S.D. Fla. 2008) (granting summary judgment in favor of defendants where gross annual revenues did not exceed $500,000); *aff'd, Guzman v. Irmadan, Inc.,* 322 Fed. Appx. 644 (11th Cir. 2009); *Navarro v. Broney Automotive Repairs, Inc.,* 533 F. Supp. 2d 1223 (S.D. Fla. 2008) (granting summary judgment in favor of defendants), *aff'd, Navarro v. Broney Automotive Repairs, Inc.,* 2008 WL 2315869 (11th Cir., June 6, 2008); *Guevara v. Weiss & Woolrich Contractors, Inc., et al.*, Case No. 10-21177-CIV-MARTINEZ. Simply put, Plaintiffs' counsel will continue to persist in this behavior if the Court does not impose a penalty for the filing and prosecuting of frivolous cases and the utilization of abusive and fraudulent litigation and discovery tactics. Such actions bring undue negative attention and criticism to an honorable profession that is responsible for many positive things in today's society.

Plaintiff's counsel unsuccessfully defended their actions and their clients' from such meritorious accusations. Or even the second. In *Rodriguez v. Marble Care Int'l, Inc.*, 863 F. Supp. 2d 1168 (S.D. Fla. 2012), the same lawyers who appear for Plaintiff here were sanctioned for failing to engage in proper pre- and post-suit investigation, resulting in the filing and maintenance of a frivolous FLSA case.   In *Gonzalez v. Bus. Representation Int'l, Inc.*, 248 F.R.D. 644 (S.D. Fla. 2008), the plaintiff—represented by the same attorneys who appear for Plaintiff here—engaged in obstruction of and denied access to discoverable evidence, resulting in dismissal without prejudice pursuant to Rule 41(b).

\*\*\*

Any lesser sanction here—as examples, requiring Plaintiff (and his counsel) to pay for all of Defendants' legal fees incurred in this case to date, or dismissal without prejudice—would reward Plaintiff with a do-over. The price paid for misinforming opposing parties and the Court through the pleading and discovery stages would be, as just one example, the gift of entering a deposition armed with the knowledge of Defendants' litigation strategy and able to avoid past mistakes. Such a sanction would ill "fit the interests jeopardized and the harm caused." Dismissal, with prejudice, would. *See Zocaras,* 465 F.3d at 485; *see also Dotson v. Bravo,* 321 F.3d 663, 668 (7th Cir. 2003) ("Filing a case under a false name deliberately, and without sufficient justification, certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action.").

*Aguilar v. United Floor Crew, Inc.*, 2015 WL 2415421 (S.D. Fla. 2015).  This latter paragraph is particularly applicable to this case, and Defendants request that the Court follow it, and thus dismiss the case, and not impose lesser sanctions of ordering Plaintiff to amend the Complaint, his interrogatory answers, the statement of claim, submitting to another deposition (this time where he answers the questions), because all that would give Plaintiff a whole do-over assisting him with this claim, which is precisely what Judge Bloom said is not appropriate.

The cases are legion that the failure to provide damages calculations or even accurate information concerning damages in discovery absolutely may lead to the imposition of sanctions, including involuntary dismissal with prejudice.  *Aguilar v. United Floor Crew, Inc.*, 2015 WL 2415421 (S.D. Fla. 2015); *Gonzalez v. Bus. Representation Int'l, Inc.,* 248 F.R.D. 644 (S.D. Fla. 2008); *Long Mfg. N.C., Inc. v. Nichols Tractor Co., Inc.,* 561 F.2d 613, 617 (5th Cir. 1977); *Hoffman v. Construction Protective Servs., Inc.*, 541 F.3d 1175, 1179-809 (9th Cir. 2008) (affirming district court's striking of plaintiffs who failed to properly provide damages calculations); *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 445 (5th Cir.

2009) (affirming grant of summary judgment for defendant against those plaintiffs who "had numerous opportunities to provide deposition testimony, affidavits, documents, or answers to interrogatories in support of their claims" but failed to do so).

The appellate court review's a district court's dismissal of an action as a discovery sanction for an abuse of discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639 (1976). A district court has the authority to impose sanctions, including dismissal, on a party for abuse of the discovery process. Fed.R.Civ.P. 37(b)(2)(C). "Dismissal with prejudice is the most severe sanction. . . . But [it] may be appropriate when a plaintiff's recalcitrance is due to willfulness, bad faith or fault." *Phipps v. Blakeney,* 8 F.3d 788, 790 (11th Cir. 1993) (citation omitted). Because dismissal with prejudice is considered a drastic sanction, a district court may only implement it as a last resort, when a party's failure to comply with a court order is a result of willfulness or bad faith and the district court finds that lesser sanctions would not suffice. *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1542 (11th Cir. 1993). Here, after the Court reads what has occurred, it will be clear to it that what occurred here is willful.

