**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 15-22882-CIV-SCOLA/OTAZO-REYES**

DANIEL VALDERRABANO TORRES *and all*　　　)
*others similarly situated under 29 U.S.C. 216(B)*　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff　　　　　　)
　　　　vs.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
ROCK & RIVER FOOD, INC.　　　　　　　)
TERUHIKO IWASAKI　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendants　　　　　)
_____ )
___

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND FOR INVOLUNTARY DISMISSAL,
ALTERNATIVELY, MOTION TO STRIKE ATTORNEYS' FEES**

COMES NOW Plaintiff, by and through undersigned counsel, and hereby files Plaintiff's

Response in Opposition of Defendant's Motion for Summary Judgment/Involuntary Dismissal

and in support thereof states as follows:

1. Defendants move for summary judgment/involuntary dismissal on seven (7) separate

   categories.

   1) Plaintiff used a false name.

   2) Plaintiff violated court orders, failed to provide initial disclosures, filed an incorrect

      statement of claim, and failed to answer discovery deposition questions to the liking

      of defendants' counsel.

   3) Plaintiff was paid all his overtime.

   4) There is neither individual coverage or enterprise coverage.

   5) The individual defendant is only derivatively liable if the corporation is liable.

   6) Plaintiff cannot go beyond the three-year statute of limitations.

1

      7)  Plaintiff cannot claim both liquidated damages and interest.

2.  In response to Defendants' motion, Plaintiff states that Defendants' motion for summary judgment/dismissal is without merit, and addresses each claim in turn.

      1)  Plaintiff did not use a false name, but simply misspelled his middle name at his deposition. Attached as exhibit "A" is identification that specifically demonstrates the name under which this lawsuit was filed, is one and the same belonging to plaintiff. Furthermore, as Defendants' counsel is well aware, this matter has come up in the past, see *Solano v. A Navas Party Production Inc.*, Case No. 09-22847-CIV-ALTONAGA, docket entry 22 whereby, upon noticing the incorrect spelling of Plaintiff's name, Plaintiff's counsel filed a motion to correct the spelling of Plaintiff's first name from Nolman to Holman[1]. Had this case warranted a name change to the caption of this lawsuit, Plaintiff's counsel would gladly have filed the necessary motion.

      2)  Neither Plaintiff nor Plaintiff's counsel violated any court order, all information required by Federal Rules of Civil Procedure Rule 26(a)(1) were provided to Defendants' counsel, either through plaintiff's statement of claim or answer to Discovery requests.[2] If Defendants' counsel had an issue with a discovery matter, Defendants should have filed a discovery motion with the court pursuant to the

---

[1] Defendants' Counsel has litigated this case in bad faith, has attempted to thwart jurisdictional discovery, and has transparently tried to make this into a false name case because Plaintiff, who is illiterate, misspelled one letter of his name at his deposition. A forthcoming motion to address these "concerns" is planned to be filed as well.

[2] It should be noted that the parties' joint scheduling report was filed on November 3, 2015 [DE 16]. Therefore, pursuant to Fed. R. Civ. P. 26(1)(C), defendants' initial disclosures were required to be provided by November 17, 2015. However, defendants' initial disclosures were not provided to plaintiff's counsel until three weeks after they were due, on December 10, 2015, in which defendants' counsel lists the very items, such as plaintiff's statement of claim, for which he complains he was not provided as required by Fed. R. Civ. P. 26(a)(1)(A). This is a classic case of the "pot calling the kettle black".

court's order [DE 6, ¶ 7] which states "<u>Discovery Motion Procedures</u>. Discovery motions (which must contain the Local Rule 7.1(a)(3) certification of good-faith conference) will be handled on an expedited briefing schedule and with a shortened page limitation, to prevent delay to the pretrial schedule…" If Defendants' counsel had any discovery issue, it should have been brought to the Court's attention prior to the discovery deadline, and not raised for the first time on a dispositive motion, in violation of S.D.L.R. 7.1(a)(3) for failing to confer. There was ample time for Defendants' counsel to raise any discovery issues prior to the discovery deadline and not wait to raise it for the first time on summary judgment, "[u]nlike the Emperor Nero, litigants cannot fiddle as Rome burns." *Vasapolli v. Rostoff*, 39 F.3d 27, 36 (1st Cir. 1994).[3]

3)  Plaintiff's overtime claim against defendants is for a 147- week period (August 3, 2012 through June 1, 2015). In discovery, Defendants produced 28 time cards which account for approximately 99 weeks of Plaintiff's employment. However, there are 48 weeks of Plaintiff's claim for which Defendants have not provided any time records. Furthermore, Defendants have not provided any documentation, whatsoever, for any wages[4] paid to plaintiff during the course of his employment with Defendants. Instead, contrary to established case law, Defendants attempt to carry their burden by testifying as to the amount they paid Plaintiff. However, Defendants' testimony is so contradictory, that it cannot be relied upon. For example, Defendant testified that Plaintiff was paid about $500-$600 a week [Iwasaki depo. P. 32 L. 20-25], while

