UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-22882-CIV-SCOLA

DANIEL VALDERRABANO TORRES,
Plaintiff,
v.
ROCK & RIVER FOOD, INC., *et al.*,
Defendants.
_______________________________________/

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants file this Response. A Response to Plaintiff's Statement of Undisputed Material Facts is filed separately and is cited to as ("[D.E. ¶ 32 or p. ___"). Defendants' state:

**BACKGROUND**

The Plaintiff filed a Complaint alleging violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*) setting forth one (1) substantive count pursuant to the Fair Labor Standards Act ("FLSA"), for alleged overtime violations. [D.E. 1]. Plaintiff seeks back wages, liquidated damages, prejudgment interest, injunctive relief, accrued but unused vacation pay, attorneys' fees, and litigation expenses. *Id.* The Plaintiff moves for summary judgment as to two issues: 1) enterprise coverage and 2) whether Defendant Iwasaki is an employer as a matter of law. These two contentions will be discussed in turn. Initially, however, the Court should that the Defendants have filed their own Motion for Summary Judgment and Motion for Involuntary Dismissal. The Defendants request that the Court treat Defendants' own cross-motion for summary judgment as a response to the Plaintiff's Motion. *Hartsfield v. Williams*, 2015 WL 668980, at *1 (E.D. N.C. 2015) (treating cross-motion for summary judgment as both a response in opposition and a cross motion for summary judgment); *Jackson v. Geren*, 2008 WL 7728652, at *1 (D. Md. 2008) (same).

While the Plaintiff's Motion is without merit and should be denied for substantive reasons, there are, initially, various procedural deficiencies which require that it be denied. The Defendants request that the Court deny the Plaintiff's motion for a blatant violation of *both* Local Rule 56.1 and this Court's own clear Order (and in Defendants' reply memorandum to their own msj and dismissal will consider this an additional criterion for involuntarily dismissing the Plaintiff's suit the fact that the Plaintiff has violated the Court's Scheduling Order and Local

Rule 56.1 with respect to the filing and citation of and to motions for summary judgment and their related documents. For example, [D.E. 17 ¶ 3 p.2] states in pertinent part:

> 3. References to documents in summary-judgment motions. When a party files a motion for summary judgment, the party must include the ECF number of any exhibits or other documents referred to in the motion or the accompanying statement of material facts (required by Local Rule 56.1). This means that if a document is not already on the record, a party will need to submit a *Notice of Filing* **before** he or she files the summary-judgment motion and the statement of material facts.

[D.E. 17 ¶ 3, p.2] (emphasis in original). Plaintiff's counsel has repeatedly been warned about violating the local rules regarding summary judgment practice. *See, e.g., Josendis v. Wall to Wall Residence Repair, Inc.*, 606 F. Supp. 2d 1376 (S.D. Fla. 2009) (granting summary judgment to defendant-client because defendant was local business not subject to the FLSA), *aff'd*, 662 F.3d 1292 (11th Cir. 2011).

Here, the Plaintiff filed his Motion for Partial Summary Judgment first [D.E. 28], and then filed the Statement of Material Facts. [D.E. 29]. The Plaintiff's Motion for Partial Summary Judgment does not cite to any docket entries, as required by [D.E. 17], but rather cites to a Statement of Material Facts, though no such fact statement was even filed at the time the motion itself was filed. *See* [D.E. 28, pp. 6-7]. Other than 2-3 such improper citations, the Plaintiff's Motion for Partial Summary Judgment does not cite to any record evidence, but rather the Plaintiff apparently believes the Court will read all of the deposition and hunt through and scour the record and perform his work for him. This, the Court should not do, because it is not the Court's job, and doing so gives the impression that the Court has become an advocate for one side. *Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012); *Borroto v. Geico,* 2015 WL 5786740, at *6 n. 3 (S.D. Fla.) (noting that posing such an exacting requirement on courts is "untenable"); *Powell v. Carey Int'l, Inc., et al.*, 483 F. Supp. 2d 1168, 1185 (S.D. Fla. 2007) (citing *Coggin v. Longview Ind. Sch. Dist.*, 337 F.3d 459, 469 (5th Cir. 2003)). It is clear that the Court should only determine whether the citations to the record to which the Plaintiff has properly cited are an accurate representation of that record evidence. Fed. R. Civ. P. 56(c)(3); S.D. Fla. L.R. 56.1(a).

