UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-22882-CIV-SCOLA

DANIEL VALDERRABANO TORRES,
      Plaintiff,

v.

ROCK & RIVER FOOD, INC., *et al.*,
      Defendants.

_____/

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR SJ**

Defendants file this Reply.  Defendants' state:

**<u>PRELIMINARY STATEMENT</u>**

Despite numerous violations of the Local Rules, the Federal Rules, and this Court's own clear orders, the Plaintiff has submitted a Response to the Motion for Summary Judgment and Statement of Material Facts all filed together, which do not cite to an ECF docket entry, and which do not controvert the facts set forth in the Defendants' Statement of Facts, which are both significant violations of more rules and orders, which therefore highlights the arguments set forth in Defendants' Motion, namely, that the case should be dismissed for numerous, blatant violations of rules and orders.  For example, [D.E. 17 ¶ 3 p.2] is an Order of this Court that requires the parties to cite to ECF docket entries in their memoranda of law concerning summary judgment papers, but Plaintiff's submissions violate that Order [see D.E. 30 at pp. 3-4 ¶3, 11 and 15, which cites to deposition testimony], and Plaintiff violated Local Rule 7.1(c)(2) by going over 20 pages, and providing extremely small text in several footnotes to apparently mask just how over 20 pages Plaintiff's Response really is.   [D.E. 30 & nn.1, 3, 4, 6, 7, 9, 12-17]. Additionally, Plaintiff filed his Response to Defendant's Statement of Material Facts as an exhibit to its Response, rather than as a stand-alone docket entry, as it should be.  Plaintiff also violates Local Rule 56.1 which requires a party opposing sj to controvert the facts set forth by the moving party, but Plaintiff, in paragraph after paragraph disregards facts and does not address them (thus they are deemed admitted) or does not cite to contrary facts but in conclusory fashion claims that they are "denied".  Unfortunately, for the Plaintiff, many of the facts that the Plaintiff chose not to controvert are those which demonstrate that the Plaintiff and his counsel are colluding or acting in concert to thwart the most basic discovery (including the Plaintiff's complete failure to engage in discovery and his counsel's submission of discovery responses on his behalf to make it look like he was so participating), particularly damages discovery, and

Plaintiff's bringing and maintaining his lawsuit under a false name, which warrant dismissal, since others courts have dismissed cases when Plaintiff's counsel has engaged in similar misconduct.  About the only arguments Plaintiff asserts in response are that 1) he really did not file a suit under a false name (Plaintiff's lawyer now claims Plaintiff to be illiterate and thus does not know how to spell his name, but he spelled it in his deposition and did not claim illiterateness thereat), 2) he really is owed overtime, and 3) he did not engage in widespread illegality like the plaintiff in *Zocaras v. Castro*, unfortunately, the name is false, because he was specifically asked whether he spelled it with one "r" and he said he did, he could not and did not state that he was owed overtime in his deposition, and he has engaged in widespread illegality and like the plaintiff in *Zocaras v. Castro*, and apparently is using multiple names as part of an effort to evade capture and prosecution.  The real problem in this case is the mockery that the Plaintiff has made out of this case concerning the fraud that went into the one damages calculation that the Plaintiff submitted ($11.00/hr at 60 hrs/wk) when it is clear that the Plaintiff never worked those hours and never worked for that hourly rate, when coupled with his deposition testimony that he cannot say he is owed anything, and has never attempted to determine what, if anything, he really may be owed.  This demonstrates that Plaintiff is not owed anything (at a minimum, that Plaintiff has not created a genuine issue of material fact that he is).

## I.     THE PROCEDURAL VIOLATIONS IN PLAINTIFF'S RESPONSE WARRANT A GRANT OF SJ.

In Defendants' Motion, they set forth how one of the order violations in the case by Plaintiff was how Plaintiff filed its own sj without the appropriate citations to a docket entry as required by [D.E. 17 ¶ 3 p.2].  Despite that, Plaintiff brazenly submitted his instant Response [D.E. 30], without the appropriate citations to a docket entry, see, *e.g.*, pages 3-4 ¶ 3, 11, and 15, which shows the violation of [D.E. 17] is intentional.  Plaintiff violated Local Rule 7.1(c)(2) by going over 20 pages, and providing extremely small text in several footnotes to apparently mask just how over 20 pages Plaintiff's Response really is.  [D.E. 30 & nn.1, 3, 4, 6, 7, 9, 12-17].  The violation is easily shown by other footnotes right next to those being significantly larger. Notably, Plaintiff did not seek Court approval to exceed the 20-page limit.

