UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-22882-CIV-SCOLA

DANIEL VALDERRABANO TORRES, and
Others similarly situated under 29 U.S.C. 216(b),

    Plaintiff,
v.

ROCK & RIVER FOOD, INC. d/b/a Marumi
Sushi, and TERUHIKO IWASAKI,

    Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* ([D.E. 40])**

Defendants, Rock & River Food, Inc. and Teruhiko Iwasaki, by and through their undersigned counsel, file this Response to Plaintiff's Motion *in Limine* ([D.E. 40]), and state:

## BACKGROUND

The instant Motion was filed on March 9, 2016. [D.E. 40]. It is a FLSA suit.

Plaintiff has moved in limine to exclude from evidence the following eight (8) issues: (1) all reference to the Plaintiff's immigration status; (2) all references to other FLSA lawsuits that Plaintiff has previously filed; (3) all references to attorney's fees and costs; (4) all references to liquidated damages; (5) all references to Plaintiff's misspelling of his name and identity; (6) evidence of non-payment of federal income tax dollars and his fail to report cash payments he received to the federal government; (7) reference to J.H. Zidell's representation of Plaintiff in this matter and in another matter just a few years ago and all references to J.H. Zidell's infomercial; and (8) all references to statements concerning Plaintiff's counsel's role in bringing this lawsuit. [D.E. 40]. Each of these will be addressed in turn below.

Initially, however, the Motion should be denied on a procedural ground; namely, the failure for there to be proper conferral, *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (denying motion for protective order for violating the conferral requirement contained in Local Rule 7.1.A.3); *Dyett v. North Broward Hosp. Dist.*, 2004 WL 5320628, *1 (S.D. Fla. 2004) (denying motion for attorneys fees for failing to follow Local Rule 7.3), and a

misrepresentation in the Plaintiff's Certificate of Conferral. *Herard v. ATN Restaurant, Inc.*, 2008 WL 123596 (S.D. Fla. 2008) (denying motion for reconsideration because plaintiff's lawyer made a misrepresentation to the court). Initially, motions in limine were not due until March 15, 2016, and thus there was plenty of time to fully confer regarding the issues. Both sides wanted to confer on issues. Effective telephonic communication is essential between counsel in litigation for numerous reasons, including to limit issues the Court has to be involved in, and also when counsel talk, they can resolve issues in cases, and possibly resolve the entire case. In fact, defense counsel also wanted to talk to Plaintiff's counsel to see if the case could be settled during conferral on the motions in limine. Unfortunately, Plaintiff's counsel refuses to speak to defense over the phone about anything, ever. This is sanctionable and directly impeding the ability of the parties to resolve issues, and Plaintiff's counsel should be ordered to speak to defense counsel telephonically. *Carlson v. Bosem*, 2007 WL 1496693 (S.D. Fla.) (sanctioning plaintiff's counsel in FLSA by striking attorneys' fees for plaintiff's counsel's failure to cooperate including refusal to speak over the phone with opposing counsel and noting that "the Court finds that [plaintiff's counsel] acted unreasonably in his refusal to communicate with counsel and execute his duties to his client."). *See* Florida Bar Rule 4-3.2; *Reg. Trans. Auth. v. Gruman Flexible Corp.,* 532 F. Supp. 665 (N.D. Ill 1982) (sanctioning an attorney for refusing to cooperate with opposing counsel over the phone); *Ramsey v. Peake*, 2009 WL 166488 (10th Cir. 2009) (affirming grant of dismissal in part because of counsel's refusal to speak to opposing counsel telephonically).

Here, the "Certificate of Goof [sic] Faith Conferral" squarely pins the blame on plaintiff's counsel's failure to confer before the filing of the instant motion on defense counsel. The certificate essentially states/accuses the following: 1) defense counsel refused to inform Plaintiff's counsel of his positions before the filing of the motion; 2) defense counsel insisted on a phone call, defense counsel was supposed to initiate the call, but failed to do so. Of course, Plaintiff's counsel apparently does not realize that the motion was filed on March 9 but was not due until March 15, 2016. Thus, there was a whole week in which to confer regarding the motion in limine issues.

The Plaintiff has repeatedly failed to confer in this case. *See, e.g.*, [D.E. 22] (ordering the following: "Plaintiff is reminded that Local Rule 7.1(a)(3) requires that, if counsel is unable to confer , she must detail not only the attempted method of conferral but also its date and time.").

Despite that admonition, Plaintiff's counsel failed to confer before recently the filing a motion for leave to extend page limitations in a motion for summary judgment response and reply. The manner in which conferral was just cast aside as a pesky inconvenience Plaintiff's counsel is not bound to follow by the email undersigned counsel received minutes before the motion for leave (which was denied) was filed: "I only wish to file the motion for extension of page limit tonight, because the boss insists, are you objecting?" (*Email*, dated Mar. 8, 2016 @6:33 p.m., attached hereto as Exhibit 1). This email came on the heels of an email from 3 minutes before that stated "I need to move to extend the page limitations tonight, says the boss . . . . I am happy to address all of your issues in limine with you tomorrow at 3:30 p.m." (*Email*, dated Mar. 8, 2016 @6:30 p.m., attached hereto as Exhibit 2). Then, without waiting to hear from undersigned counsel and without calling him, the motion was filed without any actual conferral, because "the boss [Mr. Zidell] insists". There was no reason that motion had to be filed that night, and no reason it had to be filed before conferral. Fifteen minutes later, Plaintiff's counsel sent another email stating "I will need to file the motion for extension of time [sic: excess pages] tonight." (*See email*, dated Mar. 8, 2016 @6:48 p.m., attached hereto as Exhibit 3). Apparently, this email was sent because to reiterate that Plaintiff was simply going to file the motion for excess pages that night with or without conferral. All of these statements concerning "the boss insists" are all admissions that the principal in the firm, Mr. Zidell, is ordering an associate to make filings without proper conferral, which is improper and sanctionable, but apparently par for the course in a case in which a Motion for Involuntary Dismissal is already pending because of numerous violations of orders, local rules, and federal rules, which underscore the instant problems.

