United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Daniel Valderrabano Torres and all others similarly situated, Plaintiffs </br></br> v. </br></br> Rock & River Food Inc. d/b/a Marumi Sushi, and Teruhiko Iwasaki, Defendants | </br></br></br></br>Civil Action No. 15-22882-Civ-Scola |

### Order On Cross Motions for Summary Judgment

This matter is before the Court on the Defendants' Motion for Summary Judgment and Involuntary Dismissal (ECF No. 27) and the Plaintiff's Motion for Partial Summary Judgment (ECF No. 28). For the following reasons, the Defendants' motion is **denied** and the Plaintiff's motion is **granted**.

**1.   Background.**

Marumi Sushi is a single–location, Japanese–themed restaurant in Plantation, Florida with annual revenues exceeding $500,000. The restaurant is owned and operated by Terukiko Iwasaki and Tetsu Hayakaw, who are also the restaurant's chefs. From August 2012 until June 2015, Daniel Valderrabano Torres worked as a sushi chef at Marumi Sushi. In this position, Torres did not interact with customers, process credit card transactions, or purchase supplies for the restaurant. Torres's central responsibility was to prepare sushi. The restaurant ordered the sushi ingredients from several different vendors, including True World Foods Miami, LLC ("True World"). True World's invoices show that the ingredients traveled across state lines. In addition to Torres, the restaurant had fourteen staff members. One of the staff members was Karla Yasmin Santiago, a sushi assistant, who also handled the sushi ingredients.

On August 3, 2015, Torres sued the restaurant and Iwasaki for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. sections 201-16. Torres alleges that the Defendants failed to pay him overtime. On February 11, 2016, the Defendants moved for involuntary dismissal and summary judgment, and Torres moved for partial summary judgment on the issues of FLSA coverage

and Iwasaki's role as Torres's employer. The motions are ripe for the Court's review.

## 2. Involuntary Dismissal

Under Federal Rule of Civil Procedure 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." A court has the discretion to sanction any party who fails to follow court rules, "[b]ut that discretion is not unlimited, and the '[d]ismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances.'" *Zocaras v. Castro,* 465 F.3d 479, 483 (11th Cir. 2006) (quoting *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir. 1985)). "[D]ismissal with prejudice is plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." *Betty K Agencies, Ltd. v. M/V Monada,* 432 F.3d 1333, 1339 (11th Cir. 2005). "[F]indings satisfying both prongs of [that] standard are essential before dismissal . . . ." *Id; see also Idearc Media Corp. v. Kimsey & Associates, P.A.,* 2009 WL 928556, at *4–5 (M.D. Fla. Mar.31, 2009) (declining to dismiss where there was insufficient evidence that the plaintiff had fabricated evidence or acted willfully, explaining that, typically, "fraud ... between the parties [is] not a subject for dismissal"). "Mere negligence or confusion is not sufficient to justify a finding of delay or willful misconduct." *Zocaras,* 465 F.3d at 483. "Nor, typically, is mere delay." *Aquilar v. United Floor Crew, Inc.,* 2015 WL 2415421, at *7 (S.D. Fla. May 21, 2015) (Bloom, J.).

In this case, the Defendants argue that dismissal is necessary on a myriad of grounds, including the Plaintiff exceeded page limits, filed his motion for summary judgment before filing a statement of material facts, spelled his middle name with one "r" instead of two during his deposition, gave responses during his deposition which conflicted with answers to interrogatories and the complaint, failed to answer deposition questions regarding damages, was a "serial plaintiff" because he filed a FLSA suit several years ago, failed to provide a presuit demand, does not pay income taxes, and never provided proper initial disclosures. None of these grounds provide the extreme relief that the Defendants seek.

