UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-22882-CIV-SCOLA

DANIEL VALDERRABANO TORRES, and
Others similarly situated under 29 U.S.C. 216(b),

    Plaintiff,
v.

ROCK & RIVER FOOD, INC. d/b/a Marumi
Sushi, and TERUHIKO IWASAKI,

    Defendants.
_____/

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A NEW TRIAL

Defendants, Rock & River Food, Inc. and Teruhiko Iwasaki ("Defendants"), through their undersigned attorneys, file this Response, and state as follows:

### BACKGROUND

This is a Fair Labor Standards Act case, 29 U.S.C. § 201 *et seq.* This is a case that largely (at least for trial purposes) boiled down to a swearing match between the Plaintiff and the Defendants with respect to whether or not the Plaintiff was paid time and one-half for all hours that he worked over 40 in a workweek—the Plaintiff claimed he was not paid overtime, but the Defendants testified that he was always paid his overtime pay (both owners and a third employee called by the Plaintiff who testified that he had a similar job as the Plaintiff and was paid in cash, but was always paid his overtime). The case went to a jury trial on August 23 and 24, 2016, and the jury resolved that dispute in favor of the Defendants, namely, by finding that the Plaintiff did not work any overtime hours for which he was not properly paid his overtime pay. [D.E. 113] (which is the Verdict Form, stating "Do you find by a preponderance of the evidence that the Defendants failed to pay the Plaintiff all overtime pay that was required to be paid by law?", to which the jury answered "No"). The Plaintiff now moves for a new trial, primarily claiming that a new trial should be ordered on the ground that the great weight of the evidence at trial was that the Defendants do not pay overtime. In sum, the great weight of the evidence at trial was that the Plaintiff was always paid his overtime, since 1) the defense witnesses testified that he was, 2) Plaintiff knew he was entitled to overtime pay under the FLSA (though he denied this at trial and

was impeached with his prior inconsistent testimony, which impeachment evidence became substantive evidence in the case because the Court ruled and instructed the jury that all impeachment evidence via interrogatories or deposition testimony was to be considered as substantive evidence); 3) Plaintiff worked for three years for the Defendants yet never once complained or spoke up about not being paid overtime (though through direct examination testimony Plaintiff denied this and claimed that had complained on more than one occasion about not receiving overtime pay and the Defendants told him that they do not pay overtime, however, Plaintiff was impeached with his prior deposition testimony and interrogatory answers in which he plainly previously testified that he never complained about not being paid overtime); and 4) Plaintiff admitted in his deposition (which was substantive evidence at trial) that he could not say what he was suing for, could not calculate his damages, never tried to, responded to no discovery (although answers to interrogatories purport to be signed and answered by him), and he had no idea what was going to ask the jury to award him.  In sum, significant evidence was introduced at trial from which a jury could base its conclusion on that Plaintiff has not worked overtime for which he was not paid.

The Plaintiff's Motion, which is verbose and tautological, essentially sets forth the following arguments:  1) the great weight of the evidence, as exhibited through the testimony of the Defendants' themselves, was that the Plaintiff is owed at least some overtime (largely on the theory that Defendant Iwasaki stated that when he paid the Plaintiff he thought the most he paid Plaintiff was $550.00 in any one week) and certain language in the summary judgment order requires that conclusion; 2) the Plaintiff's proposed jury instruction to the effect that "[a]n individual employee's rights for overtime compensation under the Fair Labor Standards Act cannot be abridged by contract or otherwise waived by the employee" was erroneously not given which prejudiced the Plaintiff, particularly coupled with the fact that the Defendants impeached the Plaintiff with the fact that he previously filed an overtime lawsuit using the same law firm that brought the instant suit (which Plaintiff claims was a violation of the Court's Order on Motions in Limine), thereby resulting in the jury believing that Plaintiff somehow waived his rights to overtime which forced a defense verdict; 3) the Defendants improperly and prejudicially argued that because the Plaintiff previously filed a FLSA suit his claims were estopped in this case; 4) the Defendants improperly turned the trial into a referendum on Plaintiff's law firm and the motivations (fee aspects) behind FLSA litigation as opposed to about whether Plaintiff was

entitled to overtime and, if so, how much. These arguments, none of which has any merit, will be addressed in turn.

Initially, however, the Defendants will set forth the pertinent pretrial orders to which Plaintiff refers. In the Order on the Motions for Summary Judgment [D.E. 59], the Court did state that "During his deposition, Iwasaki stated that the Plaintiff was paid $500 to $600 a week. (Iwasaki Dep. 32; 20-25). He also stated that the Plaintiff was paid $10 an hour for his regular time and $15 for any overtime. . . . [The Court then concluded that u]sing the salary provided by Iwasaki [though Iwasaki did not testimony that Plaintiff was paid a salary but rather was paid hourly], the Plaintiff was owed more than $500 to $600 a week for his ordinary hours." [D.E. 59 at 12]. The Court actually does not accurately describe Mr. Iwasaki's testimony, and the Plaintiff overemphasized the Court's conclusion, apparently, in his trial preparation and at trial. Iwasaki actually stated when asked how much Plaintiff was paid that it was "$500, $600. About." (Iwasaki Dep. at 32;21-22). The key word is "[a]bout." Another key fact is that Iwasaki only paid the Plaintiff on approximately 2 occasions in 3 years, as Mr. Hayakawa paid him all of the other times each week (approximately 148).