### A.   **The False Name**

The first ground upon which Defendants urge the Court to either involuntarily dismiss the case or grant summary judgment in their favor is that the name on the caption is false (though the real name of the Plaintiff is not entirely clear), and there were misrepresentations about the Plaintiff's name in discovery (in the interrogatory answers), to attempt to further coverup that suit was filed under a false name, apparently for the dual purpose of impeding any investigation into the Plaintiff and to enable the Plaintiff's illegal alien status to remain covert. This is precisely what Plaintiff's counsel just did in another FLSA case and upon which in significant part (the other part was improperly refusing to provide discovery with respect to damages) the court relied to dismiss with prejudice. *Aguilar v. United Floor Crew, Inc.*, 2015 WL 2415421 (S.D. Fla. 2015) (noting that the plaintiff on two occasions gave false names and then impeded discovery concerning the plaintiff's damages by failing to disclose discoverable information about the hours he claimed he worked). In *Aguilar*, Judge Bloom relied heavily on an Eleventh Circuit case that holds that a plaintiff's provision of a false name on the lawsuit itself warrants dismissal with prejudice and is an inherent fraud on the Court. *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006).

Here, the lawsuit is filed under the name of Daniel Valderrabano Torres, and in "Plaintiff's"[4] interrogatory answers, when asked to list all names that he has ever gone by or used, identified only "Daniel Valderrabano Torres", and claimed that he had a drivers' license issued in that same name.  [D.E. 26 ¶¶ 12-14) (see interrogatory response—Interrogatory No. 1—stating just that).   However, at his deposition, Plaintiff identified himself as Daniel Valderabano Torres, and claimed that he did not have a drivers' license, but that he has been in the United States for 10 years and drives anyway from time to time when it suits his convenience and that he intends to continue to drive even though he realizes he poses a risk to innocent people.  [D.E. 26 ¶ 12].  What is worse is that the interrogatory answers appear to be a complete sham and not signed by him because he testified that he did not sign any documents or participate in the discovery process at all with his attorneys.  [D.E. 26 ¶ 12].

In his deposition, he was asked to carefully and slowly spell his name, specifically asked if he used just one "r" in his name, and then asked whether he used any other names, but he spelled a different name then the name identified on his lawsuit and his interrogatories and failed to disclose any other name, only stating that his last name was "Torres" (thus leaving both Defendants and the Court not knowing the actual identity of the Plaintiff and making a mockery out of our Court system).  [D.E. 26 ¶ 13].  Plaintiff did not disclose the name that he filed suit under.  As the *Aguilar* court so aptly observed, the reason for phony names provided by plaintiffs (and by Plaintiff's counsel in particular) is to subvert and pervert the Court system and the Court case, so negative background information is concealed, other jobs are concealed, access to discovery that could be used to contravert damages is prevented, the extent of Rule 608(b) evidence is obfuscated, etc.

The deposition testimony should be compared with the interrogatory response, in which Plaintiff (ostensibly Plaintiff, because Plaintiff does deny that he responded to any interrogatories) stated that his name was spelled differently, and the notary public, K. David Kelly, one of Mr. Zidell's associates, spelled the name differently as well, noting that he took the name off of the Plaintiff's Mexican Voter Registration Card.  [D.E. 26 ¶ 14].  The answer to Interrogatory No. 1 was also fraudulent in that it implies that Plaintiff has a social security number (he testified in his deposition that he does not), and expressly states that he has a drivers'

---

[4] The word "Plaintiff" is in quotes because he testified that he did not provide any interrogatory answers, though answers purporting to be the Plaintiff's were served in this case to the Defendants.  This is discussed fully below, and they are attached to Defendants' Statement of Material Facts.

license, though he stated in his deposition, that he does not (though he did testify in his deposition that he never signed any interrogatory answers, and thus the answers submitted by Plaintiff's counsel are apparently fraudulent). [D.E. 26 ¶¶ 12-14]. The foregoing requires the conclusion that the misspelling was not just some mistake, because the Plaintiff apparently knows under oath how to state his name and how to spell it, yet one of two things happened, *either*: 1) Plaintiff's lawyers submitted false/fraudulent interrogatory answers with a false name for the Plaintiff (and also provided that false name on the Complaint) *or* 2) Plaintiff lied in his deposition about his non-involvement with the interrogatory responses and provided his Mexican Voter Registration Card to the notary public and that card has a false name. Either result is sanctionable, inappropriate, and shows fraud.