---

[3] This is another transparent Red Herring injected into this case by Defendants' Counsel. All required information in discovery was provided to Defendants via Plaintiff's answers to request for production, answers to admissions, and answers to interrogatories
[4] The Defendants  paid the Plaintiff only  in cash.

simultaneously testifying that he paid plaintiff at the straight time rate of $10 an hour for the first 40 hours and $15 an hour for each overtime hour [Iwasaki depo. P. 43 L. 19-25]. In said calculation, plaintiff should have earned $655 which is above the range Defendant testified that plaintiff was paid. The limited time records appear to be in line with Defendants' example for which plaintiff should have been paid. Regardless, as Defendants have not produced[5] complete time records, and have not produced any pay records, Defendants are unable to carry their burden in demonstrating that they paid Plaintiff for any of the overtime hours worked.

4) Plaintiff is pursuing his claim under the enterprise theory and not individual coverage theory. See Plaintiff's motion for summary judgment [DE 28] as defendant's business had gross sales in excess of $500,000 annually ($631,735 in 2012, $759,775.61 in 2013 and increased each year thereafter) and had two or more employees that handled materials that had been moved in interstate commerce, the Defendant corporation is a covered enterprise under the FLSA.

5) For the reasons outlined in Plaintiff's motion for summary judgment [DE 28], Defendant, Teruhiko Iwasaki, had sufficient operational control to be deemed an employer under the FLSA. Furthermore, there are scenarios in which no determination is made as to the corporation, yet liability is found as to a corporate officer or manager, see *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009) (finding manager liable despite stay entered against corporation due to bankruptcy petition).

---

[5] This case is once again analogous to *Solano v. A Navas Party Production Inc.*, Case No. 09-22847-CIV-ALTONAGA, as Defendants' Counsel made an identical claim at the summary judgment stage, only to magically produce all the missing time cards on the eve of trial.

6) As Plaintiff's employment began a mere 2 days before the three-year statute of limitations, and Defendants' answer and affirmative defenses contain the affirmative defense pleading the statute of limitations (third affirmative defense), Plaintiff's counsel does not intend to argue that the statute of limitations should exceed the 3-year statute of limitations for willful violations.

7) Plaintiff does not intend to claim both liquidated damages and interest, rather Plaintiff intends to first request that the court award liquidated damages upon prevailing at trial. However, in the event the court denies Plaintiff's Motion for Liquidated Damages after trial, Plaintiff will request that the court award interest in the alternative.

## **Memorandum of Law**

### A. **Standard for Summary Judgment:**

"Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). Accepting this evidence as truthful, the Court must view the record and all factual inferences there from in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to

5

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citing First *Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (U.S. 1968)); *see also Anderson*, 477 U.S. at 247-48 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact"). In the present case, at the very least, there are material issues of facts in dispute to preclude the entry of summary judgment in favor of Defendants. Therefore, as there are material issues of fact in dispute, defendants' motion for summary judgment should be denied.

## B. <u>Standard for Involuntary Dismissal pursuant to Fed. R. Civ. P. 41(b):</u>

Although unwarranted  and lumped in with Defendants' motion for summary judgment, Defendants seek involuntary dismissal of Plaintiff's claims[6], despite failing to raise a single issue with the court prior to filing Defendants' motion for summary judgment. Therefore, Plaintiff briefly addresses said standard for involuntary dismissal.

> The legal standard to be applied under Rule 41(b) is whether there is a "clear record of delay *or* willful contempt *and* a finding that lesser sanctions would not suffice." *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir.1980) (emphasis added). Although the standard of review on appeal is abuse of discretion, dismissal of an action with prejudice "is a sanction of last resort, applicable only in extreme circumstances." *State Exchange Bank v. Hartline,* 693 F.2d at 1352 (quoting *EEOC v. First National Bank,* 614 F.2d 1004, 1007 (5th Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 342 (1981).

*Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983).

---

[6] This Response equally responds to Defendants' Motion to strike attorney's fees which can only be termed to be vexatious and in light of the fact that the request is wholly unsupported by the record in the instant case. Secondly, until Plaintiff prevails on his wage claims at trial, attorney's fee like liquidated damages are not ripe for consideration by the Court.

In the present case, there is no clear record of delay or willful contempt on the part of Plaintiff or his Counsel. Any such claim made by Defendants' counsel is without merit, and is solely being done to muddy the "judicial" waters and prejudice the Court against Plaintiff.