The Plaintiff apparently became concerned that he violated the Court's Order [D.E. 17], but rather than forthrightly addressing such deficiency in his papers, belatedly filed "Plaintiff's Notice of Filing in Relation to Pending Motions for Summary Judgment [D.E. 29], but that filing

was made on February 26, 2016, more than 2 weeks after the summary judgment papers were required to be filed. Worse yet, the filing does not cure the deficiencies, but rather adds to them, because it does not contain any citations to the record, but rather is simply a filing of numerous deposition transcripts that it arrogantly and brazenly believes that the Court will apparently take the time read and become an advocate along with Plaintiff against the Defendants. This is highly improper, and the Court should strike the filing. It, too, was filed after the Plaintiff filed its Response to the Defendants' Motion for Summary Judgment, and thus was filed in violation of this Court's Order. [D.E. 17]. The filing [D.E. 31] is also in violation of Local Rule 7.1(c) which requires that any such filings of materials supporting motions must be filed at the time the motion is filed (not 2 weeks later), as follows:

> **(c) Memorandum of Law.** For all motions, except motions served with the summons and complaint, each party opposing a motion shall serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient cause for granting the motion by default. The movant may, within seven (7) days after service of an opposing memorandum of law, serve a reply memorandum in support of the motion, which reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law. No further or additional memoranda of law shall be filed without prior leave of Court. All materials in support of any motion, response, or reply, including affidavits and declarations, shall be served with the filing.

S.D. Fla. L.R. 7.1(c).

The Plaintiff's Statement of Fact also violates Local Rule 7.1(a), which states that:

> **(a) Statement of Material Facts.** A motion for summary judgment and the opposition thereto shall be accompanied by a statement of material facts as to which it is contended that there does not exist a genuine issue to be tried or there does exist a genuine issue to be tried, respectively. The statement shall:
>
> (1) Not exceed ten (10) pages in length;
>
> (2) Be supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court;

S.D. Fla. L.R. 7.1(a). For example, the Plaintiff submits an affidavit from a Gilberto Conrado, as Exhibit 5 to its Statement of Material Facts, but fails to cite to it once in either the Statement of Material Facts or the Partial Motion for Summary Judgment, and also submits 195 pages of invoices that a True World company in Miami, Florida apparently sent to the corporate

Defendant, but only specifically cites to pp. 1, 2, and 6 (without any indication of whether those pages are to [D.E. 29-6] or [D.E. 29-7]. This begs the question of why Plaintiff submitted [D.E. 29-6] if the reference is meant to be toward [D.E. 29-7] and vice-versa.

These repeated violations of the Local Rules and Court Orders should result in denial of the relief sought by the Plaintiff; thus, denial of the Motion for Partial Summary Judgment. *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (denying motion for protective order for violating the conferral requirement contained in Local Rule 7.1.A.3); *Dyett v. North Broward Hosp. Dist.*, 2004 WL 5320628, *1 (S.D. Fla. 2004) (denying motion for attorneys fees because of failure to follow Local Rule 7.3). The Courts in this judicial district place great emphasis upon, and implore the parties to be mindful of, the fact that local rules have "the force of law." *Hollingsworth v. Perry,* 558 U.S. 183, 191 (2010) (quoting *Weil v. Neary,* 278 U.S. 160, 169 (1929)).

## MEMORANDUM OF LAW

### I. THE RELEVANT LEGAL STANDARDS FOR GRANTING A MOTION FOR SUMMARY JUDGMENT.

Summary judgment under Federal Rule Civil Procedure 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This burden may be met by "showing" or "pointing out" to the Court that there are no genuine issues of material fact. *Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*) (quoting *Celotex*, 447 U.S. at 325). Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Celotex*, 477 U.S. at 324. In so doing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the non-moving party. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations omitted). The Court must then decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

The Local Rules further provide that when a plaintiff fails to controvert a defendant's statement of facts, the facts alleged by the defendant are deemed admitted to the extent they are supported by the record. S.D. Fla. L.R. 56.1(b). Here, Plaintiff's facts are not supported by the record. Even if they were, this "[C]ourt must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009); *see also United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004) ("At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment."). "This requirement provides the Court an opportunity to address the merits of the motion." *State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B & A Diagnostic, Inc.*, 2015 WL 7272738, at *2 (S.D. Fla.).