Local Rule 56.1(a) requires that the party responding to summary judgment controvert the moving party's facts by citing to evidence in the record, however, in most instances, Plaintiff did not do that, but rather just simply wrote "denied" and sometimes put after the term "denied", words or phrases like "argumentative", "not supported by the record", "denied as to the rest",

"irrelevant", without any explanation or cite to the record as to why that is so (rarely perhaps in a lengthy paragraph making one citation to the record as to one sentence only). [*See, e.g.,* D.E. 30-1, ¶¶ 9, 12, 13, 14, 15, 17, 18, 19, 21, 22, and 29].  This requires the conclusion that the Court deem those paragraphs to be uncontroverted.  *Reese v. Herbert,* 527 F.3d 1253, 1268–69, 1272 (11th Cir. 2008) (noting that Plaintiff's approach herein leaves the Court with "the functional analog of an unopposed motion for [sj].").  This is so because conclusory and unsupported statements do not create genuine issues of material fact.  *see also Hilburn v. Murata Elects. N. Am., Inc.*, 181 F.3d 1220, 1227–28 (11th Cir. 1999) (noting that a "conclusory statement is insufficient to create a genuine issue of a material fact"); Fed. R. Civ. P. 56(c)(1)(A), (e)(2). Plaintiff's counsel has repeatedly engaged in this same violation of the Local Rules.  *See, e.g.*, *Vallecillo v. Wall to Wall Residence Repair, Inc.*, 595 F. Supp. 2d 1374 (S.D. Fla. 2008) (a veritable treatise on how to controvert a fact for sj purposes and noting that just writing "denied" in response to a moving party's facts does not controvert them).

## II.   THE COURT SHOULD INVOLUNTARILY DISMISS THE CASE FOR THE REASONS SET FORTH IN THE MOTION.

The Plaintiff claims that he did not use a false name, but rather misspelled his name in his deposition, and is otherwise illiterate.  [D.E. 30 at 2 & n.1, 7 & n.7].  The first problem Plaintiff has with this argument is that nowhere in the record is there evidence that supports Plaintiff's arguments (Plaintiff submits a fake ID—a Mexican Voter Registration Card—but it has not been authenticated, and thus as inadmissible evidence cannot be considered at the sj stage.  *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir. 1997) (inadmissible evidence is to be disregarded when offered for sj purposes).  Rather than attempt to dispute these facts by citing to record evidence, the Plaintiff merely submits argument of counsel, but "[w]ithout more, the Court cannot rely on simply on the argument of counsel."  *Pollock v. Birmingham Trust Nat'l Bank*, 650 F.2d 807, 811 (5th Cir. Unit B July, 1981) (holding that "there is simply no evidence in the record before us that in any way establishes the [material facts].  All we have is the argument of counsel . . . and we are sure that learned counsel understand that summary judgment must rest on something more.").  In Plaintiff's deposition, he testified plainly that his real name only has one "r", and that was right after he swore to tell the truth.  [D.E. 26-3 at p.4] (stating that he wanted to make sure that he got it right and would speak it slowly, and after he gave one "r" defense counsel asked him to verify that it was one "r" and Plaintiff so clarified that his name is spelled with only one "r").  While Plaintiff does not provide any evidence to controvert the

undisputed facts that Plaintiff did not participate in discovery and thus actually did read or verify interrogatories (and apparently Plaintiff's counsel is taking the position that he cannot because he is illiterate), the interrogatory answers that Plaintiff submitted to the Defendants in this case during discovery plainly state that Plaintiff actually read them, which shows that even the argument of counsel is not supported by any evidence.  [D.E. 26-7 p.9] (stating that "I have read the foregoing answers to interrogatories and do swear that they are true and correct to the best of my knowledge and belief").  Notably, no affidavit submitted by Plaintiff clarifying what his real name was or explaining his deposition testimony, and thus Plaintiff relies solely on argument of counsel.  There is simply no evidence in the record that Plaintiff is illiterate.  The settlement agreement that is signed in the first FLSA lawsuit that he filed does not state that it was read to him, but rather he signed it as if he could read it.  [*See* D.E. 43 Exhibit 2 in *Valderrabano Torres v. Makino Japanese Buffet, Inc.*, Case No. 10-20785)].  Thus, the Court, in light of the state of the record evidence, should accept the evidence as true from Plaintiff's deposition that he does know how to spell his name, and that it is spelled with one "r" and thus conclude that he has filed two lawsuits under false names.  While the Plaintiff asks the Court to accept the Plaintiff's Mexican Voter Registration Card as containing the correct spelling of Plaintiff's last name (with two "rs"), the only logical conclusion that the Court can draw is that the Mexican Voter Registration Card is a fake identification, since there is no testimony that it is accurate, it contains a wrong name, and the interrogatory answer states that the identification provided was a drivers' license [D.E. 26-7 at p.2], which statement is false, since the Plaintiff stated that he does not have a drivers' license.  [D.E. 26-3 at p.12].  Thus, the argument advanced by Plaintiff shows nothing more than Plaintiff is using a fake ID.