Undersigned counsel at some point received an email that stated that Plaintiff wanted to confer about some issues, and apparently earlier emails were sent to a wrong address. (See Exhibit 1) (stating that "[n]ever mind, apparently, I sent you the email from my old account, you did not respond, and I apologize. I will be prepared to speak with you tomorrow on these issues").

Three things are clear from the above emails: 1) the parties had arranged a telephonic conferral meeting for March 9, 2016 @ 3:30 p.m.; 2) the Plaintiff decided not to wait and confer concerning the motion for excess pages at the 3:30 p.m. teleconference; and 3) Plaintiff did not feel the need to confer concerning the motion for excess pages and thus did not.

The Court would certainly believe that the 3:30 p.m. phone call would have cleared up any conferral issues. Unfortunately, it did not. Plaintiff's counsel canceled the 3:30 p.m. conferral teleconference by sending the following email to undersigned counsel at 11:38 a.m.:

> Due to the fact that this seems like highly contentious litigation, I am going to need conferral in writing, not over the phone, as that could lead to confusion over what has, and has not, been said. I have come to learn that there is a history of that, according to my firm, when dealing with you. I am new to this firm, and I don't care what others have experienced. I just want everything in writing so that it is clear, and understood, not over the phone. There is no reason to call me at 3:30. . . .
>
> I am not going to engage in excess time on the phone, that complicates things and leads to extra billable hours, I do not operate like that. Tell me by 3pm 3/9/2016, or I will file assuming you oppose the relief.

(*Email*, dated Mar. 9, 2016, attached hereto as Exhibit 4). To make matters worse, Plaintiff states "[f]ile your motion in limine as you desire, we oppose your relief." In other words, we are not going to confer with you on anything you might want, just file whatever you want to and we will deal with it. The problem with this approach is threefold: 1) the federal rules have conferral requirements (Rule 1 requires conferral, because matters upon which the parties agree do not wind up being litigated and thus delay is eliminated and the discovery rules have conferral requirements); 2) the local rules require conferral, *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (denying motion for protective order for violating the conferral requirement contained in Local Rule 7.1.A.3); and 3) the ethical rules in Florida require that lawyers effectively and professionally communicate. Florida Bar Rule 4-3.2. Now, in the certificate of conferral, Plaintiff's counsel has the temerity to blame defense counsel for not calling at 3:30 p.m. Obviously, defense counsel believed that Plaintiff's counsel was not going to participate in conferral, given the email that was sent.

Because the Plaintiff did not adequately confer before the filing of his Motion, it should be denied. Local Rule 7.1.A.3 requires actual conferral or a reasonable attempt at conferral. No actual conferral occurred. The courts have held that at reasonable attempt at conferral is not to send one e-mail or even several emails, and fail to follow-up at all telephonically, on the subject. *Hoelzel v. First Select Corp.*, 214 F.R.D. 634 (D. Colo. 2003). As stated above, it was undersigned counsel who arranged a telephonic conferral conference, which was unilaterally cancelled by the Plaintiff.

The District of Colorado has a similar local rule regarding conferral to the rule in the Southern District of Florida. *Id.* at 635. The *Hoelzel* court noted that actual effective communication is required before there a motion to compel is filed, which typically requires that the parties actually speak and engage in negotiations. *Id.* The court noted as follows:

> Rule 7.1.A serves a particularly important function in connection with discovery disputes because the parties, through negotiations, frequently are able to narrow the discovery requests in a way which eliminates the need for judicial intervention. . . . Without meaningful negotiations by the parties, the courts would be flooded with discovery motions.

*Id.* The court further noted that "the [conferral] requirement is not satisfied by a party making a demand for compliance." *Id.* The court further noted that "[t]o confer means "'to hold a conference; compare views; consult together.'" *Id.* (quoting *The American Heritage Dictionary of the English Language* 278-79 (9th ed. 1971)). The court held that "[t]he rule is not satisfied by one party sending a single e-mail to another party", and noted that at least one other court was in agreement with that holding. *Id.* (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996). Further, the court noted that one court found that there was not meaningful conferral because even though there were four telephone calls and two letters, the court found that the quality of the conferral was not meaningful. *Id.* (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456 (D. Kan. 1999)). In this case, the Defendants request that the Court find that simply sending a demand for the information on one occasion to be inadequate conferral, and to deny the Plaintiff's Motion on that basis.[1]

---

[1] Undersigned counsel believes that the Plaintiff's Motion could have been resolved by a simple phone call, and that if Local Rule 7.1.A.3 is read *in pari materia* with other sections of the Local Rules, such a phone call was required, as follows:

I. DISCOVERY IN GENERAL

**A. Courtesy and Cooperation Among Counsel.**

(1) *Courtesy*. Discovery in this District is normally practiced with a spirit of cooperation and civility. Local lawyers and the Court are proud of the courteous practice that has been traditional in the Southern District. Courtesy suggests that a telephone call is appropriate before taking action that might be avoided by agreement of counsel.

(2) *Scheduling*. A lawyer shall normally attempt to accommodate the calendars of opposing lawyers in scheduling discovery.

5

Therefore, the Plaintiff's Motion violates certain provisions of Local Rule 7.1.A.3(a), which requires that the Plaintiff's Motion be denied, just as violations of Local Rules in general require denial. *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (denying motion for protective order for violating the conferral requirement contained in Local Rule 7.1.A.3); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329-30 (6th Cir.), *cert. denied*, 414 U.S. 858 (1973) (holding that the district court properly denied a motion to compel for failure to adhere to the requirement of the local rules that the moving party must "notify the court of its attempts to resolve the controversy").