First, many of the Defendants' arguments misstate the law. The FLSA does not require a presuit demand, *see Sahyers v. Prugh, Holiday & Karatinos, P.L.,* 560 F.3d 1241, 1246 (11th Cir. 2009), multiple courts have rejected the Defendants' income tax argument, *see Solano v. A. Navas Party Prod., Inc.,* 728 F. Supp. 2d 1334, 1339–40 (S.D. Fla. 2010) (Altonaga, J.), and there is no case granting involuntary dismissal because a plaintiff had filed one previous suit or

mistakenly misspelled his name, *see Zocaras,* 465 F.3d at 483 (distinguishing defrauding the court with a mere "slip up"). Furthermore, while the Court does not condone or approve of the Plaintiff's alleged discovery errors, the Defendants' lack of diligence asking the Court to enforce discovery obligations is at least partially responsible for the current situation. The Court's initial order explicitly informed the parties that any discovery motions would be handled on an expedited briefing schedule in order to prevent any delay to the pretrial schedule. The Defendants knew of many of the Plaintiff's alleged violations months ago, yet the Defendants did not notify the Court promptly within the discovery period in order to allow the Court to consider other remedies. Moreover, much less drastic sanctions are available; for example, attacking the alleged inconsistencies between the deposition answers and interrogatories through cross–examination. *See Idearc Media Corp. v. Kimsey & Assocs., P.A.,* 2009 WL 928556, at *5 (M.D. Fla. Mar. 31, 2009) ("In the case of a discrepancy between a party's discovery responses and evidence attained by the opposing party, lacking a 'clear showing of egregious conduct[,] allegations of inconsistency, non-disclosure, even falseness, can be brought to the jury's attention through cross-examination or impeachment.") (quotation omitted). Accordingly, the Defendants' motion for involuntary dismissal is denied.

### 3.   Striking An Affidavit Under Rule 37(c)(1)

In support of his motion for partial summary judgment, the Plaintiff attached the declaration of a True World employee, Gilberto Conrado, the source of the products sold to the Defendants, and invoices for the all orders made by the Defendants between 2011 and 2014. The Defendants argue that the Court should strike this information because Conrado was not listed as a witness in the Plaintiff's Rule 26 disclosures and the "Defendants had no chance to depose him . . . or otherwise engage in discovery concerning him." (ECF No. 33 at 5).

Under Federal Rule of Civil procedure 37(c)(1), when "a party fails to provide information or identify a witness as required by [Rule] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Leathers v. Pfizer, Inc.,* 233 F.R.D. 687, 697 (N.D. Ga. 2006).

In this case, it was the Defendants and not the Plaintiff who controlled the information about True World. In fact, it appears that the Plaintiff requested documents from the defendants regarding the Defendants' suppliers, including "[a]ny and all contracts, invoices, statements, or documents of any

kind reflecting the purchase or acquisition of any and all goods, materials, supplies, merchandise, [and[ equipment . . . ," as well as "all invoices, statements, or billings of any kind received from the vendors for the purchase or acquisition of goods or materials . . . ." (ECF No. 42 at 6 n.4). The Defendants objected and refused to provide the information. (*Id.*). On January 9, 2016, in response to an interrogatory, the Defendants provided a list of its vendors including True World, and stated that their contact at True World was named "Miho." (*Id.* at 2–3 n.1–2). The Plaintiff served True World with a subpoena and the company chose Conrado as its representative. It is clear that the Plaintiff could not have included Conrado in his initial disclosures, because he did not yet have the information.

Moreover, the Court fails to see how the Defendants could be surprised or prejudiced by the use of the True World records. This was information within the Defendants' control and they were aware that the Plaintiff sought this information long before the Plaintiff's motion for summary judgment. *See Denbury Onshore, LLC v. Christensen*, 101 F. Supp. 3d 1147, 1167 (D. Wyo. 2015) (refusing to strike an affidavit under Rule 37(c)(1) which relied on an agreement that was not disclosed under Rule 26(a) because the plaintiff was a party to the agreement and knew of its relevance to the case). If the Defendants wished to depose their vendors' representatives or gather records, they could have done so at any point. Accordingly, the Court declines to exercise its discretion under Rule 37(c)(1) and will consider Conrado's declaration and the True World records.