The time cards show that but for one week in which Plaintiff worked 38.25 hours, the least amount of hours that Plaintiff worked were 47.5 and the most that he worked were 58.5. Iwasaki testified that he only paid the Plaintiff on approximately two occasions, and that Mr. Hayakawa paid him all of the other times—each week or 148 times. If Plaintiff worked 47.5, his pay at $10.00/hr for that week was exactly $512.50, while Plaintiff's pay if he worked 58.5 hours was exactly $677.50. The range of "$500, $600 about", is $512.50 - $677.50. Iwasaki did not state that Plaintiff's pay was always $500.00/wk or $600.00/wk, or that Plaintiff's pay never exceeded $600.00/wk. Thus, there is no discrepancy in Iwasaki's deposition testimony and trial testimony. Also, Iwasaki testified at trial that he was not sure if when he paid Plaintiff whether it was one of the weeks where Plaintiff worked around 48 hours or one of the weeks where he worked around 58 hours. While Plaintiff in the instant Motion reiterates the incessant refrain that Plaintiff usually worked 57 hours, while disregarding the time cards that show many, many weeks Plaintiff only worked approximately 48 hours, in truth, there are close to as many weeks that Plaintiff worked approximately 48 hours as 57 hours. Therefore, nothing whatsoever in Iwasaki's testimony supports Plaintiff's claim that the great weight of the evidence at trial was, which is mathematically irrefutable, that Plaintiff was not paid for at least some overtime

3

whenever he worked 57-58 hours, as opposed to when he worked 47-48 hours. *See, e.g., Williams v. City of Valdosta,* 689 F.2d 964, 973 (11th Cir. 1982) ("A trial judge may grant a motion for a new trial if he believes the verdict rendered by the jury was contrary to the great weight of the evidence."). In fact, had Iwasaki paid Plaintiff on two weeks in which he worked 47-48 hours, the approximately $550.00/hr is what Plaintiff would have been paid (it comes out to approximately $30.00 less), or had Iwasaki paid Plaintiff for 1 week he worked 47-48 and one week he worked 57-58, the average is very close to $550.00. Rather, the Plaintiff, without identifying or discussing with specificity any portion of the record that indicates the jury improperly determined whether overtime hours worked by the Plaintiff were unpaid, arrives at his assumption based on his own interpretation of the evidence. Such assumption is problematic because a detailed analysis of the evidence is required, as Defendants have done here, which requires denial of a motion for new trial. *Hurtado v. Raly Dev., Inc.*, 2013 WL 1786524, at *4 (S.D. Fla.) (denying defendant's motion for new trial in FLSA case when the evidence was disputed regarding how much overtime was worked, because the jury was free to interpret that evidence in the manner in which it did) (citing *Wai v. Fed. Exp. Corp.,* 461 F. App'x 876, 885–86 (11th Cir. 2012) (engaging in a comprehensive analysis of the evidence supporting plaintiff's FLSA claim and determining the totality of the evidence did not provide a basis for the jury's $225,000 award, but rather supported past losses of only between $45,000 and $50,000)). Here, a fatal flaw in Plaintiff's argument is that Iwasaki was only involved in paying the Plaintiff on 2 occasions, and Plaintiff did not establish that on those two occasions Plaintiff worked 57-58 hours as opposed to 47-48 or one of each. As stated above, without this distinction, Plaintiff cannot show that Iwasaki's testimony does not support the verdict. Further, the testimony that Plaintiff was paid all of his overtime supports the jury verdict for Defendants, such that Plaintiff cannot demonstrate the verdict was against the great weight of the evidence.

The testimony also needs to be viewed in the context of Plaintiff's testimony that he was never paid more than approximately $610.00-$615.00 in any one week, but actually was paid that much typically. (*Motion* at 13 n.6). This is telling because there are no time sheets that show that Plaintiff ever worked more than 58.5 hours per week (and the testimony at trial was that any missing time sheets would have similar amounts of time contained on them as those admitted into evidence, because the 47-48 hours worked as compared with the 57-58 hours was defined by whether Plaintiff worked 5 or 6 days that week), and was only paid $10.00/hr.; thus, *if*