The practical problem caused by Plaintiff's deception is it leaves Defendants wondering what Plaintiff's real name is (is it even "Daniel Torres" or some derivation), and, if so, is it the same Daniel Torres a maintenance worker (Plaintiff acknowledges that he is presently a maintenance worker) who brought a FLSA action in *Daniel Torres v. WL General Services Corp.*, Case No. 15-23563 (S.D. Fla.), which is currently pending, the Daniel Torres who sought social security benefits in *Daniel Torres v. Social Security Administration*, Case No. 13-23528 (S.D. Fla.), or the convicted felon in *Daniel Torres v. Secretary of Dep't of Corrections*, Case No. 04-20058 (S.D. Fla.). There is no excuse for Plaintiff's counsel to be filing lawsuits under false names after the *Aguilar* decision. As the *Aguilar* court lamented, Plaintiff's counsel is slow to learn these lessons, or perhaps, as is more apparent, Plaintiff's counsel is actively involved in the deception and discovery abuse. Plaintiff's counsel's active involvement is demonstrated by the wholesale deposition fraud (refusal to answer simple questions about whether Plaintiff was paid overtime, whether he is owed anything, if so how much, etc.) that is set forth below in detail, as it is clear that Plaintiff did not come up with the obstructionist tactics on his own, and Plaintiff's counsel at the deposition never once told his client to answer the questions and to knock off the repeated refusal to answer questions. Defendants were further stymied in their attempts to learn the most basic facts about Plaintiff's case, given that the Plaintiff repeatedly answered questions with "I can't answer that question" and then gave multiple definitions/explanations for what he meant by "I can't answer that question", including to state when asked to explain what he meant by that phrase: "I can't answer that question." [D.E. 26 ¶ 17 & n.2].

**B.   The Fraudulent Discovery and Discovery Abuse**

It is beyond cavil that when one sues under a false name (and here there was no attempt to amend the Complaint to bring suit under a different and/or correct name despite the deposition testimony that the name under which the Complaint was filed is not the Plaintiff's name, and despite the fact that Plaintiff's counsel was just sanctioned in the *Aguilar* case for bringing suit on behalf of a plaintiff with a false name) and/or provides a false name in discovery under oath that a discovery abuse *per se* has occurred, and the courts in *Aguilar* and in *Zocaras* make that clear.  Furthermore, here, like in *Aguilar* and other cases in which people bring suit under false names, the discovery abuse does not remotely start and stop with the false name, but rather same is the tip of the iceberg.  The below recitation of facts shows a calculated, intentional scheme to thwart discovery and engage in fraud/abusive tactics, with no regard for ethics.

Plaintiff's fraudulent interrogatory answers are further demonstrated by his testimony (or his attorney's fraudulent testimony) that he has "Drivers' License #003520120" [D.E. 26 ¶ 15], coupled with the testimony in his deposition that he does not have a drivers' license (but he drives anyway without insurance or a license for his convenience).  [D.E. 26 ¶ 15].

Some of the other discovery fraud that the Plaintiff and his attorney have engaged in in this case is related to damages.  First, Federal Rule of Civil Procedure 26(a)(1) and the Southern District of Florida's Local Rules (Local Rule 16.1(b) require the service of initial disclosures, and here the Joint Scheduling Report of the parties also required the parties to serve initial disclosures on the opposing party on or before November 30, 2015.  [D.E. 16 at p.3].  One of the key requirements of the initial disclosures is the requirement to provide a damages calculation, Fed. R. Civ. P. 26(a)((1)(D), but, here, the Plaintiff neglected to ever serve Rule 26 Initial Disclosures on the Defendant, thus violating the federal rules, the local rules, and the Joint Scheduling Report.  This also left Defendants in the dark concerning witness identification.  Thus, *this is a clear violation of the two different rules of civil procedure*.