### C. **Plaintiff's name:**

This claim was filed by Daniel Valderrabano Torres, and was referred to throughout the depositions, by both parties, as Mr. Torres. Making a mountain out of a molehill, Defendants' counsel attempts to make the argument that, perhaps, Plaintiff has used a false name because, during his deposition, Plaintiff mistakenly misspelled his name Daniel Valderrabano Torres as Daniel Valderabano Torres. At no point in time did Defendants' Counsel ask Plaintiff why the caption of the lawsuit was spelled as Daniel Valderrabano Torres or why his identification documents spelled his name as Daniel Valderrabano Torres, despite Plaintiff spelling his name as Daniel Valderabano Torres at his deposition[7].

In summary, Plaintiff did not use a false name, but simply misspelled his middle name at his deposition. Attached as exhibit "A" is Plaintiff's identification that specifically demonstrates the name under which this lawsuit was filed-- which is one and the same belonging to Plaintiff. Furthermore, as Defendants' Counsel is well aware, this matter has come up in the past, see *Solano v. A Navas Party Production Inc.*, Case No. 09-22847-CIV-ALTONAGA, docket entry 22 whereby, upon noticing the incorrect spelling of Plaintiff's name, Plaintiff's Counsel filed a motion to correct the spelling of plaintiff's first name from Nolman to Holman. Had this case warranted a name change to the caption of this lawsuit, Plaintiff's Counsel would have filed the

---

[7] Rather, Defendants' Counsel relies on Plaintiff's spelling or misspelling of his name solely at deposition to transparently accuse Plaintiff of hiding his true identity during the pendency of this lawsuit. As mentioned prior, Plaintiff is illiterate.

necessary motion. However, since the lawsuit was filed under the correct name, no such motion was warranted.

Furthermore, Defendants' reliance on cases such as *Zocaras v. Castro*, 465 F.3d 479 (11th Cir. 2006) misses the point. In *Zocaras,* Plaintiff, over the course of several years, provided several governmental institutions with false names[8], whereby he became known by several false names including Luis Garcia, Carlos Vasquez, Michael Vasquez, Yan Michael Zocaras, and Yan M. Zocaras. *Id*. at 481. Only at trial did the parties learn for the first time that his real name was Cesar Vasquez and not Yan Zocaras under which he filed both *42 USC §1983* actions. In the present case, Plaintiff did not use a false name, he merely misspelled his name during an oral deposition, but filed the lawsuit under the correct spelling of his name.[9]

---

The Court  summarized his criminal interaction with the law as follows:

> The plaintiff's real name, we now know, is Cesar Vasquez. The first time he was arrested in Florida was in 1997 for cocaine trafficking. On that occasion he gave the arresting officers the name Yan Michael Zocaras, and he was booked into the Department of Corrections system under that name. The plaintiff has four Florida felony convictions, and the arrests leading to some of them may have occurred between his arrest for cocaine trafficking in 1997 and his arrest for armed home invasion in 2000, which gave rise to this case. Regardless, when the plaintiff was arrested in 2000 he told the officers that his name was Carlos Vasquez. As a result, when he was booked into the Department of Corrections following that arrest his name was listed as "Yan Zocaras, a/k/a Carlos Vasquez." His guilty plea and the resulting incarceration from the 2000 arrest were both entered under that name.

*Zocaras v. Castro*, 465 F.3d 479, 481 (11th Cir. 2006).

[9] Interestingly to say the least, Defendants should not be heard to complain about Plaintiff's name or identity since they knew of Plaintiff's immigration status and failed to comply with employment verification  eligibility requirements vis-à-vis the Plaintiff's employment. **The Immigration Reform and Control Act** requires every U.S. employer to be  responsible to verify the employment eligibility and identity of all employees hired to work in the United States after November 6, 1986. To implement the law, employers are required to complete Employment Eligibility Verification forms (Form I-9) for all employees.  To put it mildly, it is no less than ludicrous for the Defendants' Counsel to make an issue of Plaintiff misspelling his name at deposition in light of the fact that the Defendants paid cash to the Plaintiff for years that he was employed by them and the Defendants maintain no documents to show how much cash they paid to the Plaintiff. Worse yet, Defendant's Counsel never attempted to show any documents to Plaintiff at his deposition such as his Mexican ID to perhaps clarify this spelling error. Instead, Defendants' Counsel transparently filed the instant motion based on name fraud.