## II. THE PLAINTIFF SHOULD BE BARRED FROM RELYING ON THE AFFIDAVIT OF GILBERTO CONRADO OR ANY OF THE TRUE WORLD DOCUMENTS IN [D.E. 26-6 and 29-7] BECAUSE MR. CONRADO WAS NOT DISCLOSED AS A WITNESS AND THE DOCUMENTS AT ISSUE WERE NOT DISCLOSED AS DOCUMENTS THE PLAINTIFF WAS GOING TO USE IN THE CASE DURING THE DISCOVERY PERIOD, AND THUS DEFENDANTS HAD NO CHANCE TO ENGAGE IN DISCOVERY CONCERNING THEM AND HAVE BEEN AMBUSHED, WHICH REQUIRES THE CONCLUSION THAT THE WITENSS AND DOCUMENTS SHOULD BE EXCLUDED FROM TRIAL AND DISREGARDED FOR SJ PURPOSES.

In this case, the Plaintiff never served Rule 26 Initial Disclosures, much less listed or identified Gilberto Conrado as a witness that Plaintiff intended to rely on for summary judgment or trial, and thus Defendants had no chance to depose him (the witness or them the documents) or otherwise engage in discovery concerning him or them. The courts have held that the failure to timely disclose witnesses and what their testimony will be warrants that any proposed

testimony from the individuals be excluded from trial, and the same with documents. *Hancock v. Hobbs*, 967 F.2d 462, 468 (11th Cir. 1992); *Alimenta (U.S.A.), Inc. v. Anheuser-Busch Cos.*, 803 F.2d 1160, 1163 (11th Cir. 1986); *Wilson v. AM General Corp.*, 167 F.3d 1114 (7th Cir. 1999); *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996) ("The sanction of exclusion is mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless"); *Burney v. Rheem Mfg. Co.*, 196 F.R.D. 659 (M.D. Ala. 2000) (holding same); *Southern States Fixture Co. v. Sherwin-Williams Co.*, 318 F.3d 592, 597-98 (4th Cir. 2003). In *Hancock*, the court upheld the exclusion of the witness's testimony when the party proffering the witness failed to disclose the witness to the opposing party until five months after learning of the witness's testimony.

In this case, the Rule 26 Initial Disclosures were due long ago. The Plaintiff did not disclose the identity of witness Gilberto Conrado, or any other witness, but after discovery ended, Plaintiff simply submitted the Declaration of Gilberto Conrado, which was after discovery ended on February 4, 2016. Defendants were thus prevented from deposing these individuals or otherwise accessing the documents during the discovery period. This is precisely the type of "prejudicial surprise" and "trial by ambush" that the Federal Rules of Civil Procedure forbid with respect to the supplementation of discovery and/or initial disclosure responses. *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1549 (11th Cir. 1984) (stating that supplementation is not to be allowed when the other party would be "prejudicially surprised", or when it would result in trial by ambush). Accordingly, the Plaintiff's recently disclosed witness and his declaration should be stricken and not used for summary judgment purposes, or from participating in this litigation in any other way.

In 1993, Rule 26 was amended to contain an initial disclosure requirement.[1] Also in the 1993 Amendments, in order to reinforce into Rule 26's mandatory initial disclosure requirement, Rule 37(c)(1) was amended to require automatic exclusion of all information not included in the mandatory initial disclosures, unless the non-disclosing party could prove that its failure to disclose was "substantially justified". The Advisory Committee Notes specifically note that "[t]his automatic sanction provides strong inducement for disclosure of material that the

[1] While the Local Rules for the Southern District of Florida opted out of this disclosure requirement, the 2000 Amendments to Rule 26 removed the opt-out provision, in order to provide uniform discovery practices in the federal courts.

disclosing party would expect to use as evidence." *Advisory Committee Notes*, 146 F.R.D. at 691.

This automatic exclusion sanction has been found to be a standard sanction by the courts. *See, e.g., Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F.3d 301 (1st Cir. 1999); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709 (7th Cir. 1999); *Chalal v. Northwest Med. Ctr., Inc.*, 147 F. Supp. 2d 1160 (M.D. Ala. 2001). These cases require that the exhibits in question be excluded from this trial. The Defendants' failure to either initially disclose or timely supplement its disclosures with the identification of the exhibits in question requires that the Court exclude from use at trial all such exhibits.

The Defendants did not disclose the exhibits identified above (Exhibits 79-80, 96, 90-92) until after the discovery period ended, and they were not on the Defendant's Initial Disclosure List. Sanford was precluded from using them in discovery. This is precisely the type of "prejudicial surprise" and "trial by ambush" that the Federal Rules of Civil Procedure forbid with respect to the supplementation of discovery and/or initial disclosure responses. *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1549 (11th Cir. 1984) (stating that supplementation is not to be allowed when the other party would be "prejudicially surprised", or when it would result in trial by ambush). Accordingly, the Defendant's recently disclosed exhibits should be stricken from the Exhibit List, or from being used in this litigation in any other way.