The Plaintiff then attempts to distinguish *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006), by arguing that Mr. Zocaras gave 3 different names during the course of the litigation and otherwise engaged in more crimes in seriousness and number than he.  [D.E. 30 at p.8].  This argument is without merit.  First, the Plaintiff and his counsel in this case have now given two different names on three occasions as to the Plaintiff's real name, and have provided material, false testimony under oath concerning what the Plaintiff is relying on for the accuracy of his name—now stating a Mexican Voter Registration Card should be used while in the interrogatory answer stating that a drivers' license was used.  [D.E. 26-7 at p.2].  The names that the Plaintiff used in *Zocaras* over the years were years before his lawsuit was ever filed during arrests, and there were a couple of iterations used in his civil case, like here.

Concerning the seriousness of the crimes, here the Plaintiff has engaged in providing false sworn testimony, driving cars without a license or insurance (separate crimes in Florida), illegally entering the country in exchange for $3,000 (8 U.S.C. § 1324c(a), which makes it illegal to be in the United States, and illegal to work in the United States without the proper documentation from the government), obtaining a job with false papers (8 U.S.C. § 1546(a)(1) (making it a felony for an illegal alien to apply for a job using false social security information), income tax evasion (*United States v. Snipes*, 611 F.3d 855 (11th Cir. 2010) (affirming conviction and sentence of 36 months imprisonment for the actor Wesley Snipes for failing to file income tax returns)), and so forth.  These crimes are no less serious than the crimes in *Zocaras*.

When these crimes are coupled with the Plaintiff's and his lawyer's approach to discovery in this case, which was to completely obstruct same as evidenced by Plaintiff's deposition, it warrants involuntary dismissal, just like other courts have found with regard to Plaintiff's counsel.  At a minimum, it warrants a striking of attorneys' fees.  In fact, a court may properly deny attorney's fees altogether as "an entirely appropriate, and hopefully effective, means of encouraging counsel to . . . submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees."  *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980) (denying request for attorneys' fees because of a refusal to settle in good faith). Here, the Plaintiff refused to state what he would settle for [D.E. 26-3 at pp. 30-31], and as set forth in Motion clearly could not say what, if anything, he was owed, never even attempted to calculate damages, or even had a discussion with someone regarding same, which demonstrates that the one damages calculation in this case was a fraud.

In note 9, the Plaintiff argues that the Defendants violated the Immigration Reform and Control Act, and did not obtain an I-9 form for Plaintiff, but conspicuously absent from note 9 is any citation to the record or record evidence, and thus the entire footnote is nothing more than argument of counsel.

The Plaintiff next argues that what the Defendants really complain about are nothing more than a few discovery disputes, and the Defendants should have filed motions to compel during the discovery period.  [D.E. 30 at pp. 9-10].  The Plaintiff's argument is without merit. The issues presented by this case are not the result of a simple discovery dispute(s), but wholesale obstruction of discovery and fraud therein.

Plaintiff in this case refused to answer questions at his deposition concerning the amount of money that he is owed and refused to testify concerning what amount he would settle for, but

5

rather flippantly kept saying "I can't answer that question", and when pressed with what he meant by that, gave four completely different meanings of same.  [D.E. 26 ¶¶ 16-18].  Plaintiff admitted that he has not spoken to anyone about the hours that he worked or how much that he is owed.  [D.E. 26 ¶¶ 19-20].  This requires sj and/or involuntary dismissal in favor of Defendants.