Moreover, the courts, including the former Fifth Circuit in a binding opinion, have issued strong language to the effect that a court's local rules are more than mere inconveniences, but rather must be obeyed. *Wirtz v. Hooper-Holmes Bureau, Inc.*, 327 F.2d 939, 943 (5th Cir. 1964) (stating that "Local Rules for the conduct of trial courts are desirable and necessary, and such rules should not be ignored or declared invalid except for compelling reasons"); *Wiss v. Weinberger*, 415 F. Supp. 293, 294 n.4 (E.D. Pa. 1976) (stating that "non-compliance with any local rule is a practice to be *strongly condemned* and one which will be penalized if the circumstances warrant such action") (emphasis in original). The Plaintiff's violations of Local Rule 7.1.A.3(a) require that his Motion be denied.

**I.      All references to Immigration Status.**

Once again, the Plaintiff makes no effort in his Motion to describe exactly what specific evidence he is seeking to exclude in this case, other than to state generally and broadly that the Plaintiff wants "any reference to the Plaintiff's immigration status at trial should be excluded." [D.E. 40, page 3]. This alone should warrant the denial of Plaintiff's Motion, since to grant this type of general request will undoubtedly lead to further litigation over the scope of what exactly was excluded. Furthermore, the vague nature of Plaintiff's Motion has also presented practical problems associated with drafting this Response, especially when considering that Plaintiff's counsel had a duty pursuant to S.D. Fla. L.R. 7.1(a)(3) to act in good faith to resolve specific issues before ever filing the motion. S.D. Fla. L.R. 7.1(a)(3) (noting that a failure to comply with this rule constitutes cause for the denial of the motion). A couple of e-mails demanding an answer that result in a teleconference being scheduled only to then pull the plug on the teleconference does not constitute appropriate conferral and thus there are no specific references

---

S.D. Fla. L.R. Gen. App. § I.A.(1-2).

to what evidence in particular the Plaintiff is seeking to exclude should not be deemed sufficient to satisfy the purposes of this rule. Is the Plaintiff wanting to exclude any type of evidence that could lead the jury to conclude that he is an illegal alien, such as that he sought a job with false identification, failed to pay income taxes, and requested to be paid in cash?

This district has previously recognized that an employee's FLSA claims are subject to the doctrine of *in pari delicto*. *Neuman v. CTRL Sys., Inc.*, 2009 WL 4730722 (S.D. Fla. 2009) (noting that "unclean hands" is a valid defense under the FLSA); *see also, Neiman v. Provident Life & Accident Ins. Co.*, 217 F. Supp. 2d 1281 (S.D. Fla. 2002) (Moreno, J.) (disallowing a party who was illegally practicing law from suing under an insurance contract to recover disability benefits). The Eleventh Circuit has also found the *in pari delicto* defense to be appropriate. *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006) (disallowing a party engaged in illegal conduct to prosecute a RICO cause of action; holding the defense of *in pari delicto* applies to actions at law). Credibility is huge in this case, because the Plaintiff is apparently taking the position (although he could not say it at this deposition) that he was not paid overtime and thus is owed overtime pay. If the Plaintiff states that at trial, which the Defendants contest, then the Defendants ought to be able to admit evidence that the Plaintiff is not paying taxes, requested to be paid in cash, and applied for a job providing a false social security number. To preclude the Defendants now at this late stage from proceeding with these arguments would be highly prejudicial to the Defendants, because they bear directly on Plaintiff's lack of credibility. Such evidence is highly probative and relevant, and should be admitted at trial. Fed. R. Evid. 404(b). Such evidence also constitutes relevant impeachment evidence pursuant to Fed. R. Evid. 608(b). Defendants are not seeking to simply admit into trial evidence that Plaintiff is an illegal alien for the purpose of arguing that he should not be awarded any overtime *per se* for that reason.

The *in pari delicto* defense is conceptually similar to an unclean hands defense which applies "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933); *Coules v. Pharris*, 250 N.W. 404 (1933). Any sort of serious illegal activity related to an employee's employment on the part of an employee trying to seek relief under civil remedial statutes prevents such "employees" from recovering. *See Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 143 (2002) (stating

7

that "we have consistently set aside awards of reinstatement or backpay to employees found guilty of serious illegal conduct in connection with their employment"). For example, to the extent that the Plaintiff: (1) lived and/or worked in the United States without the appropriate documentation, 2) committed income tax fraud and/or evasion, and/or 3) applied for work with the Defendants with false documentation in order to obtain employment, such behavior is illegal. *See,* 8 U.S.C. § 1324; 18 U.S.C. § 1546(a); 18 U.S.C. § 371; *United States v. Snipes*, 611 F.3d 855 (11th Cir. 2010) (affirming conviction and sentence of 36 months imprisonment for the famous actor Wesley Snipes for failing to file income tax returns). Improper motive for filing a lawsuit has also been deemed relevant in this District. *See Hardemon v. H&R Block, E. Enter., Inc.,* 2011 WL 3704746, *3 (S.D. Fla. 2011) (suggesting that establishing an improper motive for filing a lawsuit is a defense to an FLSA case). Thus, Plaintiff's Motion should be denied accordingly.

*See infra*, § IV, regarding the fact that Plaintiff failed to pay income taxes is admissible as impeachment. The failure to file tax returns is admissible to impeach, as held by the Fourth, Ninth, and Eleventh federal Circuit Courts of Appeal some of which were based on *United States v. Klein,* 438 F. Supp. 485, 487 (S.D. N.Y.1977). *See Dean v. Trans World Airlines, Inc.,* 924 F.2d 805, 811 (9th Cir. 1991); *United States v. Gellman,* 677 F.2d 65, 66 (11th Cir. 1982); *Zukowski v. Dunton,* 650 F.2d 30, 34 (4th Cir. 1981).