**4.    The Cross Motions for Summary Judgment**

The Defendants assert that they are entitled to summary judgment because the Plaintiff is not covered by the FLSA, the Plaintiff cannot prove damages, the statute of limitations bars the Plaintiff's claims, and the Plaintiff cannot seek prejudgment interest and liquidated damages. The Plaintiff moved for summary judgment on the limited issues of whether the Plaintiff is covered by the FLSA and whether Iwasaki is an "employer" within the meaning of the statute.

**A.    Legal Standard**

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted). Thus, a court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

### B. FLSA Coverage

The FLSA requires an employer to pay its employee "an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week." *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *see also* 29 U.S.C. § 207(a). "If a covered employee is not paid the statutory wage, the FLSA creates for that employee a private cause of action against his employer for the recovery of unpaid overtime wages and back pay." *Josendis*, 662 F.3d at 1298; *see also* 29 U.S.C. § 216(b).

"In order to be eligible for FLSA overtime, however, an employee must first demonstrate that he is 'covered' by the FLSA." *Josendis*, 662 F.3d at 1298. This requires a showing that the jurisdictional prerequisite of "interstate commerce" exists in a given case, a showing that may be made one of two ways—individual coverage or enterprise coverage. *Id.*

"An employee is subject to individual coverage if he is *directly* and *regularly* 'engaged in' interstate commerce." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (emphasis in original) (citing *Thorne v. All Restoration Servs. Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006)). Thus, an employee must allege that he was "directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne*, 448 F.3d at 1266 (citations omitted). Here, the Plaintiff concedes that individual coverage does not apply. Instead, the Plaintiff asserts enterprise coverage based on the Defendants' orders from True World.

An employee may assert "enterprise coverage" if his employer: (1) has employees engaged in interstate commerce or in the production of goods for interstate commerce, or employees who handle, sell, or otherwise work on goods or materials that have been moved in, or produced for, interstate commerce by any person; and (2) has gross volume sales or business of at least $500,000 annually. 29 U.S.C. § 203(s)(1)(A). "To satisfy the first prong, [a] [p]laintiff must demonstrate that, on a regular and recurrent basis, at least two of [the] [d]efendants' employees engaged in commerce or handled goods and material that have been moved in commerce." *Williams v. Signature Pools & Spas, Inc.*, 615 F. Supp. 2d 1374, 1378 *S.D. Fla. 2009) (Ungaro, J.); *see also Polycarpe v. E & S Landscaping Serv., Inc. (Polycarpe I)*, 616 F.3d 1217, 1220 (11th Cir. 2010) ("If an employer ha[s] two or more workers engaged in commerce or the production of goods for commerce, the FLSA coverage extend[s] to all of the enterprise's employees.").

Finally, "[a]lthough it is sufficient that the tools and equipment [used by the defendant] qualify as *either* 'goods' *or* 'materials,' there is an important distinction between the labels." *Polycarpe v. E & S Landscaping Serv., Inc. (Polycarpe II)*, 821 F. Supp. 2d 1302, 1305 (S.D. Fla. 2011) (King, J.). While "goods" that move in interstate commerce are subject to the ultimate-consumer exception, and therefore do not trigger enterprise coverage if they are consumed by the employer, "materials" will trigger enterprise coverage so long as they have moved in interstate commerce. *Valcin v. Am. Sec. Grp., A-1, Inc.*,

No. 15-21331-CIV, 2015 WL 6692269, at *2 (S.D. Fla. Nov. 3, 2015) (Gayles, J.) (citations omitted). In this case, the Defendants contend that the sushi ingredients from True World are "goods" entitled to the ultimate–consumer exception.