*he was not paid overtime*, he would never have been paid over $600.00/wk., and thus Plaintiff is conceding that he was paid overtime, at least some overtime, though all during the litigation of this case, including at trial, Plaintiff argued he was never paid any overtime. The Court should have concerns that gamesmanship is occurring here. Simply put, the great weight of the evidence was *not* that Plaintiff was not paid all overtime (because only Plaintiff said that), not when compared with *Iwasaki and Hayakawa who both said that Plaintiff was paid all of his overtime* and Mr. Casados, who had a similar though not exactly the same position as Plaintiff, also testified that he was paid overtime, even though he was paid in cash, too, like Plaintiff. *Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987). Conversely, the great weight of the evidence is that Plaintiff was paid overtime for all hours worked, as were all the employees who worked for Defendants. Just because Plaintiff testified that he was never paid more than $610.00-$615.00 in any one week does not have to be accepted by the jury, because as the Court properly instructed, a jury must "decide whether [it] believe[s] what each witness had to say, and how important that testimony was. In making that decision [the jury] may believe or disbelieve any witness, *in whole or in part."* (emphasis added). Thus, even assuming that Iwasaki gave inconsistent testimony (for example if he testified in a manner that supported the notion that Plaintiff was not paid all of his overtime but also testified in a manner that supported the opposite, same does not foreclose the jury's decision to discount the accuracy of his testimony and other evidence (from Hayakawa and Casados) that can be construed to attest to the fact that Plaintiff was paid overtime and also the jury could have decided to disbelieve Plaintiff's testimony that he was not paid overtime, particularly when he said he was not paid anyway but said he was paid over $600.00 per week, which suggests that he was paid for at least some overtime because he never worked more than 60 hours per week in any one week. *Hurtado v. Raly Dev., Inc.*, 2013 WL 1786524, at *4 (S.D. Fla.).

Of course, the elephant in the room in this case was the sheer number of times that the Plaintiff was impeached on important, material aspects of the case, which impeachment properly because substantive evidence in the case once the Court ruled all deposition testimony and interrogatories from the Plaintiff would constitute substantive evidence to avoid repetition of reading into evidence the deposition designations from Plaintiff's deposition, which were read in

when he was impeached; same with interrogatory answers.[1] Time after time the Plaintiff was impeached, such as with whether the Plaintiff ever complained about not being paid overtime, whether he knew of his rights under the FLSA, whether he could calculate his damages, what he was even suing for, etc.  He was impeached with his own prior inconsistent statements—largely his deposition and interrogatory answers.  The Court should share the same concerns that Judge Williams recently expressed in *Bonet v. New Courier, Inc.*, -- F. Supp. 3d --, 2016 WL 4523844 (S.D. Fla., Aug. 25, 2016) (excoriating this same plaintiff's counsel for putting a witness on the stand who was clearly testifying falsely and subverting justice which resulted in the grant of a Rule 41 involuntary dismissal with prejudice during the trial, though it is unclear that that plaintiff was impeached anywhere near the times that Plaintiff in this case was; the plaintiff testified eerily similar to the Plaintiff here with vague answers, answers that are incredulous, and answers designed to hinder the search for the truth).  Whether the Court does or not, the point is that a jury must "decide whether [it] believe[s] what each witness had to say, and how important that testimony was. In making that decision [the jury] may believe or disbelieve any witness, *in whole or in part."* (emphasis added).  The jury here was free to disbelieve Plaintiff in whole or in part, and also free to disbelieve any testimony that Iwasaki gave regarding the amount of pay Plaintiff was paid in the two weeks that he paid him.  Moreover, the Court should take a dim view of Plaintiff attempting to establish the amount of pay that Plaintiff was provided each week through Iwasaki who only did it twice rather than through Hayakawa who week in and week out paid him.  While the Plaintiff criticizes Hayakawa's alleged lack of memory regarding what

---

[1] The general rule is that the pretrial deposition of a witness on the stand is not admissible as substantive evidence. The pretrial statement is usable on cross-examination, for purposes of impeachment, to present earlier, contradictory statements, but it is not substantive evidence of the truth of the extra-judicial statements.  The pretrial deposition of a party, however, though the party is a witness at the trial, stands upon a different footing, as Rule 32(a) of the Federal Rules of Civil Procedure specifically provides that the "deposition of a party * * * may be used by an adverse party for any purpose." It has been consistently held that the Rule permits a party to introduce, as part of his substantive proof, the deposition of his adversary, and it is quite immaterial that the adversary is available to testify at the trial or has testified there.  Thus applied, the Rule is a restatement of the long recognized rule of evidence that statements of a party which are inconsistent with his claim in litigation are substantively admissible against him.  It follows that it would have been error for the Court not to allow Plaintiff's deposition testimony to have been received in evidence when it was offered (either to be re-read or the impeachment to be considered substantive evidence), and the admissions it contained were thus properly considered as substantive evidence in the case when the jury performed the process of fact finding.

6

amount of money Plaintiff was paid, he had not paid Plaintiff in over one and one-half years by the time of trial and he clearly stated that Plaintiff was always paid time and one half for all hours worked over 40 in a workweek, and the Defendants owed Plaintiff nothing.  The jury was free to believe this testimony, and not one defense witness was ever impeached.  The foregoing should require the conclusion that the instant Motion be denied.