The next problem with the Plaintiff's discovery abuse is his complete failure to engage in discovery concerning his damages calculations, which is eerily similar to the plaintiff in *Aguilar* and his refusal to engage in damages discovery.  First, even though a Statement of Claim was purportedly filed on his behalf, he testified that he did not discuss his damages or what he is allegedly owed with *anyone* (this includes his attorney) and never provided any information in discovery in this case, though he refused to answer whether documents exist that are unfavorable

11

to his claim for alleged overtime.   [D.E. 26 ¶ 16].  Thus, the Statement of Claim is apparently pure fabrication by Plaintiff's counsel.  [D.E. 26 ¶¶ 16-17].  This is a real problem, because the Plaintiff was ordered by the Court to provide an accurate Statement of Claim [D.E. 6], and *thus an intentional violation of a Court Order occurred here*.  Second, other testimony that Plaintiff gave suggests that the Statement of Claim is fabricated.  For example, the Statement of Claim states that Plaintiff (a sushi chef) worked on average 60 hours each week for the Defendant but was not paid overtime, and that Plaintiff's hourly rate was $11.00/hr.  Plaintiff testified that the Defendant's time and pay records are accurate, but those time and pay records demonstrate that Plaintiff, on the honor system, created his own time sheets every week, but the recorded hours never hit 60 and are typically between the high 40s and mid to high 50s; he further testified that he was never paid more than $10.00/hr in the last 10 years.  [D.E. 26 ¶ 16].  This shows that Plaintiff either provided a false hourly rate or his attorney made the false hourly rate up and that he provided a very high damages disclosure (intentionally over-exaggerating his hours worked) thus attempting to defraud the Court system by giving an average higher than hours he ever worked and extort/scare the Defendants.  In addition to not using the time cards, as a basis for calculating his damages even though he said they were accurate, he did not deduct for breaks although he took at least 30 minutes worth of breaks a day and thus even if he were owed overtime, it be at least 2.5 hours less than what the time cards show [D.E. 26 ¶ 7], and his co-worker sushi chefs testified that they were paid overtime [D.E. 26 ¶ 5], which strongly suggests that Plaintiff was paid overtime and the suit was brought for frivolous reasons, particularly since Plaintiff acknowledged in his deposition that he is not owed anything.  [D.E. 26 ¶¶ 17, 18, 20].

The Statement of Claim is also fraudulent, because it is predicated on an hourly wage of $11.00, but Plaintiff never earned that, as he said after testifying that he has worked in the United States for approximately the last 10 years illegally that during those 10 years he earned no more than $10.00/hr.  [D.E. 26 ¶ 17].  Again, this all shows that false information was provided in the Statement of Claim which is a violation of the spirit of the Court Order.  [D.E. 6].  No lawyer would reasonably interpret that order to mean that a statement of claim can be filed without speaking to the client and that any information whether accurate or not can be included therein, and Plaintiff has failed to ever amend same despite knowing about the information discussed herein.  Plaintiff's counsel did not speak to his client, because the Plaintiff testified that he has never spoken with anyone about his damages in this case.  [D.E. 26 ¶ 17].

In this same vein, Plaintiff testified he has no idea what if anything he is owed, does not know what he will ask the jury to award him, has never attempted to calculate any damages, refused to answer questions concerning if he really is owed something from the Defendants he would be able to identify that, at least generally, and eventually admitted that he answered "I just can't answer that" to a question that asked what his damages are because he really does not know if he is owed something or not. [D.E. 26 ¶ 17]. The failure to provide honest damages calculations and disclosures results in dismissal. *Burrell v. Crown Cent. Petroleum, Inc.*, 177 F.R.D. 376, 385 (E.D. Tex. 1997).

This demonstrates that the Statement of Claim is fraudulent and done without any input from Plaintiff, and that any other reference to damages in the interrogatory answers is false, and it also shows that Plaintiff really is not owed anything. This is someone who has previously brought an overtime claim, and knows the FLSA, yet, he plainly testified that he cannot say that he is owed anything or not. Either Plaintiff really, as Defendants contend, not owed anything because he was paid overtime, or Plaintiff really is, but he is refusing to state and refusing to allow any discovery concerning his damages, and either case requires a grant of sj or dismissal in favor of the Defendants.

Third, whenever the Plaintiff was asked questions about his damages in his deposition (and also with witnesses and his approach to discovery), he would respond with "I can't answer that question." [D.E. 26 ¶¶ 17 & n.2, 18, 19]. Such a response is entirely inappropriate and obstructionist. These responses are further support that the Plaintiff is not owed anything. Notably, counsel, who just went through an involuntary dismissal based on similar behavior which order contained a clear admonition to stop such misconduct, did not at any point instruct his client to stop engaging in obstructionist discovery tactics by refusing to answer questions, and has not seen to it the name on the Complaint is changed, did not obtain information from his client to draft the Statement of Claim (and not amended now it is clear it is a fraud), and submitted fraudulent discovery responses, and thus appears to be an active participant in the fraud and abuse—it appears this lawyer seeks clients that are dishonest and furthers litigation based on dishonesty.