Furthermore, in *Zocaras* the court distinguished between a mere slip up and a pattern of deception, "[t]he plaintiff did not merely slip up. He followed a pattern of deception for a period of at least six years from the time he got the driver's license in 1996 through multiple arrests, convictions, and incarcerations…" *Zocaras* at 483. "Mere negligence or confusion is not sufficient to justify a finding of delay or willful misconduct. *McKelvey v. AT & T Techs., Inc.,* 789 F.2d 1518, 1520 (11th Cir.1986)." *Zocaras* at 483. In the present case, the misspelling by one letter of Plaintiff's middle name during Plaintiff's deposition is tantamount to a slip up or an inadvertent mistake, not a pattern of deception as Defendants' counsel misreprsents. Therefore, Defendants' motion must be denied on said basis.

**D.  <u>Discovery Issues:</u>**

Next, Defendants' counsel raises the issue with discovery responses, particularly regarding Plaintiff's drivers license and Plaintiff's damage calculations. Despite never raising these issues as a discovery matter with the Court, Defendants' Counsel requests that he be allowed to treat this Court's discovery order as trivial matter, not confer with opposing Counsel, and go straight for dismissal as if he had gone through the proper channels and obtained a Court order after conferring with opposing Counsel.

Neither Plaintiff or Plaintiffs' counsel violated any court order, all information required by Federal Rules of Civil Procedure Rule 26(a)(1) was provided to Defendants' Counsel via Plaintiff's statement of claim or answer to discovery requests (request for admissions, request for production, and interrogatories). If Defendants' counsel had an issue with a discovery matter, he should have filed a discovery motion with the court pursuant to the Court's Order [DE 6, ¶ 7] which states "<u>Discovery Motion Procedures</u>. Discovery motions (which must contain the Local Rule 7.1(a)(3) certification of good-faith conference) will be handled on an expedited briefing

schedule and with a shortened page limitation, to prevent delay to the pretrial schedule…" If Defendants' counsel had any discovery issue, it should have been brought to the Court's attention prior to the discovery deadline, and not raised for the first time on a dispositive motion, in violation of S.D.L.R. 7.1(a)(3) for failing to confer. There was ample time for Defendants' counsel to raise any discovery issues prior to the discovery deadline and not wait to raise it for the first time on summary judgment, "[u]nlike the Emperor Nero, litigants cannot fiddle as Rome burns." *Vasapolli v. Rostoff*, 39 F.3d 27, 36 (1st Cir. 1994).

Furthermore, if Defendants' counsel has any issue regarding inconsistencies in Plaintiff's deposition testimony versus his interrogatory responses, said matter should be addressed on cross examination, not at the dispositive motion stage.

> In the case of a discrepancy between a party's discovery responses and evidence attained by the opposing party, lacking a "clear showing of egregious conduct… allegations of inconsistency, non-disclosure, even falseness, can be brought to the jury's attention through cross-examination or impeachment." *Hughes*, 2007 U.S. Dist. LEXIS 70472, 2007 WL 2774214 at *3 [*15] (quoting *Gehrmann v. City of Orlando* 962 So.2d 1059, 1061 (Fla. 5th DCA 2007)).

*Idearc Media Corp. v. Kimsey & Assocs., P.A*., 2009 U.S. Dist. LEXIS 34446, 14-15 (M.D. Fla. Mar. 31, 2009).

### E. <u>Overtime payments/ proving damages:</u>

Defendants next argue that Plaintiff can't prove his damages or that Defendants paid Plaintiff for all his overtime worked. This argument is made by Defendants despite not having a single record as to the wages paid to plaintiff, and producing only a portion of Plaintiff's time records which reflect significant overtime worked on a weekly basis.

Plaintiff's overtime claim against defendants is for a 147- week period (August 3, 2012 through June 1, 2015). In discovery, Defendants produced 28 time cards which accounted for approximately 99 weeks of plaintiff's employment. However, there are 48 weeks of plaintiff's

claim for which Defendants have not provided any time records. Furthermore, Defendants have not provided any documentation, whatsoever, for any wages paid to Plaintiff during the course of his employment with Defendants. Instead, contrary to established case law, Defendants attempt to carry their burden by testifying as to the amount they paid plaintiff. However, Defendants' testimony is so contradictory that it cannot be relied upon. For example, Defendant testified that plaintiff was paid about $500-$600 a week [Iwasaki depo. P. 32 L. 20-25], while simultaneously testifying that he paid plaintiff at the straight time of $10 an hour for the first 40 hours and $15 an hour for each overtime hour [Iwasaki depo. P. 43 L. 19-25]. If said calculation was to be used, Plaintiff should have earned $655 which is above the range Defendant testified that Plaintiff was paid. The limited time records appear to be in line with Defendants' example for which Plaintiff should have been paid. Regardless, as Defendants have not produced[10] complete time records, and have not produced any pay records, Defendants are unable to carry their burden in demonstrating that they paid properly plaintiff at the time and a half rate for any of the overtime hours worked.