The reason why all of this analysis is performed as to what evidence is inadmissible or not and which witnesses or documents were disclosed timely in discovery, is because *it is settled that inadmissible evidence may not be relied on at the summary judgment stage. Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir. 1997) (inadmissible evidence is to be disregarded when offered for sj purposes); *Prichard v. Southern Co. Servs.*, 92 F.3d 1130, 1134 (11th Cir. 1997) (holding same). In fact, Rule 37(c)(1) provides that a party who fails to identify a witness as required by Rule 26(a) or (e) is not allowed to use that witness to supply evidence on a motion. Fed. R. Civ. P. 37(c)(1); *Hoyle v. Freighliner, LLC*, 650 F.3d 321, 329 (4th Cir. 2011) (upholding the district court's striking of the declaration of a untimely disclosed witness). If the Court disregards the Declaration of Conrado and the Exhibit A and B to same, which are a list of products with some notations on some of them concerning certain countries and various invoices sent to the corporate Defendant, then summary judgment must be denied because

without same there is no evidence concerning the identity of any products even some in the restaurant. Even if the Declaration and the documents are not disregarded or stricken, sj on the enterprise issue should be granted in any event, for the following reasons.

### III. THE PLAINTIFF HAS FAILED TO PROVE THAT THE CORPORATE DEFENDANT IS AN ENTERPRISE ENGAGED IN INTERSTATE COMMERCE, AS A MATTER OF LAW.

Under the FLSA, unless the enterprise has $500,000 or more in gross annual revenue, and has two or more employees who are engaged in commerce or in the production of goods for commerce, the employer is not subject to the Act. 29 U.S.C. § 203(s)(1)(A)(i & ii). Section 203(s)(1)(A)(i) of the FLSA, which pertains to enterprise coverage, requires that the defendant-employer have employees engaged in commerce or in the production of goods for commerce, as follows:

> (s)(1) 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise that–
>
> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

29 U.S.C. § 203(s)(1)(A). The courts have found that the plaintiff seeking to establish enterprise coverage must satisfy both of these elements.

Notwithstanding the Corporate-Defendant's gross annual sales (which, coupled with the fact that Plaintiff admits in his Response to the Defendants' Motion for Summary Judgment that individual coverage does not apply, alone warrants summary judgment), it is clear that even after the decision of *Polycarpe v. E&S Landscaping Service, Inc.*, 616 F.3d 1217 (11th Cir. 2010), a plaintiff asserting the existence of enterprise coverage must still prove that two or more employees regularly and recurrently handled goods or materials that moved across state lines. *Josendis v. Wall to Wall Residence Repair, Inc.*, 662 F.3d 1292 (11th Cir. 2011). Moreover, the handling of such goods or materials by 2 or more employees *must be regular and recurrent*. *See id.* and *Scott v. K.W. Max Investments, Inc.*, 2007 WL 2850926 (11th Cir., Oct. 2, 2007). Here,

two or more employees did not handle those goods or materials, much less 2 or more regular and recurrently.

In order to prove enterprise coverage, it must be shown that two or more employees must handle or work on, goods or materials that originated from out of state.  Goods are excepted out of this definition, if the business is the ultimate consumer of them, though "materials" are not. *Josendis*, 662 F.3d at 1318-19.  The business (the corporate Defendant) is the ultimate consumer of the products (various foodstuffs) it uses.  [D.E. 32 ¶¶ 4, 27]; [D.E. 29 ¶ 12].  Plaintiff never proffered evidence concerning which employees utilize which products regularly and recurrently, nor did Plaintiff identify what products used by the corporate Defendant constitute "goods" and which products constitute "materials" and why, much less who used them or when.  Most products appear to "goods" not "materials", in light of the broad definition of goods in the statute and regulations.  29 U.S.C. § 203(i) and 29 C.F.R. § 776.20.  Typically, what are "goods" are not "materials".  *Flores v. Nuvoc, Inc.*, 610 F. Supp. 2d 1349 (S.D. Fla. 2009).  Determining this has been stated to be a herculean task.  *Josendis*, 662 F.3d 1292, 1319.  Plaintiff never proved, not for summary judgment purposes, even if the Declaration of Conrado is considered (which it should not be), that two or more employees regularly and recurrently used, handled, or worked on "materials" that originated from out of state.  Simply by submitting evidence that suggests that some products from a certain company may have originated from out of state and that the corporate Defendant at some point used those products does not prove enterprise coverage for purposes of summary judgment.  It must be proven who used what, how often, and during what time period, which Plaintiff made no attempt to do.  [D.E. 32 ¶¶ 14-28].