The Court has the discretion to dismiss a plaintiff's claim on summary judgment if the plaintiff fails to offer evidence in support of an element of his claim (and, here, proof of damages is part of the prima facie case, see *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)), and the claim is one for which the plaintiff bears the burden of proof at trial.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Weinberg v. Whatcom County*, 241 F.3d 746, 751 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)).  In *Weinberg*, the court dismissed plaintiff's claims on summary judgment for his failure to offer competent evidence on damages, stating that "[s]ummary judgment is appropriate where appellants have no . . . witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages.  *Weinberg*, 241 F.3d at 751 (citing *Rickards v. Canine Eye Registration Found, Inc.*, 704 F.2d 1449, 1452 (9th Cir. 1983)).[1]  The court went on to state that plaintiffs "must provide evidence such that the jury is not left to speculation or guesswork in determining the amount of damages to award."  *Id.*  (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988)); *see also Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc*, 637 F.2d 1376, 1381 (9th Cir. 1981); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988); *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1509 (9th Cir. 1985)).[2]

Furthermore, even if the opposing parties present conflicting views on the amount of damages and the moving party faces an initial presumption against the granting of summary judgment, this burden may still be overcome with respect to the admissibility or relevancy of

---

[1] "'The showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law.'"  *Bushie v. Stenocord Corporation*, 460 F.2d 116, 119 (9th Cir. 1972).  In the present case, the facts of the case simply do not support the Plaintiff's legal theory, given his plain testimony.  When coupling that with either the inability or unwillingness of Plaintiff to offer evidence with any specificity as to damages allegedly owed, it becomes very difficult to ascertain how there is any "genuine issue for trial" with regard to damages.

[2] The Plaintiff directly contradicts this legal doctrine by adamantly refusing during his deposition to assert a specific amount of damages that he is owed (or to even remotely indicate his measure of damages), since he feels that it is the role of the jury to somehow determine this without any input from him.  Further complicating the case concerning Plaintiff's damages is that his counsel has submitted a damages calculation without his input coupled with Plaintiff's testimony that he cannot say he has any damages.

certain damages calculations if the calculations are "so unreliable or flawed that they could not properly form the basis of a reasonable jury verdict." *Program Engineering, Inc. v. California Jockey Club*, 1984 WL 2931, *3 (N.D. Cal. 1984) (citing *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 691 F.2d 1335 (9th Cir. 1982)).[3]  It is also important to note that simply because a plaintiff attends depositions and appears through his actions to be acting in good faith, dismissal may still be warranted if that Plaintiff consistently refuses to supply relevant and unprivileged information.  *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 156 (6th Cir. 1988).  As the Sixth Circuit stated, "misconduct is not any less misconduct because it is executed with a veneer of good intentions." *Id.*[4]

Plaintiff in the present case finds himself in a situation that is directly analogous to a corporation under Rule 30(b)(6).  Under Rule 30(b)(6), when a witness is designated by a corporate party to speak on its behalf, producing an unprepared witness to a deposition is tantamount to failing to attend.  *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 304 (3rd Cir. 2000).  In this situation, a district court is not required to issue an order compelling discovery before imposing sanctions.  *Id.* at 301-02.[5]  Here in the present case, however, the situation is even more exaggerated and thus the spirit of the rule is exponentially more frustrated since the unprepared party is not merely an agent of a corporation who needed to be adequately prepared, but instead the perpetrator is the originator of the lawsuit.

Plaintiff then argues that there needed to be conferral and discovery motions.  During the deposition, counsel discussed on the record the problem with the Plaintiff refusing to answer questions, but Plaintiff's counsel said that Plaintiff's responses were appropriate and Plaintiff

---

[3] In the *Program Engineering, Inc.* case, the court ruled that the plaintiff's claims for loss of all business value and lost profits were too "speculative" to sustain the defendant's motion for summary judgment, agreeing with the defendant that plaintiff's approach to quantifying damages "required that Plaintiff stretch both accounting and legal theory beyond its logical elasticity." *Program Engineering Inc.*, 1984 WL 1931 at *3-4.  If a plaintiff who makes an attempt to claim something so imprecise as lost business value and lost profits can have its claims dismissed on summary judgment, then surely a plaintiff who refuses entirely to allege a specific amount of a much more quantifiable type of damages, such as unpaid overtime wages already worked, should not possibly be able to survive the sj phase either.

[4] This legal precedent directly correlates to Plaintiff in this case who refused to provide an amount of damages to which he feels he is entitled during his deposition.  It is also somewhat analogous to the plaintiffs in *Lyons v. Johnson*, 415 F.2d 540, 541-42 (9th Cir. 1969), who brought claims for civil rights damages and repeatedly refused to submit to any depositional interrogation or discovery on the grounds of privilege against self-incrimination, only to have the subsequent dismissal of their claims upheld.