The *Ortiz v. Santuli Corp.* case cited by the Plaintiff is distinguishable because in that case the Plaintiff may have earned such a small amount of money that it might not have to have been reported to the government, while here, Plaintiff earned $30,000 per year approximately for 3 years and never reported it. In *Barrera v. Weiss & Woolrich*, the court allowed the Plaintiffs to be impeached with evidence of failure to file tax returns. Undersigned counsel tried that case.

**II.     Other Overtime Lawsuits.**

Other overtime lawsuits that the Plaintiff filed are directly relevant to the credibility issue in this case. The Plaintiff has previously sued a Japanese restaurant at which he worked as a sushi preparer for allegedly not paying him overtime. (*Dep. of Plaintiff* at 4-7). He settled for an amount of money ($10,000 total settlement with approximately $4,500 going to the plaintiff) using J.H. Zidell, P.A. as his lawyer. *Id.* This made Plaintiff aware that if he worked more than 40 hours per week of overtime, he was owed time and one-half pay for those hours. *Id.* at 9.

Despite knowledge of overtime, Plaintiff's suit suggests he worked approximately 3 years for Defendants with no overtime, but he admitted he never spoke to anyone about his pay, the

8

Defendant's time and pay records are accurate, he has no idea what he is owed and he could not deny that that is because he is not owed anything, he has never attempted to calculate what he is owed, and he has not provided information to anyone to assist him in calculating his damages. (*Dep. of Plaintiff* at 69, 34, 54-57, 52-53, 80, 63-64).  This evidence all strongly suggests that he is not owed anything, which is Defendants' main defense, and thus to exclude this evidence would prevent the Defendants' from asserting their main defense at trial to which Defendants strongly object.  The Plaintiff also repeatedly failed to answer any questions concerning what he was owed as set forth at length in the summary judgment papers, and those types of answers coming from an individual who has previously brought suit under the FLSA tends to show that he was really not being denied overtime, or he would have said something about it.

Histories of previous litigation are admissible for a number of reasons, including credibility and propensity to be litigious.  *See, e.g., Graham v. Casey's General Stores*, 206 F.R.D. 251, 256 (S.D. Ind. 2002); *Travers v. Travenol Labs., Inc.*, 94 F.R.D. 92, 93 (N.D. Ill. 1982); *Gutescu v. Carey Int'l, Inc.*, Case No. 01-40260CIV-MARTINEZ [D.E. 262 at p.5-6]; *Gutescu v. Carey Int'l, Inc.*, 2003 WL 25589038 (S.D. Fla. 2003).  Moreover, in this case, the Plaintiff sued before for overtime and made no complaint that he was not being properly paid by Defendants.

**III.    All references to attorney's fees and costs**

The Eleventh Circuit has a pattern jury instruction on attorneys' fees and costs that should be given in this case, which reads as follows:

> If you find for the Plaintiff you must not take into account any consideration of attorneys fees or court costs in deciding the amount of Plaintiff's damages. [The matter of attorney's fees and court costs will be decided later by the Court.]

*Pattern Jury Instructions for the Eleventh Circuit* § 6.1 at p. 571 (2005 ed.).  The Defendants anticipate submitting this proposed jury instruction to the Court in this case.  It is common practice in this district to charge the jury with this instruction.  *Moya v. Hi-Tech Auto Body, Inc., et al.,* Case No. 09-21461-CIV-KING; *Jose Martinez-Pinillos v. Air Flow Filters, Inc., et al.,* Case No. 09-22453-CIV-MARTINEZ; *Solano v. A. Navas Party Production, Inc., et al.,* Case No. 09-22847-CIV-ALTONAGA; *Lira v. Matthew's Marine Air Conditioners, Inc., et al.*, Case No. 09-61178-CIV-ZLOCH; *Lamonica, et al. v. Safe Hurricane Shutters, Inc., et al.,* Case No. 07-61295-CIV-COHN; *Barrera, et al. v. Weiss & Woolrich So. Enterprises, Inc., et al.*, Case No. 09-21841-CIV-GRAHAM; *Obando v. M & E Investment Properties, Inc., et al.,* Case No. 11-

20318-CIV-MOORE; *Palma, et al. v. Safe Hurricane Shutters, Inc., et al.*, Case No. 07-22913-CIV-HUCK.  The instruction is utilized because the Eleventh Circuit is concerned that juries will think that plaintiffs have contingency fee agreements and that the lawyer will be getting 40% of whatever the jury awards the plaintiff, so the jury, to account for that, will award the plaintiff more in an attempt to have the plaintiff receive a net amount of what they believe is fair.  Thus, its probative value and relevance is great.  This instruction, coupled with the simple admonition by defense counsel in closing that the jury is not to award anything for attorneys' fees and/or costs, should serve to ensure that neither the Plaintiff, nor the Defendants, are prejudiced with regard to the issue of fees and costs.

Had the Plaintiff bothered to confer before filing the Motion, he would have learned that the Defendants simply desire to have the aforementioned jury instruction given and a reference to that instruction in closing.  Furthermore, this has been defense counsel's position in several cases that defense counsel's firm has had with Plaintiff's counsel's firm.  Devoting less than one minute to an issue during the course of a multiple day trial is hardly making it the focal point of the case.

Finally, it is extremely telling that the Plaintiff *does not* want the Court to instruct the jury that attorneys' fees and costs are not to be awarded (a position that Plaintiff's counsel routinely and transparently takes), even though it would be inappropriate for the jury to award money for attorneys' fees and costs.  The only confusion that could occur is if the jury is *not* instructed with respect to attorneys' fees and costs, thereby presenting a grave danger of unfair prejudice to the Defendants.  The fact that Plaintiff's counsel repeatedly tries to bait courts into hiding this instruction from juries is both extremely troublesome and indicative of Plaintiff's counsel's true motives.