Under the FLSA, "goods" are "goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i). The statute does not define "materials." Thus, in *Polycarpe v. E & S Landscaping Serv., Inc.,* 616 F.3d 1217 (11th Cir. 2010), the Eleventh Circuit sought to define "materials" and determine the limits of the ultimate–consumer exception. Because whether an item is a good or material depends on the circumstances, the Eleventh Circuit established a two–part framework. *Id.* at 1225–26.

The first step of the framework is to determine "whether, in the context of its use, the item fits within the ordinary definition of 'materials' under the FLSA." *Id.* The "ordinary definition" or materials according to the Eleventh Circuit is "tools or other articles necessary for doing or making something." *Id.* at 1223–24. For example, the court found that "soup used by a laundry" fit the definition of "materials" because "[o]ne could easily consider the soap in this example as an 'article[] necessary for doing something,' for instance, washing clothes." *Id.* at 1225. As another example, the court explained that

> [d]epending on how they are used, china dinner plates that are produced out of state, for instance, could count as either "goods" or "materials." Where a catering business uses the china plates at a client's banquet, the plates count as part of the "materials" necessary for serving a catered meal. But, where a department store sells the same china plates as stand-alone items, the plates count as "goods" for that retailer.

*Id.* The second inquiry is to establish "whether the item is being used commercially in the employer's business." *Id.* at 1225–26. In order to be a "material" an item "must have a significant connection with the employer's commercial activity," rather than an incidental use. *Id.* Thus, the china plates in the previous example,

> count as "materials" [for the caterer] because they have a significant connection to the business's commercial activity of

catering. But for an accounting firm that uses the same china plates as objects of decoration mounted on its lobby wall, the china plates cannot count as "materials" because the plates have no significant connection to the business's accounting work.

*Id.*

Determining whether an item is a good or a material is a "herculean task," *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1319 (11th Cir. 2011), and no court in this Circuit has ever explicitly found that food ingredients at a restaurant are "materials" under the FLSA; however, considering the *Polycarpe I* court's reasoning, that is the conclusion that this Court must reach.  The foodstuffs ordered from True World are similar to the soap at the laundromat and the china plates used by the caterer—they are materials necessary for the making of something, namely sushi, and there can be no argument that the making of sushi had a significant connection to the employer's commercial activity of serving food.  *Cf Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343, 1348–61 (S.D. Fla. 2009) (Torres, Mag. J.) (distinguishing, before *Polycarpe I*, between goods and materials and denying summary judgment because restaurant employees sold food products that originated out of state); *Si v. CSM Inv. Corp.*, 2007 WL 1518350, at *4 (N.D. Cal. May 22, 2007) (denying motion to dismiss because the plaintiff alleged that the restaurant's ingredients originated from outside the state).  Further, in creating the two–part framework, the Eleventh Circuit quoted an opinion letter by the Department of Labor which stated that the "*coffee served*, cleaning supplies utilized, cooking equipment (ranges[,] fryers, grills) operated, etc." would subject a fast food retailer to the FLSA.  *Polycarpe I,* 616 F.3d at 1225 (emphasis added).  The Eleventh Circuit found that "[the] Agency's views seem in accord with our understanding of the handling clause . . . ," and recognized that, "where a business provides a service using an item as part of its 'commercial operations,' Congress intended for those kinds of items to be viewed as 'materials.'"  *Id*.  Accordingly, the Court denies the Defendants' motion for summary judgment based on the argument that the restaurant only ordered "goods" from True World.

The Court also notes that even if the ingredients ordered from True World were "goods," the Defendants have only made a conclusory assertion that they were the ultimate–consumer of the ingredients.  These ingredients however, differ greatly from, for example, the gasoline used by a garbage removal service.  *See Dunlop v. Indus. Amer. Corp.,* 516 F.2d 498, 499–500 (11th Cir. 1975) (holding that garbage removal service was the ultimate consumer of gasoline).  Here, the Defendants took the ingredients, made them

into a sushi dish, which was then passed on, paid for, and consumed by the restaurant's customers. *Cf. Brennan v. Dillon*, 483 F.2d 1334, 1336–39 (10th Cir. 1973) (determining that the tenants of a property rather than the owner were the ultimate consumer of paint, light bulbs, and other supplies); *Hodgson v. Rivermont Corp.*, 1973 WL 1177, at *3 (M.D. Fla. Feb. 26, 1973) ("Certainly the defendant cannot be described as the "ultimate consumer" of the furniture, appliances, light bulbs and other materials and supplies which, admittedly, are not only required by the lease agreements but are furnished for the benefit and use of the tenants.").