The other issue with a pretrial ruling to which the Plaintiff complains is the Order on the Motions in Limine.  The Plaintiff mistakenly characterizes that Order as having excluded *in limine* any mention of the prior suit, but that Order does not so hold, but rather holds that the Court will reserve ruling on the matter until the time of trial.  The Order, in pertinent part, states as follows:

> In approximately 2011, the Plaintiff sued another restaurant for unpaid overtime under the FLSA.  (See ECF No. 48 at 8.)  That case ended in a settlement.  (Id.)  The Plaintiff's current counsel also represented him in the past case. (Id.)  The Plaintiff argued that any reference to this case is irrelevant and unfairly prejudicial, asserting that "the fact that someone has been improperly paid in the past, has no bearing on whether they were properly paid now." (ECF No. 40 at 4.)  Instead, the Plaintiff contended, that the Defendants are attempting to use this information to prejudice the jury by depicting the Plaintiff as a serial plaintiff.
>
> The Plaintiff is correct that the Defendants have argued that the Plaintiff is a "serial plaintiff" in the past, namely in their motion for summary judgment.  (See ECF No. 27 at 14–15.)  At the hearing, however, the Defendants presented additional grounds for introducing the past lawsuit.  *The Defendants argued that the past suit shows that the Defendant knew of his right to overtime, yet never complained to the Defendants or insisted on overtime pay.  This information, combined with witness testimony that other employees were paid overtime, could lead the jury to conclude that the Defendant was actually paid overtime.*
>
> Any evidence, tending to make the existence of any fact of consequence more probable or less probable, is relevant and admissible, except as otherwise provided by the Federal Rules of Evidence.  Fed. R. Evid. 401, 402.  Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403.  *The Court recognizes that the information about the past suit may have probative value in some instances, for example, for the purposes of impeachment if the Plaintiff tries to say that he did not complain or file suit for three years because he did not know his rights.*  It is impossible for the Court to rule on the motion at this juncture

> without knowing the exact context and reason for the introduction of the information. Accordingly, the Court defers ruling on the motion until trial.

[D.E. 73 at 2] (emphasis added). This ruling simply acknowledged two things: 1) that the fact Plaintiff knew of his rights, particularly when coupled with witness testimony that Plaintiff was paid his overtime, could lead a jury to find that the Plaintiff was actually paid overtime (who would work for 3 years knowing that they were being paid improperly under the law) and thus is relevant under Rules 401 and 402, because he never complained; and 2) if Plaintiff were to deny having knowledge of his rights under the FLSA, the fact that Plaintiff brought another suit before for overtime unequivocally impeaches the Plaintiff's testimony in that regard. What happened at trial was both 1 and 2. Numerous witnesses testified that Plaintiff was paid his overtime and other employees (including those paid in cash) were paid overtime, and they testified that Plaintiff never complained to them about not being paid overtime. Plaintiff denied that he knew of his rights under the overtime laws (despite just receiving thousands of dollars in a settlement for overtime brought against his most recent employer—another Japanese-themed restaurant— by his current counsel, and the Court found that Plaintiff's testimony opened the door to impeachment with his prior deposition testimony in which he admitted he brought the previous suit which became substantive evidence like all other deposition testimony of the Plaintiff read in at trial—the suit itself was not admitted into evidence, although the Plaintiff suggests that. The evidence of the prior suit was not offered for Rule 401 or 402 purposes, the suit itself was not admitted, but rather Plaintiff's prior inconsistent statements in which he acknowledged he brought a similar suit for overtime recently was used to impeach Plaintiff on this material, germane issue.

As a final initial matter, the Plaintiff requests the Court's guidance as to whether he should order the trial transcript and supplement his motion with actual excerpts from it, rather than going by his memory. This is not really something that the Court should weigh in on, as it is a request for litigation advice. The Defendants object to any assistance or advocacy in support of the Plaintiff from the Court, as the Court is supposed to call balls and strikes, that is, umpire the litigation, not be a participant. The Plaintiff, as the moving party, bears the burden to persuade the Court that a new trial is warranted. For whatever reason, Plaintiff felt that it could do that without ordering the trial transcript. It is too late to supplement the Motion, because this Response has been filed. Defendants object to the Plaintiff now running out and getting the trial

transcript to use in a reply to sandbag Defendants. To the extent Plaintiffs imply they should get an extension of time to file a refiled motion with transcript, district courts have no authority to extend the time to file post-trial motions from the 28-day deadline in Rules 50 and 59.

## **MEMORANDUM OF LAW**

### I. **The Legal Standard Governing Motions for New Trial**

Motions for a new trial are governed by Federal Rule of Civil Procedure 59(a), and may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). Although a comprehensive list of the grounds for granting a new trial is elusive, the Supreme Court has held that a motion for a new trial may rest on the fact that "the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940). "[W]hen considering a motion for new trial, the trial judge may weigh the evidence, but it is proper to grant the motion only if the verdict is against the great, not just the greater, weight of the evidence." *Ard v. Sw. Forest Indus.,* 849 F.2d 517, 520 (11th Cir. 1988) (citing *Watts v. Great Atl. & Pac. Tea Co., Inc.,* 842 F.2d 307, 310 (11th Cir. 1988)). *See also Deas v. PACCAR, Inc.,* 775 F.2d 1498, 1504 (11th Cir. 1985) ("New trials granted because (1) a jury verdict is against the weight of the evidence [are] sharply distinguished from (2) new trials ordered for other reasons: for example, evidence improperly admitted, prejudicial statements by counsel, an improper charge to the jury or newly discovered evidence." (quoting *O'Neil v. W.R. Grace & Co.,* 410 F.2d 908, 914 (5th Cir. 1969)).

When ruling on a new trial motion, the district court is not to "substitute [its] own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." *Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987). For this reason, motions for new trial are disfavored. *Guidance Endodontics, L.L.C. v. Dentsply, Int'l, Inc.*, -- F. Supp. 2d --, 2010 WL 2985851 (D. N.M. 2010).