The next discovery issue is that Plaintiff admitted that he did not sign any interrogatories or provide answers and never looked into whether he had documents that pertained to the case (and thus were responsive to discovery requests). [D.E. 26 ¶ 19]. A set of interrogatory answers

was served by the Defendants and a response was provided by the Plaintiff's attorneys.  As stated above, it purports to have been verified by Plaintiff himself, and a response to a request for production was served, and a Response to that was served by the Plaintiff stating that some documents would be produced, and other documents do not exist.  [D.E. 26 ¶ 19].  It would be bad enough for Plaintiff to answer questions regarding whether he participated in discovery with "I do not know", but since he answered them "no" and since it is undisputed that the discovery responses were served, it is clear that Plaintiff's counsel might not have shared the fact that discovery was served with the Plaintiff and fraudulently provided counsel's own preferred answers, particularly since the interrogatory responses contain a false name, one that Plaintiff does not use.  [D.E. 26 ¶¶ 12-14].  If Plaintiff's counsel really did, and if in fact Plaintiff lied in his deposition about his lack of participation in discovery, that is still problematic and requires involuntary dismissal because it is unacceptable and prevented defense counsel from following up and asking any questions concerning discovery.  Plaintiff also completely refused to inform Defendants as to whether he possesses documents that are unfavorable or negative to his case. [D.E. 26 ¶ 19].  Plaintiff also stopped all inquiry into whether other efforts that Defendants wanted to pursue in discovery, such as whether Plaintiff had spoken to witnesses, whether he had any witnesses (since he did not serve initial disclosures).  [D.E. 26 ¶ 19].  All of the foregoing should be taken as what it is, wholesale and intentional discovery abuse and stonewalling.

### C.   <u>The Serial Plaintiff Issue, the Lawsuit Is a Set Up, and Taxes</u>

The Court should also have serious concerns with the fact that the Plaintiff is a serial plaintiff who has filed other actions under the FLSA with the same lawyer, and who is openly flouting the tax laws.  [D.E. 26 ¶¶ 9-10, 21].  While the fact, standing alone, that Plaintiff has previously brought an FLSA suit may not require the conclusion that he is a serial plaintiff, under the circumstances of this case and how it was filed and maintained and the fact that he never spoke with anyone about his pay, requires the conclusion that summary judgment or dismissal should be granted, because it shows knowing misuse of the Court system.  It is clear Plaintiff really was paid his overtime given the above facts and argument.  However, even if he really was not, Plaintiff was under an obligation to say something given the previous suit, but Plaintiff testified that he never did.  [D.E. 26 ¶ 20].  This whole case is a case study on what is a complete and inappropriate misuse of the Court system by both the lawyer and the client.

The importance of this testimony is underscored by the testimony from Plaintiff that he does not know what hours the pay he received was intended to compensate and thus cannot say that he is owed overtime (as the Defendants maintain that he was paid overtime), and his testimony that he cannot describe any act or omission that supports his claim, and cannot state any item of damage that he has (the Complaint and Statement of Claim only identify one, overtime) suggests that this is why Plaintiff's counsel handled the discovery without Plaintiff's involvement and apparently instructed him to refuse to answer any questions about his damages in his deposition.  [D.E. 26 ¶ 20].  The explanation for the above is not happenstance.  The fact that he would do all of this after having already sued once for it shows intent.  What makes the serial plaintiff issue even worse is there was no presuit demand, and it appears that the Plaintiff and his counsel wanted to use the threat of FLSA litigation and its crushing attorney fee provisions against a small company with barely the $500,000 threshold in sales.  While the Defendants request that this Court grant sj and/or dismissal on this record, at a minimum, and in the alternative, they request that all attorneys' fees and costs be stricken, and that the Plaintiff and his attorney not be allowed to recover either.  However, the striking of fees essentially lets Plaintiff off of the hook and he is absolutely engaged in misconduct himself as set forth herein.