Furthermore, Defendants' counsel has attempted to make this same argument, to no avail, in several other cases. For example, within the last month, Judge Ungaro rejected this very argument in the case of *Daniel et al. v. Sanchelima & Associates, P.A. -Case No.: 15-21321* [Exhibit B]. The Court stated:

> That Plaintiffs were unable to provide concrete detail, as Defendants argue, on certain days for each uncompensated task does not warrant summary judgment for Defendants. *Frew v. Tolt Technologies Service Group, LLC,* 2010 WL 557940, at *5 (M.D. Fla. Feb.11, 2010) (citing *Allen,* 495 F.3d at 1317) ("Any inconsistency or uncertainty in an employee's testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider.");

---

[10] This case is once again analogous to *Solano v. A Navas Party Production Inc.*, Case No. 09-22847-CIV-ALTONAGA, as Defendants' Counsel made an identical claim at the summary judgment stage, only to magically produce all the missing time cards on the eve of trial.

*Brown v. Gulf Coast Jewish Family Servs., Inc.*, No. 810-CV-1749-T-27AEP, 2011 WL 3957771, at *7 (M.D. Fla. Aug. 9, 2011) (same); *see also Diaz v. Jaguar Restaurant Group, LLC,* 649 F. Supp 2d 1343 (S.D.Fla.2009) (denying defendant employer's motion for summary judgment based upon plaintiff's failure to produce evidence indicating the number of overtime hours she allegedly worked); *Ebersole v. American Bancard, LLC.,* 2009 WL 2524618 (S.D.Fla.2009) (citing to *Allen* and denying employer defendant's motion for summary judgment based upon plaintiff's failure to independently substantiate hours worked in excess of forty hours per week).

Another case involving Defendants' counsel making the same argument, again to no avail, was the case of *Solano v. A Navas Party Prod., Inc.,* whereby Defendants produced incomplete records and no pay records. The court stated "Because Defendants' records fail to establish what hours Plaintiff worked for which weeks, and fail to contain the rate Plaintiff was compensated for his work, they are not "proper and accurate." *Solano v. A Navas Party Prod., Inc.,* 728 F. Supp. 2d 1334, 1343 (S.D. Fla. 2010).

It is the employer's responsibility of keeping records of hours worked by employees under the FLSA.  "Where the employer's records of work time are inaccurate [or completely missing] and the employee cannot offer convincing substitutes . . . [] the employee has carried out [his/her] burden if he/she proves that he/she has in fact performed work for which he/she has been improperly compensated and if he/she produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the [employee] may then [be] awarded damages even though the result be only approximate. [emphasis added]." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946).

Thus, Defendants fail their burden under *Mt. Clemens Pottery Co.*, and seek to shift the burden to Plaintiff because, at best, they only maintained some of the time records [Exhibit C] which clearly show that on numerous weeks Plaintiff worked overtime.

The dramatic effect of an employer's failure to maintain adequate records as required with respect to calculation of FLSA damages can be seen in *Reeves v. International Telephone and Telegraph Corporation*, 616 F.2d 1342, 1351 (5th Cir. 1980), *citing, among other cases, Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 687 (1946).  Even if the estimation by plaintiff have been at some point inaccurate "[i]naccurate wage and hour information, however, is not always fatal to a claim for minimum wage or overtime compensation under the Act.  Where the inaccuracy is due to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a "sufficient basis" for damages." *Reeves v. Intl. Tel. and Tel. Corp.,* 616 F.2d 1342, 1351 (5th Cir. 1980). In the present matter, Defendants have failed to produce, or claim to have lost, one third of their time records and have not produced any pay records, at all, as to the wages paid to Plaintiff.   *Reeves* is binding old 5th Circuit precedent in the 11th Circuit as such was decided prior to close of business October 1, 1981. *See, Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981).

Furthermore, utilizing the relaxed standard where Defendants' records are insufficient, Plaintiff has carried his burden by testifying as to the amount of hours worked and the rate he was paid for said work. Whether Plaintiff was paid at an hourly rate of $10/hr. or 11/hr. is a matter of dispute, and Plaintiff maintains that he was not paid his proper overtime wages. There is an old idiom: namely, a chain is only as strong as its weakest link. Here, notwithstanding Defendants own contradictory testimony as to wages paid to plaintiff on a weekly basis, Defendants' entire argument is based upon asking Plaintiff a very generalized question as to

what Plaintiff earned during his entire time here in the United States. At no point in time during Plaintiff's deposition did Defendants' counsel ever ask Plaintiff what Plaintiff's hourly wage was during Plaintiff's employment with Defendants. Instead, Defendants' Counsel attempts to borrow the hourly rate paid to Plaintiff from a different employer and apply it to Defendants' pay practices.