The regulations make clear that the term "goods" occupies the field, including most things that could be a "material", as they are defined as "wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof . . . ."  29 U.S.C. § 203(i); 29 C.F.R. § 779.14; 29 C.F.R. § 779.20(a).  The regulations further state that virtually everything in the world constitutes "goods"; things like:  ideas, intelligence, telegraphic messages, written materials (such as newspapers, magazines, brochures, pamphlets, bulletins, and announcements), written reports, fiscal and other financial statements, accounts, correspondence, lawyers' briefs, other documents, advertising, motion pictures, radio copy, artwork and manuscripts for publication, sample books, letterhead, envelopes, shipping tags, labels, checkbooks, blank books, book covers, candy wrappers, insurance policies, bonds,

stocks, bills of exchange, bills of lading, negotiable instruments, commercial paper, gold, livestock, poultry, eggs, vessels, vehicles, aircraft, garments being laundered or rented, ice, cigar boxes, wrapping paper, electrical energy, gasoline, etc. 29 C.F.R. § 776.20. On the other hand, materials are defined in the dictionary as: "(1) the basic matter (as metal, wood, plastic, fiber) from which the whole or the greater part of something physical (as a machine, tool, building, fabric) is made (2) the finished stuff of which something physical (as an article of clothing) is made." *Webster's Third New International Dictionary* 1392 (1986). There is thus very little that can be "materials" as opposed to "goods", particularly since "goods" are defined to be food products restaurants use (and thus are subject to the ultimate consumer exception) in light of the definition of goods as including subjects of commerce of any character, or any part or ingredient thereof". Thus, there is no reason to interpret "materials" in the statute any differently from the term "goods".

Before *Josendis*, two Eleventh Circuit cases after the 1966 amendments both held that the ultimate-consumer doctrine applies to the FLSA even with the term materials. *Dunlop v. Industrial Am. Corp.*, 516 F.2d 498 (5th Cir. 1975) (in a case decided well before the Supreme Court held that legislative history should be disregarded if that statute is clear, discussing the amendments specifically, and applying the ultimate-consumer doctrine to the FLSA to hold that the fact that four (4) employees used products that originated from out of state regularly and recurrently did not require the conclusion that enterprise coverage was applicable to the defendant-employer); *Scott*, 256 Fed. Appx. 244 (applying the ultimate-consumer doctrine to hold that products purchased at a local Home Depot that were made in other states or in foreign countries do not constitute being engaged in commerce, and only analyzing the purchase of materials by the defendant-employer directly from Louisiana, and at that holding that the purchase was involvement in interstate commerce by the employee how made it, but the use of such products once they were shipped to Florida was not).

*Josendis* and these other cases hold that Congress intended the ultimate-consumer doctrine to apply to the gasoline and oil a delivery company uses, soap a commercial laundry uses, and foodstuffs that a restaurant uses, because it is not known if Congress is referring to gas and oil, soap, and foodstuffs that two or more employees are purchasing across state lines regularly and recurrently or whether the soap is purchased at a local retailer. Moreover, the regulations exclude from the term "goods" "machinery, equipment, supplies, and other goods

which the enterprise purchases to use in conducting its business." 29 C.F.R. § 779.248. This would appear to exclude the foodstuffs used by the corporate Defendant, and it would be a misread of the statute to hold that those foodstuffs are "materials" but not "goods" under the Act, when it clearly falls under the statutory definition of "goods". That is exactly how the regulations construe the handling clause. 29 C.F.R. § 779.248. Again, in *Dunlop*, the court applied the ultimate-consumer doctrine to enterprise coverage cases, as it held that the use by two or more employees (in that case four (4) employees) of goods (gasoline and oil) that had previously traveled in interstate commerce (manufactured in another state) but were "at rest" when obtained by the defendant-employer (the gasoline and oil were purchased from an instate wholesaler), does not give rise to *enterprise coverage*—even though the statutory minimum gross annual revenue ($500,000) was satisfied.

One other court in the Southern District of Florida has expressly held that the use of cars by a car company does not constitute the use of materials, on the ground that used cars cannot possibly be "materials" applying a plain meaning to the term "materials", noting that cars are goods. *Rodilla v. TFC-RB, L.L.C.*, 2009 WL 3720892, *13 (S.D. Fla.) (holding that "the cars . . . do not meet the definition of 'materials' as contemplated in the FLSA" because—using the dictionary definition of the term "materials" as the Eleventh Circuit in *Polycarpe* subsequently did—"they are not elements of the goods or goods that are consumed in the employer's business, rather they are the "goods" themselves"). For the clear reasons expressed in *Polycarpe* and *Rodilla*, this Court should find that the used cars are not "materials" for purposes of § 203(s)(1) but rather are "goods", which indisputably do not subject the corporate Defendant to FLSA liability (because it is not an enterprise engaged in interstate commerce).