[5] "Among the sanctions available to a District Court under Federal Rule of Civil Procedure 37(b) for failure to comply with discovery is dismissal of the action with prejudice." *Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979).  This includes the deliberate refusal to appear for deposition. *Id.*

was being harassed.  [D.E. 26-3 at pp. 36-38].  The Plaintiff's claim that these are discovery disputes is misplaced.  This is wholesale obstruction.  Defendants should not have to pay massive sums to wage discovery fights to obtain accurate damages calculations (and the Court can imagine that damages in this case are obviously the issue, because all of the employees similarly situated to Plaintiff testified that they were paid overtime, as did the two business owners).  Plaintiff is an old hand at these suits having brought one before and Plaintiff's counsel has had his clients' cases involuntarily dismissed before for engaging in fraud/discovery obstruction concerning their damages.  This should be the result here.  The Court should be quite troubled by the record in this case.  No initial disclosures ever submitted, damages calculation without any input from the Plaintiff (shows fraud), complete refusal to answer any questions in his deposition regarding damages and complete obstructionism showed and Plaintiff was aided with respect to same by his attorney.

The Plaintiff then argues on [D.E. 30 p. 10] that this is merely a situation in which there was a discrepancy between evidence concerning what a plaintiff is owed and that "lacking a clear showing of egregious conduct" the issue can be dealt with on cross-examination.  Here, the above shows egregiousness, and thus the case Plaintiff relies on is distinguishable, but also there can be no effective cross-examination because Plaintiff refused to answer the questions.

### III.   THE PLAINTIFF WAS PROPERLY PAID.

Plaintiff argues that Defendants cannot obtain sj as to Plaintiff's inability to prove his damages, arguing that there are some time records missing and Defendant did not keep track of the amounts paid to Plaintiff.  [D.E. 30 at pp. 10-11].  Plaintiff's problem is that he cites no cases that stand for these propositions.  It does not matter whether there are a few missing time cards (Plaintiff's counsel argues that there are 48 weeks of time cards missing, but there is no testimony in the record that there are 48 (he just argues that), and he argues there are no pay records.  The problem for Plaintiff is twofold:  1) this is just his argument and 2) Plaintiff testified that the Defendant's time and pay records were accurate.    [D.E. 26-3 at p. 24] (admitting that "if we wanted to go back and look and see how many hours you worked on any given day or week, we would just look at the company's time and pay records to determine that; correct?" Answer:  "Yes"; and answering "yes" to "those records then are accurate").  No one testified that 48 weeks were missing, as the testimony was that a couple weeks of time cards were missing; despite a couple of weeks of time cards missing, since Plaintiff testified that the time and pay records were accurate, the records as a whole are accurate despite whether a couple

of time cards are missing, same with the pay records.  At some point, for example, when Plaintiff was paid, there were pay records and that pay record was accurate, according to Plaintiff.

The fact that Mr. Iwasaki said that Plaintiff was paid about $500 - $600/wk, that amount is commensurate with Defendants' contention that Plaintiff was paid his overtime, because Plaintiff's work hours of 46 to 58 hours worked in a week at $10.00/hr would range from, if he was paid overtime, $490 (40 hrs x $10/hr + 6 hrs x $15/hr) to $670 (40 hrs x $10/hr + 18 hrs x $15/hr), which is *about* $500-$600/wk.  Thus, Iwasaki's testimony supports sj for Defendants.

The Plaintiff argues this case is analogous to *Solano* and *Daniel* [D.E. 30 at p. 11], but it is not, as those cases dealt with the situation of alleged off of the clock work, while in this case the Plaintiff admitted that the Defendants' time and pay records are accurate.  The Plaintiff then argues that the employee carries his burden if he proves the records are not accurate and he performed work for which he was not paid, but the Plaintiff was unable to demonstrate that here, given his deposition testimony.  [D.E. 30 at p.12].  Plaintiff then argues that it is in dispute if he was paid $10/hr or $11/hr.  [D.E. 30 at p.13].  No it is not.  The only record evidence is that Plaintiff was paid $10/hr, as he was never paid more than that in this country.  [D.E. 26-3 at pp. 11, 16].  Plaintiff mentions numerous times he was paid in cash.  Defendants stated that in their sj papers, and United States currency is an acceptable form to pay an employee.