**IV.      All references to liquidated damages**

Defendants agree that no mention of liquidated damages should be made at trial.  Had Plaintiff bothered to confer, he would have learned that.

**V.       All references to the filing, reporting, and/or payment of Plaintiff's taxes**

The failure to file tax returns is admissible to impeach, as held by the Fourth, Ninth, and Eleventh federal Circuit Courts of Appeal.  *See Dean v. Trans World Airlines, Inc.,* 924 F.2d 805, 811 (9th Cir. 1991); *United States v. Gellman,* 677 F.2d 65, 66 (11th Cir. 1982); *Zukowski v. Dunton,* 650 F.2d 30, 34 (4th Cir. 1981).  *Gellman* is dispositive of the issue.

The body of Plaintiff's Motion seeks to preclude the Defendants from making any reference whatsoever to the filing, reporting, and/or payment of Plaintiff's taxes. [D.E. 85, pages 5-6]. The Federal Rules of Evidence provide for three forms of impeachment evidence: (1) impeachment by bad character for truthfulness or by prior bad acts (Rule 608), (2) impeachment by conviction of a qualifying crime (Rule 609), and (3) impeachment by prior inconsistent statement (Rule 613). The courts are clear that evidence of prior bad acts and wrongs is admissible (and discoverable) under either Rules 404(b) and/or 608(b). Additionally, Rule 611(b) provides that, in pertinent part, "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." This gives parties wide-latitude concerning cross-examination. The former Fifth Circuit found that the decision to refuse to disclose tax returns in a civil case in discovery warranted dismissal with prejudice. *Morton v. Harris*, 628 F.2d 438 (5th Cir. 1980) (the court did not discuss why the tax returns were being requested and were ordered produced in discovery). More recently, the Eleventh Circuit has held that a district court did not abuse its discretion in compelling discovery of tax records because those records met the Eleventh Circuit's very low threshold for admissibility: these "items of information" were "arguably relevant to the case." *Maddow v. Procter & Gamble Co.,* 107 F.3d 846, 853 (11th Cir. 1997); s*ee also, Watkis v. Payless ShoeSource, Inc.*, 174 F.R.D. 113, 117 (M.D. Fla. 1997) (where litigant argued that tax records were irrelevant to a witness's credibility in an employment retaliation case, the court noted that "the discovery rules allow broad disclosures" and compelled the litigant to produce the tax records). Additionally, a Supreme Court case is also on point, holding that although tax returns "are made confidential within the government bureau . . . copies in the hands of the taxpayer are held subject to discovery". *St. Regis Paper Co. v. United States*, 368 U.S. 208, 219 (1961).

Evidence regarding any tax violations committed by the Plaintiff should be admitted under Federal Rule of Evidence 404(b) because such evidence would show Plaintiff's *intent* to defraud the federal government, further evincing his lack of credibility as a witness, which is extremely important in a wage and hour case (to show intent and motive), particularly when there is a dispute with respect to hours worked and wages paid. In the case of *Barrera, et al. v. Weiss & Woolrich Southern Enterprises, Inc., et al.,* Case No. 09-21841-CIV-GRAHAM [D.E. 291, page 4], Judge Graham allowed evidence at trial concerning plaintiffs' failure to pay federal income taxes since such evidence is "probative of truthfulness" (citing *Chamblee v. Harris &*

*Harris*, 154 F. Supp. 2d 670, 681 (S.D.N.Y. 2001)). Numerous other Judges in this District have allowed this type of evidence as well. *Rakip v. Paradise Awning Corp*., 2011 WL 6029981, *3; *Solano v. A Navas Party Productions*, Case No. 09-22847 (Altonaga, J.); *Lamonica v. Safe Hurricane Shutters, Inc.*, Case No. 07-61295 (Cohn, J.); *Martinez-Pinillos v. Air Flow Filters, Inc.*, Case No. 09-22453 (Martinez, J.). Furthermore, under Florida law, tax returns are clearly admissible to impeach a witness's credibility. *Amer. Auto. Assoc. v. Tehrani*, 508 So. 2d 365, 369-70 (Fla. 1st DCA 1987); *Collins v. Farley*, 147 So. 2d 593, 594-95 (Fla. 3d DCA 1962).

It should be noted that the Eleventh Circuit has held within the criminal context that a non-party witness's tax returns could be used for impeachment. In *United States v. Gellman*, 677 F.2d 65 (11th Cir. 1982), a defense witness (the defendant's former lawyer) was on the witness stand to discuss how disorganized the defendant's personnel affairs were, and he was impeached under Rule 608 by the government, on the ground that he had failed to file income tax returns (constituting income tax fraud). The defendant appealed on the ground that the admission of this impeachment evidence was improper, but the Eleventh Circuit affirmed. The *Gellman* case requires the conclusion that a failure to file income tax returns is relevant impeachment evidence. It is also not subject to dispute that a failure to file tax returns constitutes a felony. *United States v. Snipes*, 611 F.3d 855 (11th Cir. 2010) (affirming conviction and sentence of 36 months imprisonment for the famous actor Wesley Snipes for failing to file income tax returns).

In more general terms, the Eleventh Circuit has held that acts "probative of untruthfulness under Rule 608(b) includes such acts as . . . fraud." *Ad-Vantage Tel. Directory Consultant, Inc. v. GTE Directors Corp.*, 37 F.3d 1460, 1464 (11th Cir. 1994). In fact, courts have specifically held that defrauding and giving false statements to the government epitomizes the type of prior misconduct that may be used to impeach a witnesses' credibility pursuant to Rule 608(b). *United States v. Reid*, 634 F.2d 469, 473 (9th Cir. 1980). Thus, income tax fraud is the type of misconduct contemplated by Rule 608(b) to be used as impeachment.