Simply because the Defendants' argument for summary judgment on this issue failed, does not necessarily mean that the Court should grant the Plaintiff's cross motion on FLSA coverage. The Defendants argue that, even if the foodstuffs are "materials, it is unclear that the materials crossed state lines, and there is no evidence that two employees handled the ingredients regularly. Contrary to the Defendants' conclusory assertions that it is possible that all of their ingredients were raised via Florida aquaculture, the True World Records clearly show that the majority of the products ordered by the Defendants crossed state lines. (*See* Exhibit A to Conrado Declaration, ECF No. 29–5 at 2–6 (listing the source of the products the Defendants' ordered, including Rhode Island, Washington, California, Boston, Japan, North Carolina, and Pennsylvania)).

Moreover, it is clear that at least two employees handled the ingredients regularly. The Defendants concede that the Plaintiff and Karla Yasmin Santiago prepared sushi for the restaurant. In an affidavit, Iwasaki asserts that the restaurant rarely used the types of fish allegedly from Japan (e.g. grouper, rock porgy, flying fish, seabream, bonio, and alfonsino). (*See* ECF No. 32–1). This claim, however, is insufficient to defeat the Plaintiff's motion for summary judgement on FLSA coverage. *See Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) ("[A] mere 'scintilla' of evidence" supporting a party opposing summary judgment "will not suffice; there must be enough of a showing that the jury could reasonably find for that party."). The Plaintiff attached over 180 pages of True World invoices, which show that the Defendants ordered foodstuffs regularly. For example, the Defendants made five orders from True World in January 2014 alone. (*See* ECF No. 29–6 at 1–8). Even crediting Iwasaki statement that the restaurant rarely used the special fish products from Japan, the Defendants ignore the many other types of fish and the dry products ordered from True World which originated from outside Florida. For example, four of the five orders in January 2014 included monkfish liver from Massachusetts and Pacific oysters from Washington. (*See* ECF No. 29–5 at 2–3; ECF No. 29–6 at 1–8).

In a final attempt to avoid enterprise coverage, the Defendants argue in their opposition to the Plaintiff's cross motion that the application of the FLSA "to every single business in America that exceeds $500,000 in gross annual revenue" exceeds Congress's power under the Commerce Clause. (ECF No. 33 at 14). The Eleventh Circuit, however, rejected a similar argument in *Polycarpe I*. *See* 616 F.3d at 1227 ("[C]ontrary to some of Plaintiffs' arguments, we believe that the ordinary meaning of "handling, selling, or otherwise working on" is not so expansive as to be limitless; not every employer that meets the $500,000 sales threshold must be subject to the FLSA."). Therefore, because the foodstuffs ordered are materials and a reasonable jury could only conclude that the ingredients used by the Defendants crossed state lines and were regularly and recurrently handled by two employees, the Court must grant summary judgment for the Plaintiff on the issue of FLSA enterprise coverage.

### C.   Iwasaki's Individual Liability

Both parties also moved for summary judgment on the issue of whether Iwasaki can be held individually liable for the alleged FLSA violations. Specifically, the parties dispute whether Iwasaki is an "employer" under the FLSA.