### II. **The Great Weight Of The Evidence, As Exhibited Through The Testimony Of The Defendants' Themselves, Was Not That The Plaintiff Is Owed At Least Some Overtime (Largely On The Theory That Defendant Iwasaki Stated That When He Paid The Plaintiff He Thought The Most He Paid Plaintiff Was $550.00 In Any One Week) And The Summary Judgment Order Does Not Require That Conclusion.**

This issue was painstakingly discussed above in the Background section, and those arguments are incorporated herein. First, the great weight of the evidence is not that the Plaintiff is owed some overtime (particularly not when the Plaintiff testified that he was not paid *any* overtime), but rather that Plaintiff was paid his overtime, like every other employee at the restaurant, given that three witnesses plainly testified to that. Second, the wording in the summary judgment Order is what it is. That interpretation of the evidence did not make it into the trial. It was unfortunate that the conclusion was reached in that Order that Iwasaki's testimony meant that Plaintiff was only paid *between* $500 and $600 each week, rather than paid *approximately* $500.00 - $600.00/wk, as he stated. As set forth above, Iwasaki only gave money to Plaintiff twice, and the testimony was "$500, $600. About." The "about" language is the operative term, as about obviously means approximately. The range of "$500, $600 about", is $512.50 - $677.50, which is the range that Plaintiff was paid. At a minimum, a jury could so find that about $500.00 - $600.00 is $512.50 - $677.50. Thus, there is no discrepancy in Iwasaki's deposition testimony and trial testimony. At trial Iwasaki merely thought Plaintiff was paid about $550.00/wk which is no different than what he said in this deposition, and is supported mathematically if Plaintiff worked approximately 48-50 hours those two weeks Iwasaki paid him or if in one week it was 47-48 and the other week it was 57-58 and he was taking an average. Plaintiff did not establish at trial that the two weeks Iwasaki paid Plaintiff, Plaintiff worked 57-58 hours. Thus, there is no discrepancy in the testimony, and nothing upon which the jury was required to find a certain way. Iwasaki and Hayakawa both plainly testified that Plaintiff was paid time and one-half for all hours worked over 40 in a workweek. Notably, the summary judgment order does not hold that Plaintiff is entitled as a matter of law to overtime with the amount to be established at trial, nor did Plaintiff move for Rule 50 with respect to this issue. Thus, whether Plaintiff was paid overtime or not in this case was an issue that the jury needed to decide, and did decide (it decided all overtime that needed to be paid was), and in no way can it be said that the great weight of the evidence at trial regarding whether overtime was paid was in Plaintiff's favor, with no other witness to substantiate his claims the great weight of the evidence was against him.

What is telling here is that the Defendants dispositive motion (alternatively under Rule 56 and 41) foretold just how bad this trial would be with a Plaintiff that lacked credibility like this

one, given what he said at his deposition, and the level of impeachment of the Plaintiff was indicative of that. The Plaintiff's Motion is simply completely without merit.

>   III.   **The Plaintiff's Proposed Jury Instruction To The Effect That "An Individual Employee's Rights For Overtime Compensation Under The Fair Labor Standards Act Cannot Be Abridged By Contract Or Otherwise Waived By The Employee" Was Not Erroneously Not Given And Did Not Prejudice The Plaintiff, And Did Not Notwithstanding That It Was Coupled With The Defendant's Impeachment Of The Plaintiff With The Fact That He Previously Filed An Overtime Lawsuit Using The Same Law Firm That Brought The Instant Suit (Which Plaintiff Claims Was A Violation Of The Court's Order On Motions In Limine").**

The Plaintiff claims that he proposed a jury instruction regarding that overtime rights cannot be abridged by contract or otherwise waived by the employee, and that the instruction was based on the *Barrentine* case (which Plaintiff miscites throughout his Motion as the *Berrentine* case). (*Motion* at 1-2, 14-15). There was no need for this instruction, and there certainly was not error in the Court's not giving it. Initially, contrary to the Plaintiff's representation, *see id.* at 2 (stating that the failure of the instruction to be given "became a critical issue in the case when the Defendants argued that Plaintiff, having filed a former FLSA lawsuit, constructively waived the instant FLSA lawsuit") and *id.* at 15 ("Defendant argued that the prior suit was a bar to recovery in the current suit"), Defendants did not argue at trial, and the failure to give the requested instruction does not provide a mechanism for Defendants to have argued, that because Plaintiff sued before, he is estopped from recovering overtime claims in this case. Defendants did argue that at the summary judgment stage, and they did preserve the issue in the Joint Pretrial Stipulation, submitted jury instructions on it, and a verdict form containing the defense, but the Court refused to provide an instruction as to it or include it on the verdict form over Defendants' objection. In short, the Court *sua sponte* granted summary judgment on this defense in Plaintiff's favor, which is error. See *infra*, § IV. Because it was unclear to the Defendants whether the Court was going to let the estoppel/waiver go to the jury Defendants *never argued* that a defense verdict should result because Plaintiff brought a previous suit and failed to complain about his pay to Defendants. It would have done no good without a jury instruction on same. Thus, Plaintiff's claim to the contrary is particularly troubling, obviously, there could no error in failing to give the proposed jury instruction when waiver was not argued as a reason for the jury to find for the Defendants. There was no way Defendants were going to

make this defense a part of their case without being assured that the jury would be instructed on it.