This argument is not new, and the courts have long held that dismissal is appropriate "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation."  *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933).  The Supreme Court has applied that rubric to an action for money damages under a federal statute (the securities laws), noting that the plaintiff bore equal responsibility for the violations he sought to redress and preclusion of the suit did not significantly interfere with the effective enforcement of securities law.  *B. Eichler, H, Richards, Inc. v. Berner*, 472 U.S. 299 (1985).  Accordingly, the Court here should grant sj because of the Plaintiff's stirring up (or in fact creation) of litigation.  *Horne v. United Services Automobile Association*, 279 F. Supp. 2d 1231, 1237 (M.D. Ala. 2003) (citing *Brooks v. Bellsouth Telecommunications, Inc*., 164 F.R.D. 561, 567 (N.D. Ala. 1995) (stating that "[c]ourts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation") (quoting *Severtson v. Phillips Beverage Co*., 137 F.R.D. 264, 266 (D. Minn. 1991))).

Numerous other courts have become concerned with serial plaintiffs, some of which have dismissed lawsuits because of it.  *Brother v. Tiger Partner, LLC*., 331 F. Supp. 2d 1368, 1374-75

(M.D. Fla. 2004); *Wilson v. Kayo Oil Co.*, 535 F. Supp. 2d 1063 (S.D. Cal. 2007) (dismissing an ADA case and issuing an order to show cause why sanctions should not be imposed); *In re Chiron Corp. Securities Litigation*, 2007 WL 4249902 (N.D. Cal.) (noting that class counsel's use of serial plaintiffs raises the specter of credibility problems and conflicts of interest, among other issues); *Molski v. Mandarin Touch Restaurant*, 385 F. Supp. 2d 1042 (C.D. Cal. 2005) (dismissed case for lack of standing, and noting that plaintiff would be declared a vexatious litigant whose counsel would be closely scrutinized in the future).   Under the circumstances of this case, the serial plaintiff aspect weighs in favor of dismissal/sj.   For the Plaintiff to waltz in and brazenly refuse to answer questions and even be able to articulate that is owed overtime warrants sj or dismissal, as follows:

> Q:   . . . [Y]ou can't say remotely what on earth you would settle the case for if you have no idea really what you are suing for.
>
> A:   No.
>
> ***
>
> Q:   So you're bringing suit really without having any idea what it is that you're owed?
>
> A:   I can't answer that question.
>
> ***
>
> Q:   And so if I were to ask you to please state each item of damage that you claim in this case, that's something that you wouldn't be able to?
>
> A:   Correct.

[D.E. 26 ¶¶ 17, 20].

## D.   Other False Allegations in the Lawsuit

The Complaint contains complete falsehoods, such as that Plaintiff lives in Miami-Dade County and that all the work performed by Plaintiff for the Defendants occurred in Miami-Dade County [D.E. 1 ¶¶ 2, 5], but the Plaintiff testified that he has never lived in Miami-Dade County and never performed any work for the Defendants in Miami-Dade County.  [D.E. 26 ¶ 22].  The Complaint also states that the corporate had over $500,000 in gross sales in the years 2011-14 [D.E. 1 ¶¶ 12, 13], but the Plaintiff testified that he had no idea what the gross sales were for the corporate Defendant for any of those years.  [D.E. 26 ¶ 22].

The Plaintiff also admitted that many allegations in the Complaint are simply not true, or he has no knowledge as to their truthfulness and he also admitted certain things that the

Defendants asked him to in their requests for admission, but which he denied.  For example, he stated that he cannot say that Rock & River performed any work outside of the State of Florida, does not know what it means for a company to be engaged interstate commerce, for a company to be engaged in commerce, or for a company to substantially affect interstate commerce.  [D.E. 26 ¶ 23].  Plaintiff testified that he was not involved in trade, commerce, transportation, or communication between Florida and any point outside of Florida, he was not involved in the transportation of goods and services across state lines, and he did not know whether the corporate Defendant is involved in the production of any goods or whether the FLSA applied to the Defendant.  [D.E. 26 ¶ 23].  Plaintiff testified that he was only assigned to work in the State of Florida, did not witness any selling of any products outside of Florida.  [D.E. 26 ¶ 23].