Therefore, without complete time records[11], without any pay records as to the wages paid to plaintiff, combined with the actual time records produced which demonstrate overtime worked by Plaintiff on a regular and consistent basis, Defendants cannot carry their burden in demonstrating that they paid Plaintiff for any of his many overtime hours, and therefore, Defendants' motion for summary judgment must be denied.

**F.   <u>Enterprise Coverage.</u>**

Plaintiff is pursuing his claim under the enterprise theory and not individual coverage theory, see plaintiff's motion for summary judgment [DE 28]. Rock & River Food, Inc. is an enterprise covered under the FLSA. 29 U.S.C. §203(s)(1) defines "enterprise" coverage as an enterprise that has employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000."

As defendant's business had gross sales in excess of $500,000 annually ($631,735 in 2012, $759,775.61 in 2013 and increased each year thereafter) and had two or more employees that handled materials that had been moved in interstate commerce, the defendant corporation is a covered enterprise under the FLSA.

---

[11] Said time records do not contain Plaintiff's full name, nor do they contain the calendar year for each workweek reflected on the time records.

However, in moving for summary judgment, Defendants state that "despite the fact that both prongs need to be met to establish FLSA enterprise coverage (29 U.S.C. § 203(s)(1)(A)), neither prong can be met in this case,…" [DE 27, page 18]. However, as established in Plaintiff's Motion for Summary Judgment and Statement of Undisputed Material Facts [DE 28 & 29], the Defendant Corporation's gross annual sales exceeded $500,000[12] , and the Defendant corporation had two or more employees who handled materials that had moved in interstate commerce. For example, Defendants purchased and used  fish such as Ankimo (monkfish liver), Squid, and Hirame (flounder) that were purchased from vendor True World [Declaration of Gilberto Conrado at § 4-5; Teruhiko Depo. Trans. P.20, L.22-25, P.21, L.1-24]. Defendant's material orders from vendor True World included materials from all over the world but not limited to Ankimo (Monkfish liver) from Boston, Squid from Japan, and Hirame (flounder) from Japan. 2014 True World Invoices P.1, P.2, P.6. Many other international food ingredients were sold. See generally 2014 True World Foods Records. Therefore, it is undisputed that the fish and sushi ingredients handled by employees of the corporate defendant on a regular basis, including Plaintiff, originated from outside the State of Florida. However, instead of conceding said fact, Defendant has filed an affidavit and motion, using the incorrect standard for enterprise coverage, which is contrary to the Eleventh Circuit holding in *Polycarpe v. E&S Landscaping Serv., Inc.,* 616 F.3d 1217 (11th Cir. 2010)[13].

So as not to further overburden this court, and since plaintiff moved for partial summary judgment on this very issue, plaintiff hereby adopts by reference plaintiff's motion for summary

---

[12] Defendants concede in their statement of undisputed material facts that they had gross sales annually that exceeded $500,000 [DE 26].

[13] Defendants' Counsel was the same Attorney involved in the Polycarpe decision from the 11th Circuit and yet still continues to argue the incorrect standard for enterprise coverage in the instant motion.

judgment [DE 28] in response to defendants' contention that the defendant corporation was not an enterprise covered under the FLSA.

### G. <u>Individual Liability</u>

For the reasons outlined in plaintiff's motion for summary judgment [DE 28], Defendant, Teruhiko Iwasaki, had sufficient operational control to be deemed Plaintiff's employer under the FLSA. Defendants do not dispute Mr. Iwasaki's operational control over the corporate Defendant, instead Defendants contend that any liability as to Mr. Iwasaki is only derivative of liability to the corporation.[14] While that may be true to the extent a jury finds that the corporation paid plaintiff all his overtime wages, there are numerous circumstances in which no determination is made as to the corporation, yet liability is found as to a corporate officer or manager, see *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009) (finding manager liable despite stay entered against corporation due to bankruptcy petition). See 29 U.S.C. 203(D).

Furthermore, as clarified in a later opinion, defendants' reliance on *Zarate v. Jamie Underground, Inc.,* 629 F.Supp.2d 1328 (S.D.Fla.2009) is   transparently misplaced. As the determination of liability against the corporation has yet to be determined, the court cannot analyze the lack of derivative liability as to the individual defendant. "As such, it cannot be concluded that the individual defendants lack derivative liability simply because the corporations are not liable—as the court found in *Zarate v. Jamie Underground, Inc.,* 629 F.Supp.2d 1328, 1336 (S.D.Fla.2009) (citation omitted)—because here, the liability of Bravo, Raly, and General Recycling is not yet determined." *Hurtado v. Raly Dev., Inc.,* 11-24476-CIV, 2012 WL 3687488, at *15 (S.D. Fla. Aug. 27, 2012).

### H. <u>Statute of Limitations:</u>

---

[14] This is a misstatement of the law for individual liability under the FLSA. See 29 USC 203D.