It is clear that all of the products that the Defendant purchased were in fact from local suppliers at which stores the products had come to rest, and thus cannot be included in the enterprise coverage analysis. *Navarro v. Broney Automotive Repairs, Inc.*, 533 F. Supp. 2d 1223 (S.D. Fla. 2008) (granting summary judgment in favor of defendants, even though plaintiff picked up automobile parts that had traveled in interstate commerce, since they had come to rest at the supplier's place of business and were only delivered locally), *aff'd*, *Navarro v. Broney Automotive Repairs, Inc.*, 2008 WL 2315869 (11th Cir., June 6, 2008) (reiterating that goods intended for resale are at rest and are no longer moving in commerce, and thus it is irrelevant to the coverage issue if the plaintiff, buys, uses, or handles retail or wholesale goods or things that

are purchased locally that previously traveled in interstate commerce), *cert. denied*, 129 S. Ct. 507, 2008 WL 4144447 (2008); *Guzman v. Irmadan, Inc.*, 551 F. Supp. 2d 1368 (S.D. Fla. 2008) (granting summary judgment on issue when plaintiff was remodeling residences for the employer, even though plaintiff picked up and purchased at retail stores various items needed for work), *aff'd*, 322 Fed. Appx. 644 (11th Cir. 2009) (affirming on same ground as *Navarro*). Here, they were. [D.E. 32 ¶ 20].

While *Josendis* notes that the FLSA—specifically 29 U.S.C. § 203(i)—defines goods as not including "goods after their delivery into the actual physical possession of the ultimate consumer thereof". These cases all relied on the Eleventh Circuit's decision in *Scott v. K.W. Max Investments, Inc.*, 2007 WL 2850926 (11th Cir., Oct. 2, 2007), and many cited the triumvirate of Supreme Court cases that hold that the FLSA was not enacted to regulate local businesses, as the full commerce clause powers were not invoked upon the FLSA's enactment. In *McLeod v. Threlkeld*, 319 U.S. 491, 493-94 (1943), the Supreme Court noted that the definition of goods contained in § 203(i) specifically "does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof." *McLeod*, 319 U.S. at 494. Thus, the Court held that therefore "*handlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are all in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are not*." *Id.* (emphasis added).

It is undisputed that the Plaintiff has completely failed to demonstrate that there are no disputed issues of fact and that he is entitled to judgment as a matter of law with respect to: 1) where any specific product originated from; 2) who touched such product(s); 3) how often; 4) whether the product was a good or material; 5) whether the product was at-rest when it is purchased from a local supplier out of its inventory; and 6) whether the corporate Defendant was the ultimate consumer of it, such that the product is excepted out of enterprise coverage analysis. This warrants not only that summary judgment should be denied for the Plaintiff, but it warrants that summary judgment should be granted for the Defendants on this issue. This is so because since the Plaintiff has the ultimate burden at trial on the enterprise coverage issue, it can meet its summary judgment burden only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact, *i.e.*, facts that would entitle it to a directed verdict if not contraverted at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). This

Plaintiff cannot do. On the other hand, because the Defendants do not have the burden at trial on the issue of enterprise coverage, Defendants need only produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial, and Defendants can show this because with or without the Conrado Declaration, Plaintiff cannot prove where any products really came from and who touched them.

Finally, Mr. Iwasaki and Mr. Hayakawa, who are the owners of the restaurant, do not count as employees for the enterprise coverage analysis. *Williams v. Signature Pools & Spas, Inc*, 615 F. Supp. 2d 1374 (S.D. Fla. 2009) (noting that the business owner does not count as an employee for purposes of determining enterprise coverage); *Serpion v. Martinez*, 119 F.3d 982, 985 (1st Cir. 1997) (holding that for the purposes of the employment laws, an individual cannot simultaneously be an employee and an employer); *Burke v. Friedman*, 556 F.2d 867, 869 (7th Cir. 1977) (holding that "[w]e do not see how partners can be regarded as employees rather than employers who own and manage the operation of the business"); *Wells v. Clackamas Gastroenterology Assoc. P.A.*, 123 S. Ct. 1673, 1677 (2003) (holding that partners in a business who control its operation, share in the profits, liable for malpractice claims, do not report to anyone higher in the organization, are not considered employees of the business). Accordingly, the Plaintiff is stuck with three people (Casado, Karla, and Plaintiff) in determining whether two or more people regularly and routinely handled, worked on, or used, goods or materials that had been moved in interstate commerce. [D.E. 32 ¶¶ 10-13].