## IV.   ENTERPRISE COVERAGE.

Plaintiff claims Defendants use products from True World which come from all over the world.  [D.E. 30 at p. 15-16].  That is not true, as none of the products have been shown by Plaintiff to originate from outside of Florida [D.E. 32-1, ¶¶ 1-16], they are all "goods" not materials [D.E. 33], and the corporate Defendant is the ultimate consumer of them, and thus if they are handled by more than 20 employees it is irrelevant.  [D.E. 33 at pp. 8-10].  Because the corporate Defendant is a local restaurant, it is not covered by the FLSA.  *Johnston v. Spacefone Corp.*, 706 F.2d 1178, 1182 (11th Cir. 1983) (holding that "Congress's primary purpose in refusing to extend the FLSA's coverage to its constitutional maximum was to leave regulation of 'local' business to the states").  Sj should be granted on enterprise coverage, and the Declaration of Gilberto Conrado should be disregarded because he was not disclosed as a trial witness in discovery by Plaintiff, and one of the True World documents were produced during discovery.

## V.   SERIAL PLAINTIFF, TAXES, AND WAIVER.

Plaintiff mistakenly compares a ADA filer with a FLSA case.  People have far fewer employers than they do visits to businesses.  Thus, having previously brought a suit requires the

conclusion that Plaintiff is a serial plaintiff, when coupled with his failure to complain about not being paid properly (which lack of complaint clearly emanates from the fact Plaintiff was paid properly) requires, when Plaintiff and his counsel's other, serious misdeeds are taken into account, sj or dismissal.  Plaintiff has no proof he was not paid ot, and cannot calculate his claim.

Plaintiff claims his income tax evasion—failure to file returns—is not admissible.  It is. *United States v. Gellman*, 677 F.2d 65 (11th Cir. 1982); *Chnapkova v. Koh*, 985 F.2d 79 (2d Cir. 1993); *Tesser v. Bd. of Ed. Of City School Dist. of City of New York*, 370 F.3d 314, 318 (2d Cir. 2004).  Both the failure to file tax returns and the fraudulent filing of tax returns are admissible at trial. *See Solano v. A Navas Party Productions*, Case No. 09-22847-CIV-ALTONAGA [D.E. 63] (citing cases for both propositions); *Martinez-Pinillos v. Air Flow Filters, Inc.,* Case No. 09-22453-CIV-MARTINEZ [D.E. 32] (denying a similar motion in limine filed by the same plaintiff's counsel). Judge Cooke also allowed this evidence in the case of *Rakip v. Paradise Awnings Corp.*, Case No. 10-20004-CIV-COOKE, in a trial that ended on December 3, 2010. There the plaintiff was a legal immigrant who failed to file income tax returns for several years, and the Court held he could be impeached with that evidence. In the case of *Barrera, et al. v. Weiss & Woolrich Southern Enterprises, Inc., et al.,* Case No. 09-21841-CIV-GRAHAM [D.E. 291, page 4], Judge Graham allowed evidence at trial concerning Plaintiffs" failure to pay federal income taxes since such evidence is "probative of truthfulness" (citing *Chamblee v. Harris & Harris*, 154 F. Supp. 2d 670, 681 (S.D.N.Y. 2001)), and also allowed evidence concerning any criminal acts related to Plaintiffs" immigration statuses since such evidence is admissible in accordance with Fed. R. Evid. 608(b).

Plaintiff's can waive their rights under the FLSA, and can abandon and waive claims, just like under any other statute.  *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005) (holding that claims can be abandoned).  This is not a case where the Defendants are seeking to argue that the Plaintiff contracted away his FLSA rights, or that the Plaintiff entered an agreement with Defendant to waive his overtime rights (*see* Plaintiff's citation to *Baker v. Barnard Constr. Co., Inc.,* 146 F.3d 1214 (10th Cir. 1998) ([D.E. 30, p. 19 n.16])), or that the Plaintiff is precluded from bringing this action due to a prior unsuccessful claim based on the same underlying facts that was brought to a joint grievance committee (*see* Plaintiff's citation to *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728 (1981) ([D.E. 30, p. 19 n.16])). Dismissal is an appropriate sanction in a FLSA case, and several courts have held so as to Plaintiff's counsel.

Respectfully Submitted,

Glasser & Kleppin
*Attorneys for Defendant*
8751 W. Broward Blvd
Suite 105
Plantation, FL 33324
Tel.  (954) 424-1933
Fax  (954) 474-7405
E-mail:  ckleppin@gkemploymentlaw.com


By:    s/Chris Kleppin
      Chris Kleppin
      Florida Bar No. 625485


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Elizabeth Hueber, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.


By:    s/Chris Kleppin
      Chris Kleppin
      Florida Bar No.625485