Furthermore, other circuit courts of appeal widely recognize the admissibility of tax returns to impeach credibility even in cases where tax fraud is not at issue. For example, the court in *Chnapkova v. Koh*, 985 F.2d 79 (2d Cir. 1993) held that it was reversible error for the district court to refuse to allow a plaintiff in a civil case to be impeached by her failure to pay tax returns. The Second Circuit, which decided *Chnapkova*, has more recently reaffirmed the notion that such evidence can be admissible, and specifically held that a district court acts within its

discretion when deciding on the admissibility of tax returns as a means of impeaching a witness's credibility. *Tesser v. Bd. of Ed. Of City School Dist. of City of New York*, 370 F.3d 314, 318 (2d Cir. 2004). Further, the other Circuit Courts of Appeal are also in accord with the Eleventh Circuit's views as to the admissibility of tax returns described above. *See*, *e.g.*, *O'Connor v. Venore Trans. Co.*, 353 F.2d 324, 326 (1st Cir. 1965) (finding that where the issue of a testifier's credibility is crucial, admission of tax returns is within the trial court's discretion); *Commodity Futures Trading Comm'n v. Collins*, 997 F.2d 1230, 1233 (7th Cir. 1993). Other courts have likewise required a party (in a civil case) to produce income tax returns. *Walker v. Americare Radiographics, Inc.*, 2010 WL 4064022 (S.D. Fla. 2010); *Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 208 (E.D. N.Y. 1996); *Dunlap v. Midcoast-Little Rock, Inc.*, 166 F.R.D. 29, 30 (E.D. Ark. 1995); *Great West Life Assurance Co., v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994); *Weiner v. Bache Halsey Stuart, Inc.*, 76 F.R.D. 624, 627 (S.D. Fla. 1977); *Shearson Lehman Hutton, Inc. v. Lambros*, 135 F.R.D. 195 (M.D. Fla. 1990); *KECO Industries v. Stearns Elec. Co.*, 285 F. Supp. 912, 913 (E.D. Wis. 1968); and *Star v. Rogalny*, 22 F.R.D. 256, 258 (E.D. Ill. 1958). This conclusion follows from the language of the Federal Rules of Evidence. "Pursuant to the provisions of Federal Rule of Evidence 608(b), cross-examination may delve into specific instances of conduct of the witness if probative and if that conduct concerns 'the witness' [*sic*] character for truthfulness or untruthfulness.'" *Hunter v. General Motors Corp.*, 2005 WL 2033323 at *3 (6th Cir. 2005).

The above cases should be reviewed with the notion that, in general, impeachment evidence is discoverable, and thus admissible. The Supreme Court has held—as have other courts—that a party to a civil suit is entitled to documents that would be useful to impeach a witness. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *Duck v. Warren*, 160 F.R.D. 80, 83 (S.D. W. Va. 1994); *Tisby v. Buffalo Gen. Hosp.*, 157 F.R.D. 157 (W.D. N.Y. 1994); *Davidson Pipe Co. v. Laventhol and Horwath*, 120 F.R.D. 455 (S.D. N.Y. 1988); and *Boring v. Keller*, 97 F.R.D. 404, 408 (D. Colo. 1983). In order to thoroughly defend against Plaintiff's claim for unpaid wages in this case, where the Plaintiff chose to place the issue of his income center stage, the Defendants should be entitled to raise this issue at trial. For the foregoing reasons, evidence concerning the filing, reporting, and/or payment of Plaintiff's taxes should not be excluded as it constitutes important impeachment evidence under the Federal Rules of Evidence.

The *Ortiz v. Santuli Corp.* case cited by the Plaintiff is distinguishable because in that case the Plaintiff may have earned such a small amount of money that it might not have to have been reported to the government, while here, Plaintiff earned $30,000 per year approximately for 3 years and never reported it.  In *Barrera v. Weiss & Woolrich*, the court allowed the Plaintiffs to be impeached with evidence of failure to file tax returns.  Undersigned counsel tried that case.

The Plaintiff conflates the issue of whether an individual is barred from litigating a claim solely on the ground that they are an illegal alien, with the distinct issue as to whether criminal activity by the alien is admissible to impeach or show lack of credibility.  Two different issues.

## VI. All references to Plaintiff's Name and Identity Changes.

Here, the lawsuit is filed under the name of Daniel Valderrabano Torres [D.E. 1], and in "Plaintiff's"[2] interrogatory answers, when asked to list all names that he has ever gone by or used, identified only "Daniel Valderrabano Torres", and claimed that he had a drivers' license issued in that same name. (*Defendants' First Set of Interrogatories*, Int. No. 1 and *Plaintiff's Answers to Defendants' First Set of Interrogatories*, Int. No. 1).  However, at his deposition, Plaintiff identified himself as Daniel Valderabano Torres (*Dep. of Plaintiff* at 4-5), and claimed that he did not have a drivers' license, *id.* at 16, but that he has been in the United States for 10 years, *id.* at 13, and drives anyway from time to time when it suits his convenience and that he intends to continue to drive even though he realizes he poses a risk to innocent people.  *Id.* at 17-18.  What is worse is that the interrogatory answers appear to be a complete sham and not signed by him because he testified that he did not sign any documents or participate in the discovery process at all with his attorneys.  *Id.* at 36-37, 57.

In his deposition, he was asked to carefully and slowly spell his name, specifically asked if he used just one "r" in his middle name, and then asked whether he used any other names, but he spelled a different name then the name identified on his lawsuit and his interrogatories and failed to disclose any other name, only stating that his last name was "Torres" (thus leaving both Defendants and the Court not knowing the actual identity of the Plaintiff and making a mockery out of our Court system), as follows:

Q: Could I have the complete spelling of your name please?

A: It's Daniel, but I don't -- I can't spell it quickly.