"An FLSA plaintiff may seek relief from multiple employers, as the statute 'contemplates that there may be several simultaneous employers who are responsible for compliance with the FLSA.'" *Mendoza v. Discount C.V. Joint Rack & Pinion Rebuiling, Inc.*, 101 F. Supp. 3d 1282, 1290 (S.D. Fla. 2015) (Goodman, Mag. J) (quoting *Kendrick v. Eagle Int'l Group, LLC*, 2009 WL 3855227, at *3 (S.D. Fla. Nov. 17, 2009) (Marra, J.)). The FLSA defines "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'" *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)). Therefore, a "corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). "Operational control means management of day-to-day business functions such as employee compensation, 'direct responsibility for the supervision' of employees, or general operations." *Baltzley v. Berkley Grp., Inc.*, 2010 WL 3505104, at *2 (S.D. Fla. Sept. 3, 2010) (Altonaga, J.) (quoting *Patel*, 803 F.2d at 637–38). Under this analysis, courts have found that "even a co-owner's occasional control of the day-to-day business operations or employee supervision is sufficient to bring the co-owner

within the FLSA definition of an employer." *Id.*; *see also Olivas v. A Little Havana Check Cash, Inc.,* 324 F. App'x 839, 845–46 (11th Cir. 2009).

During his deposition, Iwasaki stated that his main responsibility is cooking, while his partner, Hayakaw, managed the restaurant's finances. (Iwasaki Dep. 7:17–8:7, ECF No. 29–1). However, Iwasaki admitted that he helps manage the restaurant, sometimes interviewed employees, helped set the schedules for the kitchen staff, and paid some of the restaurant's bills. (*See id.* at 7:17–8:7, 9:16–17, 10:5–11:17, 64:17–23). Iwasaki also stated that he was involved in giving the Plaintiff a small raise and was responsible for determining the amount of break–time employees received. (*See id.* at 56:16–57:14, 59:6–9). Even accepting Iwasaki's assertion that his main responsibility was food preparation, his admissions about his involvement in the day–to–day running of the restaurant are sufficient to establish that he is an FLSA "employer" as a matter of law. Accordingly, the Court grants the Plaintiff's motion for summary judgment on this issue and denies the Defendants' motion.

### D. Damages

The Defendants next argue that they are entitled to summary judgment because the Plaintiff cannot prove what, if any, overtime he is owed. Under the FLSA, an employee "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946). "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Id.* However, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," a relaxed burden-shifting scheme applies. *Id.* Under this scheme, an employee carries his burden to prove damages if (a) "he proves that he has in fact performed work for which he was improperly compensated"; and (b) "he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id; see also Morgan v. Family Dollar Stores*, Inc., 551 F.3d 1233, 1278–79 (11th Cir. 2008). The burden then shifts to the employer to produce "evidence of the precise amount of work performed" or to negate "the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Anderson,* 328 U.S. at 688; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306, 1315–16 (11th Cir. 2007).

In this case, the Plaintiff claims unpaid overtime for a three year period. During discovery, the Defendants produced time cards for ninety–nine weeks of

the Plaintiff's employment, leaving forty–eight weeks unaccounted for. Moreover, the time cards only include the hours the Plaintiff worked and have no information about how the Plaintiff was compensated. *See Allen,* 495 F.3d at 1315 ("It is the employer's duty to keep records of the *employee's wages*, hours, and other conditions and practices of employment.") (emphasis added). Because the Defendants' records are inadequate, the Plaintiff is entitled to *Anderson's* relaxed burden–shifting scheme.

During his deposition, Iwasaki stated that the Plaintiff was paid $500 to $600 a week. (Iwasaki Dep. 32:20–25). He also stated that the Plaintiff was paid $10 an hour for his regular time and $15 for any overtime. (*Id.* 43:19–25). The time cards provided by the Defendants show that the Plaintiff regularly worked more than forty hours per week, usually approximately fifty–seven hours. (*See* ECF No. 26–8). Using the salary provided by Iwasaki, the Plaintiff was owed more than $500 to $600 a week for his ordinary hours worked. Therefore, the Plaintiff has carried his burden to establish that he performed work for which he was improperly compensated. *See Solano,* 728 F. Supp. 2d at 1343–44.