In short, the Plaintiff's entire argument in this regard is without merit because the instructions that were given to the jury accurately stated the law, and since they did, the trial judge is given wide discretion as to the style and wording employed. *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996). The *McNely* case noted as follows:

> We apply the same deferential standard of review to a special interrogatory verdict form that we apply to a court's jury instructions. So long as the jury instructions and verdict form 'accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed.' On appeal, we examine whether the jury instructions and verdict form, considered as a whole, were sufficient 'so that the jurors understood the issues and were not misled.' As for the subsidiary issue of whether the jury instructions and verdict form 'accurately reflect the law," we review that *de novo*, as with any other question of law.

*Id.* (citations omitted). The instructions that were given do not fail to accurately reflect the law, and the Plaintiff makes no attempt to even demonstrate same. The omission of this one instruction does not require the conclusion that the instructions as a whole do not accurately reflect the law as the instruction is not even in the Eleventh Circuit Pattern Instructions on FLSA cases which the Court used as its guide. *Pattern Jury Instructions for the Eleventh Circuit*, § 4-14 (2013 ed.).

The Plaintiff basically relies on the *Barrentine* and *Baker* cases, which have been discussed previously by the Eleventh Circuit. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). The case law regarding waiver cited by Plaintiff is inapt, because of the difference in context between those cases and this case. For example, the case *Lynn's Food Stores* discussed the *general proposition* that generally FLSA claims cannot be settled, abridged by contract, or otherwise waived. That language from *Lynn's Food Stores* has been found to be *obiter dicta*. *Powell v. Carey Int'l, Inc.*, 483 F.Supp.2d 1168, 1177 (S.D. Fla. 2007). It has been found to mean simply that an employer and employee cannot enter into a private agreement to deviate from or nullify the FLSA's overtime provisions (in other words, an employer cannot negotiate or contract away its obligation to pay overtime); it does not mean that an employee cannot waive his entitlement to FLSA rights by his own actions in other contexts. *Id.* In the cases *Lynn's Food Stores* cites for these general propositions (for example

12

*Barrentine*), the employer was making the employees sign a statement "agreeing" that they would work overtime, not be paid overtime, and that they agreed not to sue for overtime, because something similar happened in *Lynn's Food Stores* (the employer because forced employees to accept an entirely low-ball settlement). Such "agreements" were struck down by the Supreme Court in the 1940s, like in *Barrentine*. It is clear that plaintiffs can waive rights under the FLSA, such as 1) by release, *Rakip v. Paradise Awnings Corp.*, 514 Fed. Appx. 917 (11th Cir. 2013) (affirming a finding that the plaintiff released his FLSA claims by signing a workers' compensation settlement agreement that contained a general release), 2) by letting the statute of limitations lapse, by admitting that a violation was not willful, *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005) (holding that FLSA claims can be abandoned); 3) acting in ways that subject those claims to estoppel/waiver via the doctrine on *in pari delicto*, *Neuman v. CTRL Sys., Inc.*, 2009 WL 4730722 (S.D. Fla. 2009) (noting that employee's FLSA claims are subject to estoppel/waiver via the doctrine of *in pari delicto*); and 4) by express agreement with court approval. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11thCir. 1982) (noting that "[i]f a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation"). Accordingly, the Plaintiff's proposed instruction should not have been given to the jury because it is not an accurate statement of the law. Importantly, the Defendants never took the position that they had some agreement with the Plaintiff (express or implied) that required the conclusion that the Plaintiff waived overtime rights (that is, that by agreement the parties agreed that the Plaintiff, someone otherwise entitled to overtime, agreed to waive his rights under the FLSA to overtime). Rather, the Defendants took the position that Plaintiff was paid his overtime and was fabricating his claims, a fact borne out by the evidence, to see this all the Court need do is re-read the dispositive motion now that it has the hindsight of having presided over the trial and it will wonder why this case was ever allowed to go to trial.

  The next issue is that the Plaintiff asserts that the failure to give this instruction coupled with the fact that Plaintiff was impeached when he testified that he did not have knowledge of his overtime rights with his deposition testimony in which he admitted that he had brought suit before under the FLSA for overtime using Mr. Zidell as his attorney, allowed a jury to somehow disregard the jury instructions and come up on its own with the notion that a defense verdict

should be reached on the ground that Plaintiff's prior suit barred his current claim, even though the jury was never so instructed and the Defendants never so argued. Thus, this issue was never properly before the jury and there was no need to instruct the jury on it. *Collins v. Metropolitan Life Ins. Co.*, 729 F. 2d 1402, 1405 (11th Cir. 1984). Even if the Plaintiff could demonstrate that the requested instruction was an accurate statement of the law (he cannot, particularly in the context of this case), and even if the Plaintiff could demonstrate that the issue was properly before the jury (he cannot show that either), the Plaintiff cannot demonstrate a showing of prejudicial harm as a result of the instruction not being given. *Hunt v. Liberty Lobby*, 720 F.2d 631, 647 (11th Cir. 1983).