### E.   The Failure to Provide a Presuit Demand

In this district, because of the massive amount of FLSA suits being filed, the failure to provide a presuit demand may result in a denial of attorneys fees to the prevailing plaintiff.  For many years, the federal courts have sometimes stricken a request for attorneys' fees in cases arising under the FLSA.  *See, e.g.*, *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1167 (S.D. Fla. 2003) (applying the Supreme Court's decision in *Buckhannon* in the Southern District of Florida to an FLSA case to deny attorneys fees, even though the Plaintiff was admittedly a prevailing party).  It should be noted that the *Goss* court determined the plaintiff was a prevailing party *because a settlement was approved by the court.*

The rubric from *Goss* has now been affirmed by the Eleventh Circuit, and made to apply to a striking of attorneys' fees, when a plaintiff in a FLSA case sues certain defendants (there a law firm) for alleged wage and hour violations without first serving a presuit demand letter and providing the ability to pay whatever monies may be due.  *Sahyers v. Prugh, Holliday & Karatinos, P.A.*, 560 F.3d 1241 (11th Cir. 2009) (striking claim for attorneys' fees because of a failure to provide a presuit demand letter when suing a law firm, just like here, because of the disgrace in not letting a peer have a chance to correct a wage issue).  Here, while the Defendants are not a law firm, the rubric should apply and the Court should grant summary judgment or dismiss the claim for attorneys' fees, particularly given the abuse that has occurred in discovery and with the filing of the case in the first instance (without even speaking to Defendants about his pay), since it is undisputed that no presuit demand was ever provided.  [D.E. 26 ¶ 11].

### IV.   INVOLUNTARY   DISMISSAL/SUMMARY   JUDGMENT   IS WARRANTED BECAUSE OF NO COVERAGE.

FLSA claims can be proven through either individual coverage or enterprise coverage. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292 (11th Cir. 2011).  The Court should also note that Plaintiffs completely failed to plead individual coverage, but regardless, had they, neither enterprise coverage nor individual coverage are affirmative defenses but rather are part of the prima facie case of the Plaintiffs to prove entitlement to overtime, *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)

### A.   Individual Coverage

For FLSA individual coverage to apply, a plaintiff must prove that he or she is "engaged in commerce or in the production of goods for commerce."  *See* 29 U.S.C. § 207.   To determine whether an employee performed such work, a court must focus its inquiry on the activities of the employee and not on the business of the employer.  *Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1267-68 (11th Cir. 2006).  In *Thorne*, the Eleventh Circuit held that it was "the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce", and thus, an employee must be "engaged in commerce", which means that the employee must be "directly participating in the actual movement of persons or things in interstate commerce".  *Thorne*, 448 F.3d at 1266.  Here, Plaintiff admitted that he was not involved in the actual movement of them across state lines.  [D.E. 26 ¶ 4].

### B.   Enterprise Coverage

Even after *Polycarpe v. E&S Landscaping Service, Inc.,* 616 F.3d 1217 (11th Cir. 2010), a plaintiff asserting the existence of enterprise coverage must still prove that two or more employees regularly and recurrently handled goods or materials that moved across state lines. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292 (11th Cir. 2011); *Lira v. Matthew's Marine Air Conditioners, Inc.*, Case No. 09-61178-CIV-ZLOCH (finding that enterprise coverage was not present, and thus entering judgment for defendants).  Plaintiff cannot prove this prong either.  [D.E. 26 ¶ 5].  Thus, despite the fact that *both* prongs need to be met to establish FLSA enterprise coverage (29 U.S.C. § 203(s)(1)(A)), neither prong can be met in this case, and Plaintiff has failed to set forth any material issues of fact in this regard.

### V.   INVOLUNTARY   DISMISSAL/SUMMARY   JUDGMENT   IS WARRANTED BECAUSE OF FAILURE TO PROVE DAMAGES.

An employee who sues for overtime compensation under the FLSA bears the burden of proof by a preponderance of the evidence that his employer failed to properly compensate him for his completed work week-by-week. *Sizemore v. Affordable Battery, Inc.*, 49 F.Supp.3d 1138 (S.D. Fla. 2014); *Olson v. Star Lift, Inc*., 709 F. Supp. 2d 1351 (S.D. Fla. 2010); *Laplante v. Lake Worth Terrace Rehabilitation*, 725 F. Sup. 2d 1358 (S.D. Fla. 2010); *Myers v. The Copper Cellar Corporation*, 192 F.3d 546, 551 (6th Cir. 1999). It is settled that a plaintiff must actually prove the hours that he worked and the overtime to which he is owed. *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F. Supp. 2d 529, 534-36 (N.D. Ill. 2006) (stating that when the only evidence is plaintiff's "declaration asserting without specificity that she worked more than 40 hours per week . . . [t]hat . . . is not sufficient to create a genuine issue of fact"); *Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997) (stating that "conclusory allegations and selfserving [sic] affidavits [regarding hours worked], if not supported by the record, will not preclude summary judgment"). Defendants discussed this issue above *ad nauseum*.