As Plaintiff's employment began a mere 2 days before the three-year statute of limitations, and Defendants' answer and affirmative defenses contain the affirmative defense pleading the statute of limitations (third affirmative defense), Plaintiff's counsel does not intend to argue that the statute of limitations should exceed the 3-year statute of limitations for willful violations. See *Paetz v. United States*, 795 F.2d 1533 (11th Cir. 1986) (Defendants failed to plead the statute of limitations as an affirmative defense and therefore waived the defense), *Day v. Liberty Nat. Life Ins. Co*., 122 F.3d 1012, 1015 (11th Cir. 1997) ("The statute of limitations is an affirmative defense which must be specifically pled."), *Braddock v. Madison County*, 34 F.Supp.2d 1098 (S.D. Ind. 1998) addressing waiver of the limitations period in an FLSA context.

However, with the exception of approximately the first two days of Plaintiff's employment, Plaintiff's claim for a 147- week period (August 3, 2012 through June 1, 2015) falls squarely within the 3-year statute of limitations. Therefore, much like the rest of Defendants' motion, it is unknown why Defendants elected to file said motion and make allegations that "plaintiff has pled well beyond a 3-year statute of limitations."

**I.   Liquidated damages vs. Interest.**

Plaintiff does not intend to claim both liquidated damages and interest, rather Plaintiff intends to first request that the court award liquidated damages upon prevailing at trial. However, in the event the Court denies Plaintiff's Motion for Liquidated Damages after trial, Plaintiff will request that the court award interest in the alternative. However, as this matter is an issue that will be decided on post- trial motions, said issue is not ripe for a determination by the Court at this time.

**J.   Miscellaneous Issues:**

As noted supra, this is a case where the only records produced by Defendants establish that Plaintiff consistently and regularly worked overtime, and defendants have absolutely no records to establish the amount  Plaintiff was paid for his work. Therefore, in a desperate distraction attempt to muddy the waters, Defendants raise a plethora of issues that are not appropriate for summary judgment. Plaintiff's counsel will attempt to address these additional miscellaneous issues.

Nearly six (6) years ago, in March 2010, Plaintiff[15], filed a single FLSA lawsuit against his former employer. Despite just one previously filed lawsuit, Defendants' counsel attempts to label plaintiff as a serial filer and compares plaintiff to another plaintiff that had filed at least fifty-four lawsuits in *Steven Bro. v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368 (M.D. Fla. 2004) as well as another serial ADA plaintiff that sued gas stations up and down the coast of California *Wilson v. Kayo Oil Co.,* 535 F. Supp. 2d 1063 (S.D. Cal. 2007). The mere filing of a single previous lawsuit does not make Plaintiff a serial filer, nor does it somehow negate Defendants' obligation to pay Plaintiff  the overtime wages owed to Plaintiff for the three-year period in which Plaintiff worked for Defendants.

Defendants further contend that, somehow, because Plaintiff had filed a single lawsuit 6 years prior, that Plaintiff somehow set up Defendants for this lawsuit. Defendants' Counsel attempts to shift blame onto Plaintiff for Defendants' failure to maintain pay records while requiring Plaintiff to consistently work in excess of 40 hours a week. To be clear, no one forced Defendants to have their employees working more than 40 hours a week; no one forced Defendants to pay several employees in cash; no one forced Defendants not to pay overtime wages; no one forced Defendants not to maintain records of these cash payments; and no one forced Defendants to lose one third of plaintiff's time records. There was no set up, Defendants

---

[15] Spelled exactly the same way as in this lawsuit.

failed to comply with the overtime requirements of the FLSA by having Plaintiff work overtime on a weekly basis without paying the time and half overtime rate, and now Plaintiff is demanding to be paid his rightfully mandated overtime wages. For Defendants to contend otherwise would run afoul of the entire FLSA.[16]

As it relates to the payment of taxes, said matter has no bearing on whether Defendants paid plaintiff's overtime wages. Defendants did not report said cash payments paid to plaintiff to the IRS nor did they deduct payroll taxes [Iwasaki Depo. P. 35].[17] In fact, Defendants have no records of the amounts paid to Plaintiff-- not even an internal spreadsheet [Hayakawa Depo. P. 11]. In fact, some courts have excluded reference to this matter all together.

> …the undersigned concludes that Defendants shall be precluded from suggesting that Plaintiffs failed to pay income taxes because such evidence will likely create undue prejudice in the minds of the jurors; and, it will likely give rise to collateral disputes -- including the extent of Plaintiffs' reporting obligations regarding such taxes -- that will cause undue delay and confusion of the issues. Thus, Plaintiffs' motion in limine to preclude Defendants from introducing evidence that Plaintiffs failed to pay income taxes is GRANTED.