**B. <u>Conrado's Affidavit Should be Stricken; Not Based on Personal Knowledge.</u>**

If the Court does not strike or disregard Conrado's Declaration because Conrado was not timely disclosed as a witness, it should be stricken because it is not based on personal knowledge. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The "personal knowledge requirement prevents statements in affidavits that are based, in part, upon information and belief—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment." *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002). Here, the Court can clearly see that Conrado really does not have any idea where any of the products originated from, as all he can say is that he can indicate possible source of origin, and he did that

in an unclear manner and for products that two or more people in the restaurant were not using regularly and recurrently.

**C. <u>Constitutional Arguments Also Require Denial of Summary Judgment.</u>**

There are also constitutional arguments concerning the FLSA's applicability to the Defendants. The constitutional difficulties are as follows: The manner in which the above courts have granted summary judgment for employers and have interpreted the FLSA is required constitutionally, because Congress does not have the power under the Commerce Clause to enact a statute that, as Plaintiff argues, literally applies to every single business in America that exceeds $500,000 in gross annual revenue. Congress' power under the Commerce Clause was delineated in Supreme Court opinions in the mid-1990s which limited Congress' power under that clause.

While numerous older Supreme Court decisions state directly with respect to the FLSA that it was not enacted pursuant to Congress' full commerce clause power, even if it was, numerous recent Supreme Court decisions require the conclusion that the FLSA constitutionally cannot apply to purely local businesses. *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000). In both cases, the Supreme Court invalidated federal legislation (as applied to the defendants) where the regulated activity did not "substantially affect[ ] interstate commerce." *Lopez*, 514 U.S. at 559-560 and *Morrison*, 529 U.S. at 610. It follows then, as a matter of logic and law, that Defendants' activities must have a substantial effect on interstate commerce to be subject to regulation, because no federal legislation (enacted pursuant to the Commerce Clause power of Congress) can properly regulate intrastate activity that has no substantial economic effect in interstate commerce. *Lopez*, 514 U.S. at 559-560[2] and *Morrison*, 529 U.S. at 613.

In *United States v. Morrison*, 120 S. Ct. 1740 (2000), the Court considered the constitutionality of 42 U.S.C. § 13981, which provides a federal civil remedy for the victims of gender-motivated violence. The Fourth Circuit, sitting *en banc*, struck down § 13981, because it concluded that Congress lacked constitutional authority to enact the section's civil remedy. The Supreme Court, believing that the issue in *Morrison* was controlled by *United States v. Lopez*, 514 U.S. 549 (1995); *United States v. Harris*, 106 U.S. 629 (1883), and *In re Civil Rights Cases*,

[2] "[S]imply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so." *Lopez*, 514 U.S. at 557 n.2.

109 U.S. 3 (1883), affirmed. The Court held that the statute exceeded Congress's Commerce Clause power. The Court's opinion is worthy of analysis. Section 13981(b) stated that "[a]ll persons within the United States shall have the right to be free from crimes of violence motivated by gender." 42 U.S.C. § 13981(b). The enforcement provision of the statute stated that such a victim could sue the alleged perpetrator civilly for compensatory and punitive damages. *Id.* § 13981(b). As authority for enacting such a statute, Congress relied on both the Commerce Clause (§ 8 of Article I of the Constitution) and § 5 of the Fourteenth Amendment. *Id.* § 13981(a). The Court struck the statute down, and *rejected all arguments* that violence against women substantially affected interstate commerce or that the statute was properly enacted pursuant to Congress's power under § 5 of the Fourteenth Amendment.