---

[2] Plaintiff is in quotes because he testified that he did not provide any interrogatory answers, though answers purporting to be the Plaintiff's were served in this case to the Defendants.  This is discussed fully below.

14

> Q: Well, just spell it slowly. Let's enunciate clearly here today. There's no sense in confusing anybody.
>
> A: It's D-A-N-I-E-L.
>
> Q: A middle name or next name, whatever the case may be?
>
> A: It's V-A-L-D-E-R-A-B-A-N-O.
>
> Q: So one R?
>
> A: Yes.
>
> Q: And do you have any other names or a last name?
>
> A: Last name.
>
> Q: And how do you – what is that last name?
>
> A: It's T-O-R-R-E-S.

*Id.* at 4-5. Plaintiff did not disclose the name that he filed suit under.

The deposition testimony should be compared with the interrogatory response, in which Plaintiff (ostensibly Plaintiff, because Plaintiff does deny that he responded to any interrogatories) stated that his name was spelled differently, and the notary public, K. David Kelly, one of Mr. Zidell's associates, spelled the name differently as well, noting that he took the name off of the Plaintiff's Mexican Voter Registration Card. (*Plaintiff's Answers to Defendants' First Set of Interrogatories*). The answer to Interrogatory No. 1 was also fraudulent in that it implies that Plaintiff has a social security number (he testified in his deposition that he does not), and expressly states that he has a drivers' license, though he stated in his deposition, that he does not (though he did testify in his deposition that he never signed any interrogatory answers, and thus the answers submitted by Plaintiff's counsel are apparently fraudulent). *Id.* at 36-37.

All of this discovery fraud and filing suits under wrong name should be admissible to show lack of credibility on the part of the Plaintiff and to impeach the Plaintiff. The fact that he did not sue in his own name suggests that there is something seriously remiss with his lawsuit. This is the same individual who cannot say what if anything he is owed, filed a previous suit for overtime but was allegedly not paid overtime by Defendants for 3 years, yet Plaintiff never said anything about it, and he asked to be paid in cash and failed to file tax returns. This Plaintiff is completely gaming the system, and if the Court does not grant summary judgment, though it should, it should allow this evidence of widespread gamesmanship in to show lack of credibility on the part of the Plaintiff.

**VII.     All references to J.H. Zidell's infomercial and Past Representation of Plaintiff.**

Evidence concerning Plaintiff's counsel's advertisement should not be excluded because it applies directly to the formation of this lawsuit, and is relevant to not only the Plaintiff's motivation, intent, and plan for filing this lawsuit, but also to the credibility of the Plaintiff and his claims (especially if the Plaintiff did not contact his attorney right away upon hearing the advertisement).  Therefore, evidence concerning Plaintiff's counsel's advertisement is admissible pursuant to Fed. R. Evid. 404(b).  It is also admissible as relevant impeachment evidence pursuant to Fed. R. Evid. 608(b).  The Plaintiff has failed entirely in his Motion to articulate any specific reason why he believes that evidence concerning the advertisement is unfairly prejudicial, and should be precluded from doing so for the first time in their Reply since that would be contrary to the Local Rules.[3]  S.D. Fla. L.R. 7.1 (replies cannot raise new arguments not in the motion)[4].

The issue at hand cannot be viewed outside of the larger background context in this case. The Plaintiff in this case has provided testimony that seriously calls into question the validity of his claims, and greatly suggests that the Plaintiff does not have valid claims in this case. For example, the Plaintiff admitted that:  he cannot explain his alleged damages or the inconsistencies therein, the damages calculations submitted on his behalf are wrong, he was paid for all of the hours that he worked, he never spoke to or complained to the Defendant about overtime, he does not know how overtime works, he did not understand his pay, he has no proof of how many hours that he worked per week, he has no witnesses who can testify how many hours he worked per week, his Complaint in this case (at least in part) is incorrect, and his complaint in another case (at least in part—filed under a false name) is incorrect, too.[5]

---

[3] As with various other issues that Plaintiff seeks to exclude, the sole legal authority that the Plaintiff cites to in his Motion for exclusion is Fed. R. Evid. 403, and in doing so, the Plaintiff simply states in boilerplate fashion without any real explanation that the evidence is unfairly prejudicial, irrelevant, and/or has no probative value. [D.E. 40, page 11].

[4] This argument goes for any new arguments or explanations that the Plaintiff may choose to put in his Reply which were not included in the Plaintiff's Motion, thereby precluding the Defendants from having the opportunity to respond thereto.

[5] Notably, Plaintiff's counsel failed to object to certain questions cited to herein, and therefore, the Plaintiff has waived any such objections.  S.D. Fla. L.R. 26.1(g)(3)(A) (stating that "[a]ny ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived"); *Roy v. Austin Co*., 194 F.3d 840, 844 (7th Cir. 1999); *Dollar v. Long Mfg.*, 561 F.2d 613 (5th Cir. 1977); *Fejta v. GAF Companies,*