Although the Plaintiff could not answer questions during his deposition about exact dates for which he was owed overtime and what amount of money he would be willing to accept, this is not fatal to his claim. *See id.* (finding that it did not matter that the plaintiff "was unable to articulate what his claim is or what he is owed."). The Plaintiff contends that he worked approximately sixty hours a week. (*See* ECF No. 1). This estimation is not grossly disproportionate to the times shown on the available time cards. Moreover, whether sixty hours a week is a reasonable inference to draw from the evidence is not a determination for the Court, rather "it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence . . . ."*Anderson,* 328 U.S. at 693. "The determination of exactly how many hours Plaintiff was improperly compensated is therefore a question of fact appropriate for a jury." *See Solano,* 728 F. Supp. 2d at 1344.

### E.   Statute of Limitations

Next, the Defendants argue that they are entitled to summary judgment because the Plaintiff's claims violate the statute of limitations. Under the FLSA, the statute of limitations "is ordinarily two years; however, a cause of action arising out of a willful violation of the FLSA may be commenced within three years after the cause of action accrued." *Brown v. Gulf Coast Jewish Family Servs., Inc.,* 2011 WL 3957771, at *8–9 (M.D. Fla. Aug. 9, 2011). At this time, the Court need not determine if the Defendants violation were "willful" because the Defendants only argue that, even if the extended statute of

limitations applies, the Plaintiff has exceeded that timeframe.  (*See* ECF No. 27 at 20 ("Here, the Plaintiff has pled far beyond a 3–year statute of limitations in the Complaint's *ad damnum* clause.")).

The Plaintiff filed this suit on August 3, 2015.  The Plaintiff was employed by the Defendants from August 2012 until June 2015.  Based on a three–year statute of limitations, the Plaintiff can only claim unpaid overtime from August 3, 2012 until the end of his employment.  The Plaintiff asserts that he does not intend to seek damages for the two days of employment outside of the limitations period, making the Defendants' argument moot.  (*See* ECF No. 41 at 16).

### F. Liquidated Damages

Finally, the Defendants argue that the Court should grant summary judgment in their favor because the Complaint seeks both pre–judgment interest and liquidated damages.  The FLSA provides that "[a]ny employer who violates the . . . [FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages ... and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  However, liquidated damages are not available if an employer "shows to the satisfaction of the court that the act or omission giving rise to [the FLSA] action [for unpaid wages] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [the FLSA]."  29 U.S.C. § 260.  Awarding liquidated damages is within the sound discretion of the Court.  *Id.*

Although a FLSA plaintiff may not recover both liquidated damages and prejudgment interest, *see Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987), it is inappropriate for the Court the grant summary judgment on the issue at this time.  First, the Plaintiff asserts that he "does not intend to claim both liquidated damages and interest;" instead, the Plaintiff will seek liquidated damages at the end of trial and will only seek interest if the Court denies the request.  (*See* ECF No. 41 at 17).  It is well settled that a Complaint may seek remedies in the alternative.  *Davis v. Grp. Homes for Children, Inc.*, 2009 WL 2905767 at * 6 (M.D. Ala. Sept. 8, 2009) (construing a plaintiff's request for liquidated damages and prejudgment interest).  Moreover, it is the employer who bears the burden of establishing that liquidated damages are not warranted.

### 4. Conclusion.

For the reasons stated above, the Court **denies** the Defendants' Motion for Summary Judgment and Involuntary Dismissal. (ECF No. 17).  Conversely, because a reasonable jury could only conclude that the Plaintiff is covered by

the FLSA and that Iwasaki is the Plaintiff's employer within the meaning of the statute, the Court **grants** the Plaintiff's Partial Motion for Summary Judgment (ECF No. 28).

**Done and ordered** in chambers, at Miami, Florida on April 27, 2016.

_____
Robert N. Scola, Jr.
United States District Judge