To be clear, all Defendants argued was that the fact that Plaintiff brought suit before (knew his rights) coupled with his failure to say anything to the Defendants about his pay (that is, complain) suggests that the Plaintiff really was paid his overtime, otherwise he would have said something. That is all that was ever argued on this point. Plaintiff fails to cite to any portion of the transcript that remotely supports his claims to the contrary. Plaintiff does wax hyperbolic stating that "failure to inform the jury that the biasing evidence of a former suit did not waive any rights to recovery in a present suit probably changed the outcome of the case and resulted in the unsupportable jury verdict." (*Motion* at 15). This argument simply is not supported by anything that occurred at the trial, and Plaintiff is unable to support it with any specific citations to the record. The verdict was very supportable, as discussed above in detail. The evidence in the case for the Plaintiff was extremely shaky and uncorroborated, given the extent and number of times Plaintiff was impeached, which impeachment became substantive evidence.

That is why Plaintiff's contention that "Defense Counsel confused Mr. Torres through a series of questions that were designed to manipulate the proceedings to allow for the entry of said excluded evidence" (*Motion* at 3) is so off-base. Of course, the Plaintiff does not cite to or explain these questions, so the Court is left up to its memory. There were no questions designed to manipulate anything. The following syllogy explains the argument. Plaintiff's knowledge as to his rights under the law with respect to entitlement to overtime, which the Court pretrial acknowledged was an appropriate issue in this case to delve into at trial (as set forth above), coupled with witness testimony that he was paid his overtime, coupled with significant testimony that Plaintiff never complained about failing to be paid overtime (the only witness who said that Plaintiff complained about overtime was Plaintiff, but he was impeached repeatedly on this issue

14

by the fact of prior inconsistent statements from his deposition and interrogatory answers), coupled with significant testimony that Plaintiff was paid his overtime, leads to the argument and conclusion that Plaintiff cannot prove by the greater weight of the evidence that he was paid overtime. Plaintiff's argument is essentially a personal attack on defense counsel and not appropriate. Plaintiff's counsel was admonished after his closing argument to stop such attacks, because they formed a material part of his closing. In a desperate attempt to make up for the lack of merit in his case, both at closing argument and now at this stage, Plaintiff's counsel has seen fit to attack defense counsel and Defendants' trial strategy. It is not appropriate, particularly under the circumstances.[2] Undersigned counsel maintains that he tried in the case in an absolutely appropriate professional manner and stuck to the evidence and arguments surrounding that evidence that were ethically and morally appropriate under the circumstances. In fact, the Defendants could not have violated the *in limine* ruling concerning the evidence at issue, because the Court did not exclude it *in limine*, but rather stated that it would have to make a determination with respect to the admission and usage of the evidence during the trial, which is what the Court ultimately did. *See Background*, second set of italicized language in the block-quote from the *in limine* ruling.

### IV. The Defendants Did Not Improperly And Prejudicially Argue That Because The Plaintiff Previously Filed A FLSA Suit His Claims Were Estopped In This Case.

The Plaintiff claims that the Defendants argued, in a manner extremely unfairly prejudicial to the Plaintiff, that the Plaintiff's previous filing of a FLSA suit estopped him from prevailing in this one, and required that the jury find for the Defendants. As set forth in the section immediately above, that is not what occurred. Defendants never did such a thing (never made such an argument), nor does defense counsel ever remember Plaintiff's counsel objecting to any such argument to preserve any rights as to this issue. However, *the Defendants should have been able to*. The Court granted summary judgment in Plaintiff's favor *sua sponte* on the Defendants' waiver/estoppel affirmative defense. These sorts of *sua sponte* motions for

---

[2] The Court may recall that the Plaintiff argued in his closing that defense counsel was engaging in inappropriate trial strategy, should have called other witnesses, was making arguments and asking questions based on improper motivations, and Plaintiff repeatedly referred to matters that were not in evidence and not part of the trial. Resorting to sideshows tends to show that the Plaintiff did not have a strong claim, as Defendants have argued herein. Typically, when a party has a strong claim, that party will stick to the evidence that supports that conclusion.

15

summary judgment constitute error. *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997) (reversing a *sua sponte* grant of summary judgment as being "procedurally improper" when it did not allow the non-moving a chance to respond and nothing that this Circuit has "recognized repeatedly that this notice provision is not an unimportant technicality, but a vital procedural safeguard."). This is essentially what happened here, that the Court *sua sponte* granted summary judgment on the Defendants' waiver/estoppel affirmative defense.