The plaintiff can typically establish the extent of the overtime for which he was not paid through the discovery and analysis of the defendant-employer's code-mandated records, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), like those here that Plaintiff admits are accurate. [D.E. 26 ¶ 16]. However, if the defendant maintained accurate records from which the plaintiff can "conclusively reconstruct the definite days and hours" during which plaintiff worked, the aforementioned "relaxed" burden of proof is unavailable to the plaintiff, and the plaintiff must prove his damages with specificity. *Myers*, 192 F.3d at 551-52. Under either standard, a plaintiff's failure to produce sufficient and admissible evidence *with specificity* entitles the defendant to summary judgment. *See e.g.*, *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F. Supp. 2d 529, 534-536 (N.D. Ill. 2006).

Here, Plaintiff testified that he wrote his time on the time cards and that those entries are accurate. [D.E. 26 ¶ 16]. Why then did Plaintiff not use those time cards when calculating his damages, and why make all these statements that he is unable to prove his damages? Of course, as set forth above in detail, it is clear from Plaintiff's deposition that he is not owed anything [D.E. 26 ¶¶ 17, 18, 20], and his approach to discovery was to submit a false Statement of Claim, never even talk to his lawyer (or anyone else) about his damages, not provide an answer to what his damages are in his interrogatory answer, and then failing to answer any questions about

19

damages in his deposition, which explains why he did not bother preparing damages calculations there were no damages.  It is clear there are no damages, and sj should be granted on that basis.

## VI.   IWASAKI'S INDIVIDUAL LIABILITY IS DERIVATIVE OF THAT OF THE CORPORATE DEFENDANT.

If the Court grants sj or dismissal in this case, because Iwasaki's liability is only derivative to that of the corporate Defendant's liability, Iwasaki is therefore also entitled to sj or dismissal.  *Zarate v. Jamie Underground, Inc.*, 629 F. Supp. 2d 1328 (S.D. Fla. 2009).

## VII.   PLAINTIFF'S REQUEST TO EXTEND THE STATUTE OF LIMITATIONS BEYOND THREE YEARS IS WITHOUT MERIT.

Under the FLSA, there is a two-year and possibly a three-year statute of limitations.  29 U.S.C. § 255.  Here, the Plaintiff has pled far beyond a 3-year statute of limitations in the Complaint's *ad damnum* clause.  There is no basis for tolling of § 255 in this case, and thus sj should be granted on such claim.  While the weight of authority favors equitable tolling of FLSA claims, *Hickman v. United States,* 43 Fed.Cl. 424, 427 (1999) (ruling that FLSA is subject to equitable tolling); *Udvari v. United States,* 28 Fed.Cl. 137, 139 (1993) (assuming equitable tolling of FLSA is permissible but declining to do so); *see also Henchy v. City of Absecon,* 148 F.Supp.2d 435, 438 (D.N.J.2001) ("Read into every federal statute of limitation, including the FLSA, the equitable tolling doctrine applies"), it is extremely difficult to prove a set of facts to warrant equitable tolling, and here no basis at all because Plaintiff had previously filed a FLSA suit against a sushi restaurant, and thus clearly knew his rights, and Plaintiff never spoke with anyone about his pay, thus, no argument can be made that the Defendants somehow deceived Plaintiff into believing he was not entitled to overtime.

## VIII.   PLAINTIFF'S REQUEST FOR BOTH PREJUDGMENT INTEREST AND LIQUIDATED DAMAGES IS IMPROPER, AND DEFENDANTS REQUEST THAT THE COURT GRANT SJ ON THE LIQUIATED DAMAGES CLAIM.

Plaintiffs may not recover both liquidated damages and prejudgment interest under the FLSA. *Joiner v. City of Macon*, 814 F.2d 1537 (11th Cir. 1987).  *See also Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 715 (1945); *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 469 (5th Cir. 1979).  However, Plaintiff has pled both of them in the *ad damnum* clause.  [D.E. 1]. Since he is precluded from obtaining both, Defendants move for summary judgment as to liquidated damages.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 11, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Stephen M. Fox, Jr., Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully Submitted,

Glasser & Kleppin
*Attorneys for Defendants*
8751 W. Broward Blvd
Suite 105
Plantation, FL 33324
Tel.  (954) 424-1933
Fax  (954) 474-7405
E-mail:  ckleppin@gkemploymentlaw.com

By:   s/Chris Kleppin
        Chris Kleppin
        Florida Bar No. 625485