*Ortiz v. Santuli Corp*., 2009 U.S. Dist. LEXIS 72731 (S.D. Fla. Aug. 3, 2009). Furthermore, addressing this very issue, the District Court for the Middle District of Florida held as far back as 1997, any argument that an employee should be barred from claiming overtime or minimum

---

[16] The law is clear that "*An individual employee's rights for overtime compensation under the Fair Labor Standards Act cannot be abridged by contract or otherwise waived by the employee.* Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (U.S. 1981) Baker et.al. v. Barnard Construction Co. et.al., 146 F.3d 1214 (10th Cir. 1998). So, even if Plaintiff was a serial-filer, which he is not, what difference would that make? Why would Defendants' Counsel make these assertions other than to attempt to distract the Court's focus from the real issues in this case?

[17] This case is not the first time, to put it mildly, wherein Defendants' Counsel, shirks his client's/employer's blame for the non-payment/failure to report employee's taxes onto the employee. See *Lamonica v. Safe Hurricane Shutters*, 2013 U.S. App. LEXIS 4599 (11th Cir. 2013) as well as the underlying District Court docket for strikingly similar unavailing arguments that Defendants' Counsel made then just as he continues to do in the instant matter.

wages due to an employee's failure to report income or file taxes is without merit. *Harrell v. Diamond A Entertainment*, 992 F. Supp. 1343 (M.D. Fla. 1997).

> Defendant argues that Plaintiff is estopped from raising any claim under the FLSA in that (i) she failed to assert she was entitled to minimum wages until after she was terminated, (ii) she failed to file any tax returns for the monies she received (as much as $1,000 per week) from customers while dancing at the Diamond A clubs, and (iii) she failed to report any of the amounts she received to the clubs. All of these arguments are without merit.

*Harrell* at 1358. Therefore, it is unknown why Defendants would raise this issue for any other purpose except to muddy the judicial waters.   As this matter has no bearing as to whether Defendants paid Plaintiff for his overtime hours, Defendants' motion should be denied.

Next defendants argue that Plaintiff had no idea as to whether the Defendant Corporation grossed over $500,000. Again, as this is an uncontested matter that the Defendant business did gross over $500,000 annually during the relevant time period, it is unknown why Defendants would raise this issue.

Next Defendants claim that plaintiff should have provided defendants with a pre-suit demand. This argument is not new and has been rejected several times. "A pre-suit demand is not a procedural requirement for a Plaintiff to bring an FLSA claim. *See Dees v. Hydradry, Inc.,* 706 F.Supp.2d 1227, 1237 n. 10 (M.D.Fla.2010)." *Swetic v. Silverberg Jewelry Co.,* 8:10-CV-2096-T-23MAP, 2012 WL 555960 (M.D. Fla. Jan. 17, 2012), see also *Martinez-Pinillos v. Air Flow Filters, Inc.,* 738 F. Supp. 2d 1268, 1279 (S.D. Fla. 2010) (finding without merit defendants' motion to apply pre-suit notice to federal minimum wage claim under the FLSA).

Defendants next claim that there are allegations in the complaint, such as Plaintiff's involvement in interstate commerce that are untrue based on Plaintiff's testimony. However, as Defendants' counsel is well aware, the standard for interstate commerce applied to enterprise coverage is a legal conclusion, a standard that even Defendants' counsel continues to

purposefully get wrong despite his involvement in *Polycarpe v. E&S Landscaping Serv., Inc.,* 616 F.3d 1217 (11th Cir. 2010). The interstate commerce prong for establishing enterprise coverage is whether Defendants had two or more employees that "handled materials" that had at one point in time moved in interstate commerce, not whether Plaintiff actually transported goods or materials over state lines.

Wherefore, Plaintiff respectfully requests that this court deny Defendants' motion for summary judgment.

Respectfully Submitted,

J.H. Zidell, Esq.
J.H. Zidell, P.A.
Attorney for Plaintiff
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Email: Zabogado@aol.com


By:_/s/ *J.H. Zidell* _____
        J.H. Zidell, Esq
        Florida Bar Number: 0010121

## CERTIFICATE OF SERVICE:

I hereby certify that a true and correct copy of the foregoing Plaintiff's Response to Defendants' Motion for Summary Judgment was sent via CM/ECF to:  Chris Kleppin, Esq., Glasser & Kleppin, P.A., 8751 West Broward Boulevard, Suite 105, Plantation, Florida 33324, on this 26th day of February, 2016.

J.H. Zidell, Esq.
J.H. Zidell, P.A.

Attorney for Plaintiff
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Email: Zabogado@aol.com


By:_/s/ *J.H. Zidell* _____
   J.H. Zidell, Esq
   Florida Bar Number: 0010121