The Supreme Court has applied the analysis to other civil statutes. *Solid Waste Agency of Northern Cook County v. Unites States Army Corps of Engineers*, 531 U.S. 159 (2001) (applying the *Lopez*/*Morrison* analysis to the Clean Water Act, and holding that Congress exceeded its Commerce Clause authority in attempting to regulate local wetlands). In *Solid Waste Agency*, the government argued that the Clean Water Act and the Migratory Bird Rule fell within Congress' power to regulate intrastate activities that "substantially affect" interstate commerce, because the protection of migratory birds is a national interest of very nearly the first magnitude and that in the aggregate the effect on the economy of birdwatchers is substantial because "millions of people spend over a billion dollars annually on recreational pursuits relating to migratory birds." *Solid Waste Agency*, 531 U.S. at 173. The Court was unimpressed by the aggregate argument and held that Congress exceeded its authority under the Commerce Clause by attempting to regulate local wetlands. *Id.*

After *Lopez*, the lower courts have recognized that "[t]he guiding principle in defining the scope of [the phrase 'engaged in commerce'] is the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Joles v. Johnson County Youth Serv. Bureau*, 85 F. Supp. 1169, 1176-77 (S.D. Ind. 1995). *See also Navarro v. Broney Automotive Repairs, Inc.*, 2008 WL 2315869 (11th Cir., June 6, 2008) (holding that because plaintiff picked up materials from local retailer he was not participating in the actual movement of goods or services across state lines but rather "merely affecting and not implicating interstate commerce"); *Flores*, 610 F. Supp. 2d 1349, 1354-55 n.7 (relying on *Thorne* and *Threlkeld* in holding that "Plaintiff is correct that *Thorne* involved 'individual coverage' and not

'enterprise coverage'.  But it is anomalous to argue that it was the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce, when individual employee activities are concerned, but, at the same time, to allow an 'affect commerce' standard when individual activities are considered (*i.e.*, 'handling', 'working on') in the context of the enterprise itself.").  Plaintiffs' allegations that the corporate Defendant affects interstate commerce through its business activities is patently insufficient to show that the Defendants are subject to the FLSA.  When the Complaint and the factual evidence submitted at the summary judgment stage are examined, it is clear that the corporate Defendant's activities do not have any meaningful effect—let alone a "substantial" effect—on interstate commerce.  The corporate Defendant is just a small, local, one-location purely local business in Miami-Dade County, Florida, which only provides services within the State of Florida, and only conducts business within the State of Florida.

Any argument to the contrary would allow Congress to regulate two children selling lemonade in their subdivision at a little stand, if the Dixie cups and powdered lemonade mix (that they purchased at a local grocery store) came from out of state, and they sold $500,000 worth of lemonade.  That is ridiculous, and that broad of an interpretation of the statute should not be made.  *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994); *Frisby v. Schultz*, 487 U.S. 474,483 (1988).  Surely a local restaurant located deep in peninsular Florida with a few employees that has only grossed between $600,000 and $700,000 in annual sales for the past three years has not sufficiently affected interstate commerce so as to be covered.

### III. PLAINTIFF'S SUMMARY JUDGMENT MOTION SHOULD BE DENIED AS TO THE INDIVIDUAL DEFENDANT.

Iwasaki's liability is only derivative to that of the corporate Defendant's liability, so summary judgment should not be granted as to Iwasaki.  *Zarate v. Jamie Underground, Inc.*, 629 F. Supp. 2d 1328 (S.D. Fla. 2009).

The FLSA overtime provisions apply only to "employers." The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employer" has been broadly construed by the courts to effectuate the remedial purpose of the statute.  *See, e.g.*, *Dole v. Simpson,* 784 F. Supp. 538, 545-47 (S.D. Ind. 1991); *Goetz v. Synthesys Tech, Inc.,* 286 F. Supp. 2d 796, 800 (W.D. Tex. 2003).  In analyzing the issue, courts look to the economic realities of the employment relationship,

rather than relying on corporate titles or traditional common law agency principles. *See Dole v. Simpson,* 784 F. Supp. 538, 545 (S.D. Ind. 1991) (citing *Goldberg v. Whitaker House Coop*., 366 U.S. 28, 33 (1961)). The Eleventh Circuit has routinely interpreted this phrase to mean that an individual "employer" must be 1) a corporate officer, 2) who is involved in the day-to-day operations of the business, or otherwise involved with decisions respecting the setting of wages in order to be an "employer" under the Act. *Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160-61 (11th Cir. 2008); *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986) (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)); *see also Casseus v. First Eagle, L.L.C.*, 2008 WL 1782363 (S.D. Fla., Apr. 18, 2008).

The problem here is that the Plaintiff has failed to set forth facts that she that Iwasaki was day-to-day involved in the operational control over the restaurant. [D.E. 32 ¶¶ 7-11].

Respectfully Submitted,

Glasser & Kleppin
*Attorneys for Defendant*
8751 W. Broward Blvd
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405
E-mail: ckleppin@gkemploymentlaw.com

By: s/Chris Kleppin
Chris Kleppin
Florida Bar No. 625485

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 29, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record (Elizabeth Hueber, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Chris Kleppin
Chris Kleppin
Florida Bar No.625485