Plaintiff's counsel's unfortunate history of representing plaintiffs whose cases do not have any merit provides even greater context as to why the Plaintiff would choose to litigate his claims in this case despite his previously cited admissions (*see supra*), and despite the Defendant's tender of an amount which the parties do not dispute constitutes the full amount of Plaintiff's claim (*see* [D.E. 86-2]).  *Guzman v. Irmadan, Inc.*, 551 F. Supp. 2d 1368 (S.D. Fla. 2008) (granting summary judgment in favor of defendants where gross annual revenues did not exceed $500,000); *aff'd, Guzman v. Irmadan, Inc.,* 322 Fed.Appx. 644 (11th Cir. 2009); *Navarro v. Broney Automotive Repairs, Inc.*, 533 F. Supp. 2d 1223 (S.D. Fla. 2008) (granting summary judgment in favor of defendants), *aff'd*, *Navarro v. Broney Automotive Repairs, Inc.*, 2008 WL 2315869 (11th Cir., June 6, 2008); *Guevara v. Weiss & Woolrich Contractors, Inc., et al.*, Case No. 10-21177-CIV-MARTINEZ; *Rodriguez, et al. v. Marble Care Int'l, Inc.,* 2011 WL 918634 (S.D. Fla. 2011); *Rodriguez, et al. v. Marble Care Int'l, Inc.,* Case No. 10-23223-CIV-GRAHAM [D.E. 87] (noting on page 20 that attorney Zidell is hardly a novice to the FLSA area and has litigated approximately 1000 lawsuits in the past 15 years); *Vallecillo*, *et al. v. Wall to Wall Residence Repairs, Inc., et al.*, Case No. 08-22271-CIV-ZLOCH (suing a corporate-defendant with less than the requisite gross annual sales); *Martinez-Pinillos v. Air Flow Filters, Inc.,* Case No. 09-22453-CIV-MARTINEZ (litigating a case all the way through trial where it was determined that the plaintiff did not even work for the defendant during the relevant time period); *Obando v. M&E Investment Properties, Inc., et al.,* Case No. 11-20318-CIV-MOORE (suing a corporate-defendant with less than the requisite gross annual sales); *Girard v. Aztec RV Resort, Inc., et al.,* Case No. 10-62298-CIV-ZLOCH.  There has even been testimony in a prior trial involving Plaintiff's counsel suggesting that Plaintiff's counsel told his client to lie concerning the facts of his lawsuit.  *Palma, et al., v. Safe Hurricane Shutters, Inc., et al,* Case No. 07-22913-CIV-SIMONTON.  To the extent that undue influence exists here between the Plaintiff and his counsel, such evidence is highly relevant and probative under Fed. R. Evid. 404(b) because it speaks directly to the Plaintiff's motivation, intent, and plan for filing this lawsuit, as well as the Plaintiff's credibility (or lack thereof).  It would be highly prejudicial to the Defendants if the jury was asked to render a verdict in this case after being given only part of the story.  Notably, defense counsel has taken the depositions of other clients of Plaintiff's

---

*Inc.,* 800 F.2d 1395, 1396 (5th Cir. 1986) (finding implied consent for the purposes of trying a certain issue where party failed to object during questioning).

counsel who have provided revealing testimony concerning Plaintiff's counsel's advertisement, and thus, the Defendants have a good faith basis for asking questions concerning this issue at trial, and should be permitted to do so.

This type of behavior and history is also consistent with Plaintiff's counsel's employment of improper tactics in this case in order to exert undue financial pressure upon the Defendants, including but certainly not limited to the following: (1) the fact that Plaintiff purportedly wants to continue litigating his case despite the fact that the documents in this case prove that there was no overtime worked. Furthermore, it cannot be ignored that the Plaintiff admitted that he has used this same Plaintiff's counsel to file lawsuits in the past. When taking everything else into consideration, it is not simply a coincidence. But with all of these things together, coupled with Plaintiff's counsel's history of engaging in such behavior, excluding such evidence would only seek to conceal the truth and would result in a tremendous amount of prejudice to the Defendants. Moreover, such evidence could also very well serve to rebut the allegation that the Plaintiff brought his claims and continues to litigate them because the claims have merit. For all of these reasons, the Court should not exclude testimony concerning Plaintiff's counsel's advertisement.

## VIII. All references to statements concerning Plaintiff's counsel's role in bringing this lawsuit and solicitation

Defendants' arguments as to why evidence concerning solicitation and Plaintiff's role in bringing this lawsuit should not be excluded are very similar to the arguments asserted in Section VII., *supra*, and therefore, Defendants expressly incorporate those arguments within this section as well.

Evidence concerning this issue should not be excluded because it applies directly to the formation of this lawsuit, and is relevant to not only the Plaintiff's motivation, intent, and plan for filing this lawsuit, but also to the credibility of the Plaintiff and his claims (which is especially important in an FLSA case). Therefore, evidence concerning Plaintiff's counsel's advertisement is admissible pursuant to Fed. R. Evid. 404(b). It is also admissible as relevant impeachment evidence pursuant to Fed. R. Evid. 608(b). Notably, defense counsel has taken the depositions of other clients of Plaintiff's counsel who have provided revealing testimony concerning Plaintiff's counsel's role in lawsuits and solicitation, and thus, the Defendants have a good faith basis for asking questions concerning this issue at trial, and should be permitted to do

so. There has even been testimony in a prior trial involving Plaintiff's counsel suggesting that Plaintiff's counsel told his client to lie concerning the facts of his lawsuit. *Palma, et al., v. Safe Hurricane Shutters, Inc., et al,* Case No. 07-22913-CIV-SIMONTON.

Once again, the Plaintiff has failed entirely in his Motion to articulate any specific reason why he believes that such evidence is more prejudicial than probative. Given the facts of this case, and Plaintiff's counsel's history, as noted, *supra,* such an important question of why this lawsuit was brought in the first place is one that is highly relevant to the credibility of the Plaintiff's claims. Once again, it would be highly prejudicial to the Defendants if the jury was asked to render a verdict in this case after being given only part of the story. Thus, as a result of these arguments, as well as those articulated within Section III., *supra*, the blanket exclusion that the Plaintiff seeks should not be granted.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny the Plaintiff's Motion in Limine in accordance with the arguments contained herein.

Respectfully submitted,

Glasser &, Kleppin, P.A.
Attorneys for Defendants
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405
E-mail: ckleppin@gkemploymentlaw.com

By: s/Chris Kleppin
    Chris Kleppin
    Fla. Bar No. 625485

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on March 28, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record (Jamie Zidell, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

              Respectfully submitted,


            By:  s/Chris Kleppin
              Chris Kleppin
              Fla. Bar No. 625485