Further, leading treatises criticize the practice of dismissing claims *in limine*, ands the same applies to claims in trial outside the normal use of Rule 50. *E.g.,* Charles Allen Wright & Kenneth W. Graham, Jr., 21 *Fed. Prac. & Proc.* § 5037.18 (2d ed. 2005). At least two circuit courts of appeal have agreed, and have held that the dismissal of claims and defenses by motion *in limine* is improper. *See Meyer Intellectual Props. Ltd. v. Bodum, Inc.,* 690 F.3d 1354, 1378 (Fed. Cir. 2012) ("Because we conclude that it was procedurally improper for the court to dispose of [defendant's] inequitable conduct defense on a motion *in limine,* we reverse the court's decision and remand for further proceedings."); *Mid–America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1363 (7th Cir. 1996) (finding that argument regarding the sufficiency of evidence "might be a proper argument for summary judgment or judgment as a matter of law, it is not a proper basis for a motion to exclude evidence prior to trial"). In sum, the typical *in limine* practice of federal courts does not include the dismissal of claims. *See, e.g., Witness Sys., Inc. v. Nice Sys., Inc.,* 2008 WL 2047633 (N.D. Ga.); *Gold Cross Ems, Inc. v. Children's Hosp. of Alabama*, 309 F.R.D. 699, 700 (S.D. Ga. 2015). In any event, as stated, the Defendants never argued what the Plaintiff accuses them of arguing, but they should have been allowed to, because there was sufficient evidence that Plaintiff (had he not been paid overtime) really fabricated these claims and knew better given that he sued before, settled before, and was devious enough to file suit under a false name, etc.. At some point, a Court has to find that it is not going to allow the Court system to be used as a scheme or artifice to defraud it, as Judge Williams recently did. *Bonet v. New Courier, Inc.*, -- F. Supp. 3d --, 2016 WL 4523844 (S.D. Fla., Aug. 25, 2016) (excoriating this same plaintiff's counsel for putting a witness on the stand who was clearly testifying falsely and subverting justice which resulted in the grant of a Rule 41 involuntary dismissal with prejudice during the trial, though it is unclear that that plaintiff was impeached anywhere near the times that Plaintiff in this case was; the plaintiff testified eerily

similar to the Plaintiff here with vague answers, answers that are incredulous, and answers designed to hinder the search for the truth).

### V. The Defendants Did Not Improperly Turn The Trial Into A Referendum On Plaintiff's Law Firm And The Motivations (Fee Aspects) Behind FLSA Litigation As Opposed To About Whether Plaintiff Was Entitled To Overtime And If So How Much.

The trial that Defendants saw was one in which the central issue was whether the Plaintiff was paid overtime or not. The evidence, cross-examinations, and arguments propounded by the Defendants were all geared toward its position that overtime was paid. Not one witness took the stand to corroborate Plaintiff's contentions. Inexplicably, the Plaintiff claims that Defendants "[t]urn[ed] the trial into a referendum on the practice of law for pecuniary benefit of the attorneys/firms, and a referendum on whether someone with the right to sue can be too litigious" and that "Defendants almost exclusively focused on this as a trial strategy." (*Motion* at 12). Plaintiff goes on to say that "Defendants strategy following the admission of this evidence was to allege that J.H. Zidell, P.A. and Plaintiff cooked up a conspiracy to entrap the Defendants. Which [sic] did violate the in limine ruling that the Defendants could not imply or argue that J.H. Zidell P.A. encourage [sic] or instigated the lawsuit." *Id.* at 11. From this, the Plaintiff then concludes that Defendants "made the entire case look like a conspiracy against hardworking small business people by a greedy law firm that instigated cases for the purpose of unjust enrichment." *Id.*

The fact is that the Defendants did not make any arguments or admit any evidence during the trial regarding the practice of law for pecuniary benefit. This was not a trial in which defense counsel waxed philosophically regarding the virtues of fee-shifting statutes. Certainly, when the Plaintiff denied he knew his rights under the FLSA to overtime, he was impeached with the fact that he previously sued for overtime and previously used the same lawyer (all of which is true), which then became substantive evidence in the case. This fact alone in a 2-day trial does not support the conclusion that Defendants turned the trial into a referendum on the practice of law for pecuniary benefit or on whether someone can be too litigious. To say that the Defendants almost exclusively on this as a trial strategy and that Defendants main argument was that Plaintiff cooked up a conspiracy with this attorney is to frankly prevaricate and to misrepresent, which should require denial of the Motion. *Herard v. ATN Restaurant, Inc.*, 2008 WL 123596 (S.D. Fla. 2008) (denying motion for reconsideration because plaintiff's lawyer made a

misrepresentation to the court). Motivation in bringing suits and being overly-litigiousness is a relevant criterion in impeachment with respect to bias. *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431 (D. Md. 2006) (finding bias to be a criterion that can impeach). Here, however, the Defendants did not seek to introduce the evidence for those reasons, but rather introduced it, as argued at trial, because of the Plaintiff's denial of his knowledge that he was entitled to overtime (which denial was ridiculous under the circumstances given that he stated in his deposition he was very familiar with those rights having sued before under the FLSA using the same counsel). The Plaintiff's Motion should be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 3, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record (Joshua Sheskin, Allyson Morgado, Rivkah Jaff, David Kelly, and J.H. Zidell) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

        Glasser & Kleppin, P.A.
        Attorneys for Defendants
        8751 W. Broward Blvd.
        Suite 105
        Plantation, FL 33324
        Tel. (954) 424-1933
        Fax (954) 474-7405
        E-mail: ckleppin@gkemploymentlaw.com


        By   s/Chris Kleppin
            Chris Kleppin
            Fla. Bar No. 625485